```
1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------------x
    UNITED STATES OF AMERICA,
3
                        Plaintiff,          Docket No.:
4                                           08 CR 65 (RJD)
            versus
5                                           U.S. Courthouse
    ALEJO POLANCO and EMILINO VASQUEZ,      225 Cadman Plaza East
6                                           Brooklyn, NY 11201
                        Defendant.
7   ------------------------------------x
                                            August 12, 2013
8                                           9:30 a.m.

9           Transcript of Criminal Cause for Jury Selection

10  Before:   HONORABLE STEVEN M. GOLD,
                    District Court Chief Magistrate Judge
11

12                          APPEARANCES

13  For the Government:          LORETTA E. LYNCH, ESQ.
                                 United States Attorney
14                               Eastern District of New York
                                 271 Cadman Plaza East
15                               Brooklyn, New York 11201
                                 BY:  DANIEL SILVER, ESQ.,
16                                    SOUMYA DAYANANDA, ESQ.
                                      NATHAN REILLY, ESQ.
17                                    Assistant U.S. Attorneys

18  For Defendant Polanco:       EPHRAIM SAVITT, ESQ.
                                 NATASHA MAROSI, ESQ.
19
    For Defendant Vasquez:       MICHAEL HURWITZ, ESQ.
20
    Spanish Interpreters:        JAMES HONTORIA
21                               ROSA OLIVERA
                                 PATRICIA TRIANA
22
    Official Court Reporter:     MICHELE NARDONE, CSR, RPR, CRR
23                               Phone:  718-613-2601
                                 Email:  Mishrpr@aol.com
24
    Proceedings recorded by mechanical stenography.  Transcript
25  produced by computer-aided transcription.
```

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

USA v. Polanco/Vasquez

1          (In open court.)

2          (Defendants present.)

3          (Through the interpreter.)

4          THE COURT:  Everybody is here.  Let's get started.

5     Okay.

6          United States against Polanco and Vasquez for jury

7     selection, 08 CR 65.

8          Counsel for the United States, your appearances,

9     please.

10         MR. SILVER:  Daniel Silver, Soumya Dayananda and

11    Nathan Reilly for the government.

12         MS. DAYANANDA:  Good morning.

13         MR. REILLY:  Good morning, your Honor.

14         THE COURT:  Counsel for Alejo Polanco?

15         MR. SAVITT:  Ephraim Savitt and Natasha Marosi.  Good

16    morning, your Honor.

17         THE COURT:  Good morning.

18         MS. MAROSI:  Good morning.

19         THE COURT:  Counsel for Emilino Vasquez?

20         MR. HURWITZ:  Good morning, your Honor.  Michael

21    Hurwitz and Miriam Hurwitz, who is not present today, for

22    Mr. Vasquez.

23         THE COURT:  Who will be joining you?

24         MR. HURWITZ:  Miriam Hurwitz, but will not be present

25    today.

1      THE COURT:  Mr. Polanco, can you hear and understand

2   the translation of my words into Spanish?

3      MR. SAVITT:  Your Honor, I don't believe the equipment

4   is working.  Is it okay now?  Now it's okay, yes.

5      THE COURT:  And do you understand the Spanish

6   translation of what's being said?

7      THE DEFENDANT:  Yes, sir.

8      DEFENDANT POLANCO:  Yes, sir.

9      THE COURT:  Mr. Vasquez, do you hear and understand

10   the Spanish translation of what's being said?

11      DEFENDANT VASQUEZ:  Yes.

12      THE COURT:  Now, my name is Judge Steven Gold.  I am a

13   magistrate judge.  I am not the district judge who will be

14   presiding over this trial.  The judge presiding over the trial

15   is United States District Judge Dearie.

16      I am confident that Mr. Polanco and Mr. Vasquez have

17   appeared before Judge Dearie in the past.  You have a right to

18   have Judge Dearie preside over the jury selection or another

19   district judge preside over the jury selection.

20      If I have your consent and agreement, as a magistrate

21   judge I have the authority to preside over the jury selection,

22   but not over your objection.

23      Mr. Savitt, have you explained this to Mr. Polanco?

24      MR. SAVITT:  Yes, your Honor.

25      THE COURT:  Does he consent to have me preside over

USA v. Polanco/Vasquez

1   jury selection?

2           MR. SAVITT:  He does, your Honor.

3           THE COURT:  Mr. Polanco, is that accurate?

4           DEFENDANT POLANCO:  Yes, sir.

5           THE COURT:  Mr. Hurwitz, have you explained all of

6   this to your client?

7           MR. HURWITZ:  No, your Honor.

8           THE COURT:  No?  How can that be?  Is this the first

9   time it's come to your attention that I would be presiding over

10  the jury selection?

11          MR. HURWITZ:  No, your Honor.

12          THE COURT:  Explain it to your client and see whether

13  he consents or not.

14          MR. HURWITZ:  Yes, your Honor.

15          (Pause.)

16          MR. HURWITZ:  I have explained to Mr. Vasquez.  We

17  will allow the magistrate your Honor, to preside over him and

18  we will waive the jury selection by the district court judge.

19          THE COURT:  Is that right, Mr. Vasquez?  You consent

20  to have me preside over the jury selection, even though you

21  have a right to have Judge Dearie preside?

22          DEFENDANT VASQUEZ:  No problem.  Yeah, yeah.

23          THE COURT:  Okay.  Then we can get started.

24          What I propose to do, if counsel consents, is to call

25  forward 36 members of the panel, hear challenges for cause as

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1   voir dire proceeds, and allow counsel to exercise their

2   challenges against all 36 members of the panel, with ten

3   challenges plus six challenges for the defense and prosecution

4   respectively against the main panel available and an additional

5   two challenges for the defense and two for the prosecution

6   against the alternate panel available.

7          Mr. Savitt?

8          MR. SAVITT:  I'm sorry.  My client indicates that --

9          THE COURT:  He can't hear?

10         MR. SAVITT:  -- he can't hear.

11         THE COURT:  Okay.

12         MR. SAVITT:  I apologize.

13         THE COURT:  Not at all.  It's important.

14         (Pause.)

15         THE COURT:  Okay.  I see an affirmative nod from

16  Defendant Polanco, and I think, Mr. Savitt, I think we can

17  infer that he can hear now.

18         MR. SAVITT:  Yes, your Honor.

19         THE COURT:  Thank you very much.

20         As I was saying, if we qualify 36 prospective jurors

21  and I allow you to exercise the 20 challenges you have in

22  combination, that is to say 12 for the defense and 8 for the

23  prosecution, 10 plus 2 and 6 plus 2, we should have left the 16

24  jurors we need to select.  The rules contemplate if they are

25  read technically separate processes for selecting the main

1  panel and alternate panel, but I find that this gives counsel

2  more flexibility and saves time.  So if there is no objection,

3  I propose that that is how we proceed.

4          Is the prosecution agreeable?

5          MR. SILVER:  Yes, judge.

6          THE COURT:  Mr. Savitt?

7          MR. SAVITT:  Yes, your Honor.

8          THE COURT:  Mr. Hurwitz?

9          MR. HURWITZ:  Yes, your Honor.  I just am not clear

10  when we reach the alternates, those two challenges will be

11  separate challenges.

12          THE COURT:  No.  I'm not sure I know what you mean by

13  separate challenges.  When we reach the alternate challenges

14  you can exercise them against any of the 36 jurors.  At the end

15  of the exercise of all of the challenges, there will be 16

16  jurors left.

17          I will seat them in the order that they appear on the

18  roster.  The first 12 will be the panel of regular jurors.  The

19  last four will be the alternate jurors.

20          MR. HURWITZ:  So we have 12 challenges to the panel?

21          THE COURT:  Exactly.  Is that acceptable to you,

22  Mr. Hurwitz?

23          MR. HURWITZ:  Yes.

24          THE COURT:  Okay.  I have received proposed voir dire

25  from the prosecution, I have received proposed voir dire from

1   Mr. Savitt on behalf of Mr. Polanco.

2           Mr. Hurwitz, if you did submit something, it did not

3   reach my desk.

4           MR. HURWITZ:  I did not submit.

5           THE COURT:  Do you have any to submit that morning?

6           MR. HURWITZ:  No, your Honor.

7           THE COURT:  Thank you.

8           In Mr. Savitt's voir dire he asks that I not ask some

9   of the specific questions that the government proposes.  I'm in

10  general agreement with the thrust of Mr. Savitt's letter and

11  will rephrase some of the items I intend to address in my own

12  words that I'm not going to refer to, but I'm not going to ask

13  about the DNA and the prejudice because to me it's a specific

14  argument that the jury need not have this type of evidence to

15  be persuaded beyond a reasonable doubt, and I think it's

16  counsel's role to make that argument and not the court's.

17          In Mr. Savitt's proposed voir dire, question number

18  one, he asks that I advise the jurors that the defendants are

19  illegally present in the United States, to be sure that they

20  can be fair and impartial despite that fact.

21          Is it the government's intention to introduce evidence

22  of the legality of the defendant's status in the United States

23  during the trial?

24          MR. SILVER:  No, I don't believe that will come in,

25  judge.

1    MR. SAVITT:  Well, if it doesn't come in, I will

2    withdraw that request, your Honor.

3    THE COURT:  Well, consider it withdrawn; and I will

4    not ask about that, and I will rephrase the questions about

5    prejudice to try to make it more neutral.

6    MR. SILVER:  I should qualify that, judge, to say I

7    don't expect it to come in during government's direct case.

8    Obviously, if there is a defense case or rebuttal, it's hard to

9    add.

10   THE COURT:  It would be objected to if the government

11   sought to raise it?

12   MR. SAVITT:  It would, your Honor.

13   THE COURT:  All right.  I think Judge Dearie, even if

14   it comes up, is likely to preclude it; and I don't think

15   that -- I don't want to be the one person during the course of

16   this case to tell the jurors that the defendants are illegal

17   aliens.  I'm not going to raise that.

18   Is there anything else before we bring in the panel?

19   MR. SILVER:  Judge, I was just wondering if your Honor

20   intended to ask a question similar to the question we proposed

21   on page 3 of our voir dire, number two, under types of

22   evidence, pertaining to cooperating witnesses.

23   THE COURT:  I'm going to say something about

24   cooperating witnesses.  I have my own question about it.  It's

25   going to sound something like -- it will be easier for me to

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    tell you if I find my note –– it's going to sound something

2    like the government may rely in this case on witnesses who have

3    entered into an arrangement where in return for their testimony

4    they are likely to receive a recommendation of leniency from

5    the government; do you have strong views about such evidence to

6    the extent that it will be difficult for you to follow the

7    instructions Judge Dearie will give you about how to weigh it.

8            Is that acceptable to the government?

9            MR. SILVER:  Yes, judge.

10           THE COURT:  Is that acceptable to the defendant?

11           MR. SAVITT:  Yes, your Honor.

12           MR. HURWITZ:  Yes, your Honor.

13           THE COURT:  Can we bring in the panel then.

14           Let me take Mr. Reilly first.

15           MR. REILLY:  I just wanted to correct something on

16   attachment A, which is the people and places list.

17           THE COURT:  Yes.

18           MR. REILLY:  Number 13 is an individual labeled

19   Jomayra.  It's listed as Figueroa.  The name should accurately

20   be Jomayra Martinez.

21           THE COURT:  Thank you.  I have that.

22           Mr. Savitt?

23           It was filed, by the way, on the docket sheet on

24   August 4, Mr. Hurwitz.

25           MR. SAVITT:  Your Honor, there were four additional

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    proposed voir dire questions on behalf of Mr. Polanco.

2            THE COURT:  Yes, I will ask the question about an

3    interpreter.

4            MR. SAVITT:  Yes, sir.

5            THE COURT:  And give them instructions.  I will read a

6    portion of the indictment to them and ask them if there is

7    anything about the charges that makes them feel they cannot be

8    fair and impartial.  I will tell them that prejudice has no

9    place in jury deliberations and ask if anyone feels that

10   because of any prejudice they hold they cannot be fair and

11   impartial.

12           And I ask some variation of the fifth one in my own

13   words.

14           MR. SAVITT:  Yes, sir.  That actually was proposed at

15   a point when I was actually quite fatigued, and so I'm glad,

16   your Honor -- but I'm satisfied with your Honor.

17           THE COURT:  I will give -- all counsel will have a

18   chance, at the conclusion of my voir dire of the jurors, I will

19   call up to sidebar and ask you if there is any additional

20   subject matter that you think I did not either properly explore

21   or failed to explore altogether.  Although I make these

22   representations to you now, I count on you to pay attention and

23   hold me to my promise and alert me if I fail to live up to it

24   once the questioning is over.  All right.

25           Can we call up the panel now?

USA v. Polanco/Vasquez

1          MR. SILVER:  Yes.

2          THE COURT:  Great.  While we are waiting for the panel

3     let me confirm my understanding that Judge Dearie will continue

4     to hear the trial tomorrow morning.

5          MR. SAVITT:  Yes, sir.

6          THE COURT:  That he would scheduled to proceed on

7     Tuesday, Wednesday, and Thursday of this week and Monday

8     through Friday of next week and that counsel's best estimate is

9     that the trial will be concluded within that time span.

10          MR. SILVER:  That's correct, judge.

11          MR. SAVITT:  Yes, your Honor.

12          MR. HURWITZ:  That's what I'm informed, your Honor.

13          THE COURT:  Well, you have a role to play in how long

14     the trial will take, I hope, Mr. Hurwitz.

15          MR. HURWITZ:  I understand that, your Honor.

16          THE COURT:  You don't have any contrary information to

17     share with the court?

18          MR. HURWITZ:  No.

19          MR. SAVITT:  May I just confer with counsel for a

20     moment?

21          THE COURT:  Absolutely.

22          (Pause.)

23          (Prospective jurors enter courtroom.)

24          THE COURT:  Good morning, everybody.  Please come in.

25     Take a seat and move as far over as you can so there are seats

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1   for everyone.  We have a lot of people to bring into the

2   courtroom.  Please come on in, take seats, you can come up

3   front as well, but do squeeze over.  It's going to be hard to

4   fit everyone as it is.  You can sit on the other side as well.

5   Please come in and take seats.  You can take seats in the jury

6   box as well.  It doesn't mean you are going to be picked any

7   sooner or later.

8          There are still empty seats on the row to the right as

9   well.  You can sit there.  There are still some empty seats in

10  the first row up here.  Sir, you can have a seat up there in

11  the jury box, if there is no room on any of the benches.  We

12  will get started as soon as we are sure everyone is in here.

13  There must be another elevator on the way or at least they are

14  confirming that there isn't one.  Okay.  I think we have two

15  more seats up there available, and there are also seats on the

16  right there.

17         Well, ladies and gentlemen, good morning to all of

18  you.  I'm Magistrate Judge Steven Gold, and I thank you for

19  making your way to court this morning in response to our call

20  for your service as prospective jurors.  The reason you are in

21  this courtroom this morning is that we are going to select a

22  jury here today that will hear a criminal case.

23         The trial will not be before me.  I'm not the judge

24  presiding over the case.  The judge presiding over the case is

25  named United States District Judge Raymond Dearie, D-E-A-R-I-E.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1   The very observant among you may have noticed his name on the

2   wall besides the door as you walked into the courtroom.  I'm

3   assisting Judge Dearie today by selecting the jury that will

4   hear the case before him.

5           The trial will begin come morning, the trial itself.

6   Judge Dearie will hear the trial tomorrow, Wednesday, and

7   Thursday of this week.  He will not be sitting on Friday.  And

8   the trial will continue the following week, Monday through

9   Friday; and the lawyers expect that the trial will be completed

10  by that time, maybe even in less time.  I'm going to give you

11  an opportunity later to tell me whether that poses a very

12  difficult obstacle for you, but we are not up to that yet.

13          Ladies and gentlemen, the case is a criminal case.

14  That means that criminal charges have been brought against the

15  defendants by the United States Government.  I want to

16  introduce you to the lawyers and the parties in the case.

17          The United States is represented here this morning by

18  three federal prosecutors, or Assistant United States

19  Attorneys.  I'm going to introduce them to you now.  They will

20  rise when I call their name.  They will look at you so you can

21  see if you recognize them.

22          Their names are Daniel Silver.

23          MR. SILVER:  Good morning.

24          THE COURT:  Soumya Dayananda.

25          MS. DAYANANDA:  Good morning, everyone.

1          THE COURT:  And Nathan Reilly.

2          MR. REILLY:  Good morning.

3          THE COURT:  There are two defendants in the case.

4    Each is here with his attorneys, and I will introduce them to

5    you separately and ask them to rise so that you can see them as

6    well.  The first of the two defendants is Mr. Alejo Polanco,

7    who is here with his two attorneys, Ephraim Savitt and Natasha

8    Marosi.

9          MR. SAVITT:  Good morning.

10          MS. MAROSI:  Good morning.

11          THE COURT:  That's Mr. Savitt, Ms. Marosi, and next to

12    them is Mr. Polanco.

13          The second defendant named in the case is Mr. Emilino

14    Vasquez; and he is here with his attorney, Michael Hurwitz, and

15    they have just stood so you can see them.  Mr. Hurwitz informs

16    me that he will be assisted as the case proceeds by another

17    attorney named Miriam Hurwitz.

18          MR. HURWITZ:  That's correct, your Honor.

19          THE COURT:  But she is not present with us this

20    morning, but is likely to be joining us later in the case.

21          Later in the selection process I'm going to ask you if

22    you think you know any of these people.  So take a good look at

23    them and decide.

24          First I want to give you some instructions about some

25    of the basic principles of our criminal justice system.  These

1    come from our United States Constitution and our Bill of

2    Rights; and so they have been part of our criminal justice

3    system throughout our history as a nation.

4         (Pause.)

5         THE COURT:  The fact that this is a prosecution of a

6    criminal charge brought by the United States does not entitle

7    the prosecution to any greater or lesser consideration than any

8    other party who appears before the court.  All parties, whether

9    it's the government, a corporation, Apple or Google or General

10   Motors, or an individual, and whether that individual is rich

11   or poor or born here or not, all parties who appear before the

12   court are equal and are entitled to the equal consideration of

13   the jurors who hear the cases that are brought before them.  No

14   party is entitled to sympathy or favor, and no party may be the

15   subject of prejudice or ill will just because of who they are

16   or what they are.

17        It is important that the men and women we select to be

18   jurors are confident that they can hear and think about the

19   evidence in the case and reach a verdict in a way that is fair

20   and impartial.  When I say fair and impartial, what I mean is

21   that they can reach a verdict that's based on the evidence

22   presented during the trial and not on any preconceived notions

23   or biases or things they may have heard outside the courtroom

24   about the criminal justice system.

25        Is there anyone who wants me to speak louder?  Great.

1          So we are going to go through a procedure this morning

2     that involves my asking you a lot of questions.  It's a

3     procedure that judges and lawyers have designed over the years

4     to try to give us some confidence that you can be fair and

5     impartial as a juror in this case.  The procedure is tedious.

6     It's kind of boring because it involves my asking a lot of

7     questions and listening to answers that won't be interesting to

8     you, but I hope you can be patient and keep in mind that it's

9     an important procedure.

10          It's important because of how important it is that the

11     juries we select be impartial and unprejudiced and reach their

12     decisions based on the evidence that happens during the trial.

13     So we have an important job ahead of us today.

14          If during the questions that I ask you come to believe

15     that there is some reason you couldn't be fair and impartial in

16     this case, that you would make a decision based on things that

17     aren't in the evidence but some other reason would motivate

18     you, you should raise your hand and tell me that.  You must

19     raise your hand and tell me that.  That's because both sides

20     have a right to have the case heard by jurors who can be fair

21     and impartial and who will not allow any fear, favoritism,

22     prejudices, or passions, or sympathies influence their verdict.

23          The way we go through this is, as I have said, by

24     asking you questions.  I'm going to ask you questions about

25     your experiences, what kind of work you do, where you live.  I

1   don't want to invade anyone's privacy today.  It's certainly

2   not my intention to make anyone feel anxious or uncomfortable.

3   Quite the opposite.  But I do have to ask you these questions

4   and ask you to answer them honestly and openly.

5           I want you to listen to my questions carefully.  You

6   have a duty to do that and to answer them honestly and

7   conscientiously.  If I ever ask a question that you would

8   prefer to answer in the relative privacy of myself and the

9   attorneys and parties in the case, just raise your hand and ask

10  to approach this area of the courtroom by the flag that lawyers

11  and judges call a sidebar, because it's on the side here.  And

12  I will ask you to come forward and I will hear your answer or

13  your concern in that relatively private setting.

14          As I'm sure you can appreciate, I shouldn't be

15  speaking to any of you outside the presence of the attorneys in

16  the case.

17          Once all of the questioning is over, the lawyers will

18  have an opportunity to consider what they have heard.  They

19  will then exercise what we call peremptory challenges, which

20  means challenges for which they need not provide a reason.  If

21  you are excused, there is no insult intended.  No one here is

22  rejecting you from jury service because they don't like you or

23  don't think you would do a good job as a juror generally; and,

24  indeed, there will be other jury selections in which you will

25  have the opportunity to participate, even if you are not

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    selected to serve in this case.

2           It's important for you to listen carefully to my

3    questions and answer them honestly, for all the reasons I have

4    already told you and for one more as well.  You will be under

5    oath when you answer my questions, and you will therefore have

6    a legal obligation to answer them honestly.  This is my clerk,

7    Ms. Keefe, and she is about to administer the oath of

8    prospective jurors to you.  I will ask you all to rise to take

9    this oath.

10          THE CLERK:  Please raise your right hand.

11          (Prospective jurors sworn.)

12          THE COURT:  Thank you, everyone.  You may be seated.

13   Now, we can get started with some of the things that are

14   specific to this case.

15          Like every other criminal case presented to a jury in

16   our court, this one comes before the court because the

17   government filed a set of charges.  In this case those charges

18   take the form of what we call an indictment.

19          An indictment is the written document that a

20   prosecutor prepares that sets out the charges that the

21   government is bringing against the defendant.  It serves no

22   other purpose.  It isn't evidence of anything.

23          The fact that someone has been indicted or charged is

24   not to be considered by a juror as indicating that the person

25   committed a crime.  It's simply the way the government

1    announces what it is accusing someone of having done.  It's not

2    evidence.

3           But I'm going to tell you what the indictment says.

4    And you might be asking yourself, well, if we are only supposed

5    to decide the case based upon the evidence, why is the judge

6    going to tell us what the indictment says if the indictment

7    isn't evidence?  The indictment tells us what kind of case it

8    is.  The indictment tells us what the allegations are, and

9    that, I think, is important to you in the sense that it will

10   help you decide if you can be fair and impartial in a case

11   where allegations of this type are made.  That's the reason why

12   I'm going to summarize the indictment for you now.

13          The indictment accuses Mr. Polanco and Mr. Vasquez of

14   committing four separate crimes.  The specifics of these crimes

15   will be explained to you in detail by Judge Dearie after the

16   evidence has been heard.  For our purposes today I think it's

17   enough that you know in general what the crimes are about.

18          In the first charge, the government accuses as

19   follows:  That between 1999 and 2008 Mr. Polanco and

20   Mr. Vasquez knowingly and intentionally conspired to distribute

21   and to possess with the intent to distribute one kilogram or

22   more of heroin, five kilograms or more of cocaine, and

23   100 kilograms or more of marijuana.

24          In the second charge, the government alleges that

25   between 1999 and 2008 Mr. Polanco and Mr. Vasquez knowingly

1   intentionally con spired to rob drug dealers or narcotics

2   traffickers.

3       In the third charge, the government alleges that

4   Mr. Polanco and Mr. Vasquez knowingly and intentionally used

5   and carried one or more firearms during the course of

6   committing the first two crimes.

7       And in the fourth charge the government accuses

8   Mr. Polanco and Mr. Vasquez of having, on June 10, 2001, while

9   committing a robbery of drug dealers or -- excuse me, while

10  using weapons in connection with the crimes that I have

11  described, of killing or causing the death of Liliana

12  Colmenares while trying to commit a robbery.

13      Those are the four crimes that the government alleges

14  were committed by Mr. Polanco and Vasquez, but I remind you the

15  fact that the government alleges this is not evidence that

16  anyone has done anything illegal.  It is simply the way the

17  government brings the case before the court and alerts the

18  defendants to the accusations against them.  Whether these

19  allegations have merit will only be determined by a jury after

20  all of the evidence in the case has been presented.

21      Mr. Polanco and Mr. Vasquez, in fact, have pleaded not

22  guilty to each of these charges.  By doing so they have raised

23  a question of fact or many questions of fact to be decided by a

24  jury.

25      The prosecution, the government, as I'm sure many of

1    you already know, has the burden of proving in every criminal

2    case, including of course this one, the defendant's guilt and

3    each defendant's guilt beyond a reasonable doubt.  By pleading

4    not guilty Mr. Polanco and Mr. Vasquez sit here entitled to the

5    presumption of innocence.  There is no evidence of their guilt

6    before this court, and they are entitled to have you determine

7    right now that they are innocent unless and until the

8    prosecution presents evidence that convinces you beyond a

9    reasonable doubt that they are not.

10           The defendants have no burden to present any evidence.

11   The defendants have no burden to testify.  In fact, because our

12   Bill of Rights guarantees the right to a defendant's silence,

13   jurors are prohibited from holding against the defendant or

14   taking it into account when they deliberate that a defendant

15   chose not to testify during his trial.

16           These, as I have said, are basic principles of our

17   criminal justice system.  They were enacted by our founding

18   fathers as part of our Constitution and Bill of Rights, and

19   they have been part of our criminal justice system throughout

20   our history now for hundreds of years.

21           The role of a jury in a criminal case is to hear this

22   evidence and to decide what happened or, more specifically in a

23   criminal case, to decide whether or not the prosecution has

24   established a defendant's guilt of any charge beyond a

25   reasonable doubt.

1       If you are selected and you are deliberating, you must

2   keep in mind that although there are two defendants in this

3   case, you must consider each one separately and individually.

4   You should not conclude or infer that one defendant is guilty

5   simply because he is on trial with another defendant that you

6   are convinced beyond a reasonable doubt is guilty.  Each

7   defendant is entitled to an individual evaluation of the

8   evidence against him.

9       Judge Dearie will have no role to play in your

10  decision about the facts or the weight of the evidence.  Judge

11  Dearie will preside over the trial.  He will ensure that it

12  proceeds in conformity with our rules of procedure and

13  evidence, and he will instruct you on the law that governs this

14  case.

15      You will consider the evidence in light of the legal

16  principles that Judge Dearie will instruct you on at the

17  conclusion of the evidence, and when you do so, you will reach

18  a verdict.  You must apply the legal principles that Judge

19  Dearie instructs you to apply, even if you think the law should

20  be different.  You are entitled to think the law should be

21  different, but you are not entitled to follow what you think

22  the law should be instead of what Judge Dearie tells you the

23  law is.  What I'm going to ask you later is if you would have

24  difficulty doing that.

25      You may notice as you look around the courtroom that

1   the defendants, Mr. Polanco and Mr. Vasquez, are being assisted

2   by an interpreter.  You should not be influenced in any way by

3   the fact that a defendant relies upon or seeks the assistance

4   of an interpreter.  I think you can imagine easily that a

5   criminal case is a very important matter, particularly to one

6   who stands accused, who will as a result desire to hear and

7   understand every word that's spoken in court fully.  The mere

8   fact that a defendant uses an interpreter, though, is not

9   evidence of anything, and so you should not draw any

10  conclusions about how well someone may or may not speak English

11  from the fact that he is using an interpreter; and you should,

12  of course, not hold it against someone that they desire the aid

13  of an interpreter to fully understand the proceedings as they

14  go forward.

15          Now, there is an arithmetic about jury selection that

16  I won't bore you with, but I will tell you that it does involve

17  my calling 36 of you forward as our prospective jury panel to

18  begin.  In order to do that, I'm sorry to say, I'm going to

19  have to make you move around a little bit.  So I would like the

20  folks who are seated in the first row to please stand up and

21  stand in the alley between the benches just for a few minutes,

22  if you would, while we begin calling some of those prospective

23  jurors forward.

24          THE CLERK:  Prospective Juror number 1, Kevin T.

25  Watral, W-A-T-R-A-L.  If you could just come sit in this seat

1   on the left.  Prospective Juror number 2, Melissa Cepeda,

2   C-E-P-E-D-A, you could have a seat next to him.  Prospective

3   Juror number 3, Thomas L. Rothacker, R-O-T-H-A-C-K-E-R.

4   Prospective Juror number 4, Moshe Braunstein,

5   B-R-A-U-N-S-T-E-I-N.  Prospective Juror number 5, Ashley J.

6   Francis, F-R-A-N-C-I-S.  And Prospective Juror number 6,

7   Raymond J. Muchinsky, M-U-C-H-I-N-S-K-Y.

8           THE COURT:  Now those of you who are previously seated

9   in the first row, you can either remain standing or find some

10  seats; and I'm going to ask the second row to vacate, please.

11          THE CLERK:  Prospective Juror number 7, Ernest Smith;

12  Prospective Juror number 8, Zhen Zhen Chen, C-H-E-N;

13  Prospective Juror number 9, Elizabeth Claudio, C-L-A-U-D-I-O;

14  Prospective Juror number 10, Richard K. Woerter, W-O-E-R-T-E-R;

15  Prospective Juror number 11, Eugene Liu, L-I-U; Prospective

16  Juror number 12, Badrul Uddin, U-D-D-I-N.

17          THE COURT:  And now I will ask you to take seats, and

18  I will ask the third row to vacate.  You are ahead of me.  You

19  figured out that's what I was going to say already.

20          THE CLERK:  Prospective Juror number 13, Gemma S.

21  Conanan, C-O-N-A-N-A-N; Prospective Juror number 14, Verinda A.

22  Robinson -- I'm sorry, Vernida A. Robinson.  I apologize.

23  Prospective Juror number 15, Steven M. Morgenlander,

24  M-O-R-G-E-N-L-A-N-D-E-R; Prospective Juror number 16, Rita M.

25  Rodriguez; Prospective Juror number 17, Barbara A. Hauck,

1  H-A-U-C-K; and Prospective Juror number 18, Jaclyn T. Luciano,

2  L-U-C-I-A-N-O.

3       THE COURT:  All right.  Thank you very much, everyone.

4  Now if you can find seats.  I need everyone on my left in the

5  first row to empty that row.  That's where we are going next.

6  Thank you.

7       THE CLERK:  Prospective Juror number 19, Marjorie A.

8  Bailey; Prospective Juror number 20, Judith A. Sherman-Greene;

9  Prospective Juror number 21, Susan M. Sugarman; Prospective

10  Juror number 22, Joy F. Dehaney; Prospective Juror number 23,

11  Benette Severino; Prospective Juror number 24, Ivan Martin;

12  Prospective Juror number 25, Nona M. Forcer; Prospective Juror

13  number 26, Ingrid Mariotti, M-A-R-I-O-T-T-I; and Prospective

14  Juror number 27, R.A. Rautenstrauch, R-A-U-T-E-N-S-T-R-A-U-C-H.

15       Anyone?

16       THE COURT:  Rautenstrauch, anyone here named

17  Rautenstrauch?  Okay.  We lost one.

18       THE CLERK:  Prospective Juror number 27 is Philip Sum,

19  S-U-M.

20       THE COURT:  Now I'm going to ask the folks standing in

21  the back to try to find some seats, and I'm going to ask those

22  on my right to vacate that bench.

23       THE CLERK:  Prospective Juror number 28, Judy A.

24  McLaughlin.  That's M-C.  Prospective Juror number 29, Adrian

25  B. Barrett.

1       THE COURT:  Excuse me.  Ms. McLaughlin, I think it

2  would be easier for us to keep track of the numerical order if

3  you take a seat at that end.  Thank you very much.

4       THE CLERK:  Prospective Juror number 30, Susan G.

5  Chamberlain; Prospective Juror number 31, Robert J. Becker;

6  Prospective Juror 32, Carline Jocelyn; Prospective Juror number

7  33, Martin L. Schottenhamel, S-C-H-O-T-T-E-N-H-A-M-E-L;

8  Prospective Juror number 34, Jared I. Seidman, S-E-I-D-M-A-N;

9  Prospective Juror number 35, Efrain Millan, M-I-L-L-A-N; and

10  Prospective Juror number 36, Steven Verveniotis,

11  V-E-R-V-E-N-I-O-T-I-S.

12       THE COURT:  All right.  Can we squeeze one more in

13  that row?  I knew you could do it.  Now everybody may be

14  seated.

15       In a few minutes, I'm going to start asking questions

16  of the 36 prospective jurors who were called forward.  They are

17  our prospective panel.  But it's very important that everyone

18  in the room, whether you are among the 36 called forward or

19  not, it's important that you pay very close attention to the

20  questions I ask.  I'm going to ask you to make a note,

21  mentally, or in writing would be even better, if I ask any

22  questions that you would answer yes.

23       You are going to find that my questions are basically

24  yes-or-no questions:  Do you recognize the people in the

25  courtroom?  Have you heard anything about the case before

1  today?  Questions of that nature.  The reason I want you to pay

2  close attention to them and make a note if you would answer any

3  of them yes is that as we go forward I will have to excuse some

4  of the 36 jurors who have been called already.  That's why you

5  are here.  Once they are excused, we will call more names.

6       If you followed along, I will ask you:  Have I asked

7  any questions you would answer yes?  Which ones are they?  And

8  we will be able to move along more efficiently.

9       However, if you lose track of my questions you must

10  tell me because it is better that I repeat them and make sure

11  that we have your answers to them all than you overlook them.

12  So please pay close attention, jot down or make a careful

13  mental note of anything you would answer yes, and be prepared

14  to tell me if you do lose track so I can review the questions

15  with you, if that occurs.

16       All right.  With that in mind, I address myself only

17  to the 36 jurors whose names were just called.  I will begin

18  with my first question.  It has a preface or an introduction.

19       I have just reviewed with you several fundamental

20  principles of our criminal justice system in our United States

21  Constitution and Bill of Rights.  I have told you that the

22  defendants are presumed innocent; that the fact that they are

23  accused of a crime by a prosecutor is not evidence that they

24  have done anything wrong; that the prosecutor has the burden to

25  prove each element of each charge against each defendant beyond

1  a reasonable doubt; and that the defendant need not even

2  present any evidence or testify but could instead choose to

3  remain silent and rest on the weaknesses in the government's

4  case and that that fact alone cannot be held against a

5  defendant in our criminal court.

6       Is there anyone who refuses to accept these principles

7  during their service as a juror or who didn't understand what I

8  said?  The record will reflect that no hands are raised.

9       I have introduced you to the defendants and I have

10  alerted you to the charges against them.  I have no reason to

11  believe that this case has received any attention in the news

12  or media, but I always ask every jury I select whether any of

13  the jurors think they heard anything about the case before they

14  came to the courthouse today.

15       Is there anyone who thinks they heard anything about

16  this case before they came into this courtroom this morning?

17  Again, I see that no hands are raised.

18       I have introduced you to the attorneys:  Mr. Silver,

19  Ms. Dayananda and Mr. Reilly for the prosecution; Mr. Savitt,

20  Ms. Marosi, and Mr. Hurwitz for the defendants.  I have

21  introduced you to the defendants, Mr. Polanco and Mr. Vasquez.

22  I believe I have introduced myself, Magistrate Judge Gold; and

23  I have told you that Judge Dearie, D-E-A-R-I-E, as it says

24  outside the door, will be presiding over the case.

25       Is there anyone here who thinks they recognize any of

1  these people, the lawyers involved in the case, the judges

2  involved in the case, or do you think you know someone who

3  works on any of our staff?

4          PROSPECTIVE JUROR:  Maybe.

5          THE COURT:  All right.  I'm going to ask Juror

6  number --

7          PROSPECTIVE JUROR:  Twenty-eight.

8          THE COURT:  Twenty-eight, Ms. McLaughlin, to come

9  forward to the sidebar with counsel and the court reporter.

10          (Sidebar conference.)

11          (Prospective juror enters.)

12          THE COURT:  Good morning, Ms. McLaughlin.  Thank you

13  for alerting us.

14          PROSPECTIVE JUROR:  My husband retired last Wednesday

15  from Department of VA criminal investigator.  He was always in

16  the court.  So I don't know if anybody would know him.

17          THE COURT:  What is his name?

18          PROSPECTIVE JUROR:  Thomas McLaughlin.

19          THE COURT:  Would that affect your ability to be fair

20  and impartial in this case?

21          PROSPECTIVE JUROR:  I don't think so.

22          My son is in the Secret Service.  I don't know if

23  that's anything.

24          THE COURT:  May I ask a question about that later?  I

25  think it will be easier for the lawyers to follow it at the

1  time.  But I will ask you now if any of your relationships to

2  law enforcement officers would affect your ability to be fair

3  and impartial in a criminal case.

4          PROSPECTIVE JUROR:  I don't think so.

5          THE COURT:  I want you to continue to think about it

6  and tell me differently if you feel otherwise.  I'm going to

7  tell you that Judge Dearie will instruct you, in substance,

8  that if there is testimony from a law enforcement officer it's

9  a juror's duty to weigh and evaluate it just like the testimony

10  of another witness, and you shouldn't assume that someone is

11  telling the truth or lying because they are a law enforcement

12  officer.

13          Will you be able to do that?

14          PROSPECTIVE JUROR:  Yes.

15          MR. HURWITZ:  Excuse me.  I couldn't hear the

16  beginning.  Was it a law enforcement investigator?

17          THE COURT:  Yes, sir.  Thank you.

18          MR. HURWITZ:  Do we know what agency?

19          THE COURT:  We do.  Could you repeat it again, where

20  your husband retired?

21          PROSPECTIVE JUROR:  He retired from NYPD as a

22  detective, and now criminal investigator for the Department of

23  VA.

24          THE COURT:  VA, Veterans Administration, Mr. Hurwitz.

25  Thank you.

1              (End of sidebar conference.)

2              (Prospective juror exits.)

3              (In open court.)

4              THE COURT:  Is there anyone else who thinks they might

5      know any of the judges or lawyers or parties involved in the

6      case?

7              My next question is going to be -- but before you

8      raise your hand -- is now whether any of you will have great

9      difficulty serving through Thursday of this week and during

10     next week.  Before you answer that question, I have some

11     remarks to make to you.  I told you before that if you are not

12     selected to serve in this case you shouldn't be disappointed

13     because you will have the opportunity to participate in other

14     jury selections that are going on later.

15             I said that somewhat ironically or tongue in cheek

16     because I know and appreciate that being summoned for jury

17     service is a great imposition.  I know you all have lives that

18     are busy and filled with events that are important to each of

19     you.

20             But our system depends upon the participation of

21     jurors.  The people who decide the cases in our courts are not

22     wealthy, powerful, or connected people.  They are everybody,

23     but it requires us to impose on everyone to serve.

24             And so, your government is imposing this duty upon

25     you, and the mere fact that it is inconvenient is not a basis

1    upon which I have the authority to excuse you from fulfilling

2    this responsibility.  As I have said, I know that many of you

3    may feel quite inconvenienced and put out by having been

4    summoned.  But you don't have an emergency or a crisis or an

5    extraordinary reason that would justify your being excused from

6    jury service.  You may be sitting there frustrated and annoyed

7    that you have to serve, and I understand that; but I'm also

8    going to ask you to try to set those feelings aside to the best

9    of your ability.

10           I'm going to suggest in that respect that you think

11   about this.  If you or someone you cared a lot about found

12   themselves in a court proceeding, I think you would want jurors

13   summoned to come to court for that purpose of hearing that

14   dispute or deciding that problem to come with an open mind and

15   a receptive attitude, despite the inconvenience that jury

16   service imposed upon them.  And so I'm hoping that that will

17   inspire each of you to put aside your frustration or annoyance

18   at the inconvenience of jury service and fulfill your

19   responsibilities with a positive attitude or the most positive

20   attitude about this burden that you can muster.

21           Now, having said that, it is not my intention to make

22   this a crippling burden or an extraordinary difficulty that

23   doesn't apply to most people because of particular

24   circumstances that apply to you.  To use an extreme example, we

25   have certainly had people excused from jury service because

1    they were scheduled for an urgent medical procedure during the

2    course of the trial.  I don't want you to be silent about

3    anything that imposes a unique burden on you as opposed to the

4    general inconvenience of jury service that everyone has to

5    endure.

6           So if there is a circumstance that you think warrants

7    your being excused and my asking someone else to take your

8    place because it will be less inconvenient for them than it is

9    for you, knowing that the trial again will be tomorrow,

10   Wednesday, Thursday, and all or some of next week, you can come

11   up to the sidebar and tell me about the difficulty that you

12   encounter.  Is there anyone in the first row?

13          Juror number 2, Ms. Cepeda, please approach.

14          PROSPECTIVE JUROR:  I can say it publicly.

15          THE COURT:  I'm going to ask everyone to come to the

16   sidebar one at a time, and we will start with Ms. Cepeda.

17          (Sidebar conference.)

18          (Prospective juror enters.)

19          THE COURT:  Well, Ms. Cepeda, good morning to you.

20          PROSPECTIVE JUROR:  Good morning.

21          THE COURT:  What's the challenge that you face?

22          PROSPECTIVE JUROR:  I didn't have a chance to postpone

23   because it was sent to another address, and I have child care

24   issues.  I'm off in the summer, and my mother-in-law watches my

25   daughter is actually out of the country these two weeks.

1          THE COURT:  How old is your daughter?

2          PROSPECTIVE JUROR:  She is two.

3          THE COURT:  What does your husband do?

4          PROSPECTIVE JUROR:  He works at Memorial Sloan in an

5    office.  So he can't really take off for two weeks.  I have

6    people work.  My mother works.  I have her with my cousin right

7    now, who was able to take a day off for me but I didn't have a

8    chance to put in the written paperwork because it was sent to

9    the wrong address.

10          THE COURT:  You would be prepared to serve during the

11   calendar year, but the summer when your mother-in-law is away?

12          PROSPECTIVE JUROR:  It was just -- like it's weird

13   because it was these two weeks, and she is not here these two

14   weeks.  If not, it would be okay.

15          THE COURT:  Does anyone have a follow-up question?

16          MR. SILVER:  No, your Honor.

17          MR. SAVITT:  No, your Honor.

18          MR. HURWITZ:  No.

19          THE COURT:  Any objection?

20          MR. SILVER:  No, no, your Honor.

21          (Prospective juror exits.)

22          (End of sidebar conference.)

23          (In open court.)

24          THE COURT:  Who else in the first row?  Juror number

25   4, Mr. Braunstein, you may approach.

1        (Sidebar conference.)

2        (Prospective juror enters.)

3        THE COURT:  Hello.

4        PROSPECTIVE JUROR:  I'm an adjunct at Essex College.

5   My class starts at 5:30.

6        THE COURT:  That's a job like everyone else's.  I

7   can't excuse you because of a work conflict.

8        PROSPECTIVE JUROR:  No problem.

9        THE COURT:  Please return to your seat.

10       (Prospective juror exits.)

11       (End of sidebar conference.)

12       (In open court.)

13       THE COURT:  Does anyone have a challenge for cause

14  based on that excuse?

15       MR. HURWITZ:  No.  I just didn't hear where he is an

16  adjunct.

17       MR. REILLY:  Essex College.

18       THE COURT:  Anyone else in the first row?  Juror

19  number 6, Mr. Muchinsky.

20       (Sidebar conference.)

21       (Prospective juror enters.)

22       THE COURT:  Mr. Muchinsky, good morning.

23       PROSPECTIVE JUROR:  Good morning.

24       THE COURT:  Please tell me what the problem is.

25       PROSPECTIVE JUROR:  I'm a single father.  I have two

1   daughters, seven and nine.  Next week, on the 22nd, my youngest

2   daughter, I have to take her in for a cardiology appointment to

3   check her heart.  She has had fainting spells.

4          They are also in summer camp.  They have to be there

5   at 8:00 to 10:00.  The only way I get there is I take them

6   there and go to work and stay a little later.  At the moment I

7   imposed on my grandmother.  So I'm going to have to pay

8   somebody.

9          On the 26th I'm supposed to take them on a family

10   vacation, which is kind of the only time I get with them; and

11   this would be right up to the point before that, and then I

12   would be out for a week, and I can't afford three weeks out of

13   work because I do project management.

14          THE COURT:  When is your daughter's cardiac

15   appointment?

16          PROSPECTIVE JUROR:  It's on the 22nd, next week.

17          MS. DAYANANDA:  That's Thursday.

18          THE COURT:  Please return to your seat.  Thank you.

19          (Prospective juror exits.)

20          THE COURT:  I'm inclined to excuse him based on the

21   doctor's appointment, but not the work issue.

22          Is there any objection?

23          MR. SILVER:  No, no objection.

24          MR. SAVITT:  No objection.

25          THE COURT:  No party objects.  6 will be excused.

1              (End of sidebar conference.)

2              (In open court.)

3              THE COURT:  Anyone else in the first row?

4              Second row, is there anyone?  Juror number 7,

5      Mr. Smith.

6              (Sidebar conference.)

7              (Prospective juror enters.)

8              THE COURT:  Good morning, Mr. Smith.

9              PROSPECTIVE JUROR:  We were supposed to leave for

10     Florida next Monday.

11             THE COURT:  Next Monday being what date?

12             PROSPECTIVE JUROR:  The 17th, 19th.

13             THE COURT:  Are you driving or flying?

14             PROSPECTIVE JUROR:  Driving.

15             THE COURT:  Any reason you couldn't put it back a few

16     days?

17             PROSPECTIVE JUROR:  No.  If it's necessary we can, we

18     have a return flight September 12.  So we are going to be down

19     there for --

20             THE COURT:  Who is the we?

21             PROSPECTIVE JUROR:  My wife and I.

22             THE COURT:  And did you rent a hotel?

23             PROSPECTIVE JUROR:  No.  We have a condo there.

24             THE COURT:  What would be the challenge in pushing

25     your trip back a week?

USA v. Polanco/Vasquez

1      PROSPECTIVE JUROR:  We were going to do some work on

2   the condo, but we could --

3      THE COURT:  Do you have contractors already retained

4   coming in?

5      PROSPECTIVE JUROR:  Yes.

6      THE COURT:  They are coming in when?

7      PROSPECTIVE JUROR:  Probably Wednesday, Thursday.

8      THE COURT:  Of next week?

9      PROSPECTIVE JUROR:  Yeah.

10      THE COURT:  All right.  Return to your seat.

11      (Prospective juror exits.)

12      MR. SAVITT:  Well --

13      THE COURT:  Why don't you come a little closer.  I'm

14   not inclined to excuse him, but if there is a challenge for

15   cause I will hear it.

16      MR. SAVITT:  Your Honor, it seems to me that he really

17   doesn't want to sit on this jury; and although I understand,

18   that's really -- that's not a good enough reason to challenge

19   somebody for cause.

20      My concern is this.  We have two defendants here,

21   speaking for both of us hopefully, who are facing life, and we

22   need jurors' undivided attention.  If he is going to be upset

23   because he can't get to Florida for whatever reason he posits

24   or reasons, that he may hypothesize it be to our -- in fact,

25   the only ones who can really get hurt here are the defendants,

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    and that's my concern.

2           MR. HURWITZ:  Maybe I misunderstood your Honor's

3    inclination was to do what in this case with this juror?

4           THE COURT:  I'm inclined not to excuse him.

5           MR. HURWITZ:  Not to excuse him.  I see.  I agree with

6    Mr. Savitt.

7           THE COURT:  What's the government's opinion?

8           MR. SILVER:  Judge, I think the juror equivocated and

9    when pressed a little bit said actually we would be able to

10   push the trip back a few days.  So I don't think it will be

11   necessary to excuse him.  I think he seemed willing.

12          THE COURT:  I agree with the government's position on

13   Mr. Smith.  I'm not going to excuse him.  I find it very

14   difficult to accept the idea that I have to impose on people

15   who work for small salaries to miss their pay while Mr. Smith's

16   enthusiasm for leaving is based upon his desire to improve and

17   remodel his second home.  That's something I find difficult

18   digesting.

19          MR. SAVITT:  I understand.  That's a challenge I don't

20   think I will ever face, your Honor, second home.

21          (End of sidebar conference.)

22          (In open court.)

23          THE COURT:  All right.  Who else in the second row?

24   Juror number 10, Mr. Woerter.

25          (Prospective juror enters.)

USA v. Polanco/Vasquez

1          THE COURT:  This is number 10, Mr. Richard Woerter.

2     Good morning, Mr. Woerter.  How are you today?

3          PROSPECTIVE JUROR:  All right.  Two reasons.

4     Financially I can't afford to come here two; weeks, and I only

5     have one other partner at work.  I do home improvements.

6          THE COURT:  How much did you earn last year?

7          PROSPECTIVE JUROR:  You know, I don't know.

8          THE COURT:  You can give me a ballpark.

9          PROSPECTIVE JUROR:  40,000.

10         THE COURT:  When you say you can't afford it, are you

11    married?

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Does your wife work outside the home?

14         PROSPECTIVE JUROR:  She is home right now, with the --

15    I have two kids.

16         THE COURT:  So she is not working at all?

17         PROSPECTIVE JUROR:  Not right now.

18         THE COURT:  When did she last work?

19         PROSPECTIVE JUROR:  She was a teacher.  She is off.

20         THE COURT:  She is off for the summer?

21         PROSPECTIVE JUROR:  Yeah.

22         THE COURT:  So she is going back to work in September?

23         PROSPECTIVE JUROR:  Uh-huh.

24         THE COURT:  You can afford to serve, sir.  Thank you.

25         (Prospective juror exits.)

USA v. Polanco/Vasquez

1          MR. SAVITT:  He is a contractor.  I was just wondering

2     if we can hook up Mr. Smith and Mr. Woerter and work out their

3     problems.

4          THE COURT:  Is there any challenge for cause as to

5     Mr. Woerter?

6          MR. SILVER:  No, judge.

7          MR. SAVITT:  No, your Honor.

8          MR. HURWITZ:  No, judge.

9          (End of sidebar conference.)

10          (In open court.)

11          THE COURT:  Anyone else in the second row?  Juror

12     number 11, Mr. Liu.

13          (Sidebar conference.)

14          (Prospective juror enters.)

15          THE COURT:  Good morning, sir.

16          PROSPECTIVE JUROR:  Good morning.  Okay.  So tomorrow

17     I conveniently dislocated my right shoulder and tomorrow I have

18     physical therapy and other treatments scheduled and for later

19     this week as well.  So I was hoping --

20          THE COURT:  What time is your physical therapy

21     session?

22          PROSPECTIVE JUROR:  For tomorrow, 2:00.

23          THE COURT:  Is there any way you can reschedule for

24     the evening?

25          PROSPECTIVE JUROR:  I have already rescheduled from

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    today to tomorrow.

2            THE COURT:  But that doesn't mean you couldn't

3    reschedule for the evening, does it?

4            PROSPECTIVE JUROR:  They open something like 5:00.  I

5    don't know what time.

6            THE COURT:  How long ago was your shoulder injury?

7            PROSPECTIVE JUROR:  Three weeks ago.

8            THE COURT:  How long have you been going for the

9    physical therapy?

10           PROSPECTIVE JUROR:  I had went last week.  Before I

11   was in a sling.  I couldn't actually move it.

12           THE COURT:  Okay.  Please return to your seat.

13           PROSPECTIVE JUROR:  Thank you.

14           (Prospective juror exits.)

15           THE COURT:  I'm a softee for medical procedures.  Is

16   there any objection to him being excused for cause?

17           MR. SILVER:  No objection.

18           MR. SAVITT:  No objection.

19           THE COURT:  If the phone is going to go off, I'm going

20   to choose the ringtone.

21           MR. SAVITT:  I'm sorry, the ringtone.  Yes, excuse me.

22           (End of sidebar conference.)

23           (In open court.)

24           THE COURT:  Anyone else in the second row?

25           In the third row is there anyone?  Juror number 13,

1   Ms. Conanan.

2           (Sidebar conference.)

3           (Prospective juror enters.)

4           THE COURT:  Good morning.

5           PROSPECTIVE JUROR:  Good morning.

6           THE COURT:  How are you today?

7           PROSPECTIVE JUROR:  I'm good.  Thank you.  I'm

8   scheduled to attend a teachers' workshop next week, the 21st

9   and the 22nd.

10          THE COURT:  I can't release you for a work-related

11  reason.  I'm sorry.  Thank you.

12          PROSPECTIVE JUROR:  Okay.  Thanks.

13          (Prospective juror exits.)

14          (End of sidebar conference.)

15          (In open court.)

16          THE COURT:  Anyone else in the third row?  Juror

17  number 17, Ms. Hauck.

18          Any challenges for causes to Ms. Conanan?

19          MR. SILVER:  No, judge.

20          MR. SAVITT:  No.

21          (Sidebar conference.)

22          (Prospective juror enters.)

23          PROSPECTIVE JUROR:  Good morning.

24          THE COURT:  How you doing?

25          PROSPECTIVE JUROR:  Good.  How are you?

1          THE COURT:  Why can't you be with us?

2          PROSPECTIVE JUROR:  First of all, my nephew was

3    murdered by a drug dealer.

4          THE COURT:  The question right now is why you can't be

5    with us.

6          PROSPECTIVE JUROR:  The that's one of the reasons,

7    because I find him guilty already.

8              Number two, chronic kidney stones.  I'm always

9    drinking water and peeing a lot; and, number three, I really

10   don't pay attention to what goes on.  I yawn a lot when I get

11   put into meetings and things like that.

12         THE COURT:  Why don't you return to your seat.

13         (Prospective juror exits.)

14         MR. SAVITT:  I don't want to prompt any 2255s.  I'm

15   challenging her for cause, your Honor.

16         THE COURT:  I understand.  It's, of course,

17   frustrating to see somebody riddle their way off the a jury by

18   saying whatever they think will accomplish the result, but I

19   don't really feel I have much choice.  I'm ready to hear

20   argument to the contrary from the government.

21         MS. DAYANANDA:  No.

22         THE COURT:  All right.  So that was 17, Hauck.

23         MR. SAVITT:  Yes, your Honor.

24         (End of sidebar conference.)

25         (In open court.)

1          THE COURT:  Have I missed anyone in the jury box who

2    would have great difficulty serving?

3          Juror number 12, Mr. Uddin.

4          (Sidebar conference.)

5          (Prospective juror enters.)

6          PROSPECTIVE JUROR:  Hi.

7          THE COURT:  How are you doing?

8          PROSPECTIVE JUROR:  Okay.  Very good.  My mother is

9    very sick in the hospital.

10         THE COURT:  Please come a little closer.

11         PROSPECTIVE JUROR:  My mom is sick.  Like she is

12   very -- she got a big operation and she is in the hospital, of

13   course, Long Island Jewish Hospital.

14         THE COURT:  And have you been going to see her during

15   the workday?

16         PROSPECTIVE JUROR:  We got to stay there, somebody

17   understands here, because she doesn't speak English.

18         THE COURT:  Do you work?

19         PROSPECTIVE JUROR:  Yes, I do.

20         THE COURT:  What do you do?

21         PROSPECTIVE JUROR:  I work in Key Food.

22         THE COURT:  Have you been going to work?

23         PROSPECTIVE JUROR:  Yeah, one day off.

24         THE COURT:  So when you are off is when you go to the

25   hospital, right?

USA v. Polanco/Vasquez

1    PROSPECTIVE JUROR:  Yeah.

2    THE COURT:  And what's your shift at the Key Food?

3    PROSPECTIVE JUROR:  Like 12:00 to like 9:30.

4    THE COURT:  So you have been going in the mornings?

5    PROSPECTIVE JUROR:  Yes.

6    THE COURT:  Yes, you have been going to the hospital

7  in the morning?

8    PROSPECTIVE JUROR:  All right.

9    THE COURT:  All right.  Return to your seat.

10    PROSPECTIVE JUROR:  I have difficulty that I can make

11  it or not.  Operation is a big operation and she got a stomach.

12    THE COURT:  I hope she does well.

13    PROSPECTIVE JUROR:  Thank you.

14    (Prospective juror exits.)

15    THE COURT:  Any objection if he is excused for cause?

16    MR. SILVER:  No.

17    THE COURT:  Poor fellow.

18    MR. SAVITT:  No.

19    (End of sidebar conference.)

20    (In open court.)

21    THE COURT:  Anyone else in the main jury box on my

22  left?  In this row, is there anyone who would face an unusual

23  obstacle to serving?  Juror number 19, Ms. Bailey, you may

24  approach.

25    (Sidebar conference.)

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    (Prospective juror enters.)

2    PROSPECTIVE JUROR:  Hi.

3    THE COURT:  How you doing?

4    PROSPECTIVE JUROR:  I'm doing -- yes, I have a

5    sickness.  I have fibromyalgia.  I take medicine Lyrica.  Some

6    days I'm good and some days I'm down, but when I take the

7    medication I can't stay up.

8    THE COURT:  You mean you fall asleep?

9    PROSPECTIVE JUROR:  Because the Lyrica relax the

10   muscles, and I go to sleep.  I work night, and in the daytime I

11   stay home and sleep, and then I have a 12-year-old who right

12   now I left here alone because I work nights, because it's easy

13   to find a place to put her to sleep than to in the daytime.  So

14   I pick her up from school at 3:00 and then help her with

15   homework, and then I go to work to bed at 6:00; but in the

16   summer now, if she is home and I leave her alone right now by

17   herself, because I work at night, and keep her during the day

18   because summer school is finished.

19   THE COURT:  Thank you.  Please return to your seat.

20   (Prospective juror exits.)

21   THE COURT:  Any objection if I excuse her?

22   MR. SAVITT:  No, your Honor.

23   MR. SILVER:  No.

24   THE COURT:  Mr. Hurwitz, would you mind piping in just

25   so the record is clear?  So your client's rights are --

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    MR. HURWITZ:  No objection.

2    THE COURT:  Thank you, sir.

3    (End of sidebar conference.)

4    (In open court.)

5    THE COURT:  Any else on my left.  I can't -- you know

6  what, I'm going to move around a little bit and make sure I'm

7  not missing anyone.

8    Juror number 20, Ms. Sherman-Greene, is your hand

9  raised?

10   (Sidebar conference.)

11   (Prospective juror enters.)

12   THE COURT:  How are you today?

13   PROSPECTIVE JUROR:  I'm good.  I'm good.  My only

14  concern is my diabetes and my blood pressure that's been

15  fluctuating quite a bit lately.  So I don't want to be

16  incapacitated up there and not be fair.  So that's my only

17  concern at this point.

18   THE COURT:  Well, are you generally able to control it

19  with medication?

20   PROSPECTIVE JUROR:  I'm on Medformin, but it hasn't

21  been -- it's been up and down, up and down, three, whatever.

22   THE COURT:  I'm going to be guided by you.  Let me

23  tell you the way the day will usually go.  Okay?

24   PROSPECTIVE JUROR:  All right.

25   THE COURT:  You will get here either 9:00 or 9:30.

USA v. Polanco/Vasquez

1    The judge will give you a break in the middle of the morning,

2    usually about 11:00, 11:15, about 10, 15 minutes.  You will

3    have access to a restaurant.  You will have some relief to see

4    if you need to take any medications.

5        PROSPECTIVE JUROR:  Okay.

6        THE COURT:  There will be an hour's lunch break at

7    about 1:00.  Then you will sit in the afternoon, and you will

8    take a break between 3:00 and 4:00, and you will probably leave

9    the courthouse around 5:00 o'clock.

10        PROSPECTIVE JUROR:  So it shouldn't impede.

11        THE COURT:  Will that allow you to control yourself?

12        PROSPECTIVE JUROR:  I hope so.  I hope so.

13        THE COURT:  If you ever have a problem, he has a case

14    manager, someone like Ms. Keefe, to help him, and you can let

15    her know you need a five-minute recess or you need to get

16    something to eat right now, and they will take a break for you.

17        Will that help you?

18        PROSPECTIVE JUROR:  Yes, I hope so.  Thank you.

19        THE COURT:  Thank you.

20        (Prospective juror exits.)

21        (End of sidebar conference.)

22        (In open court.)

23        THE COURT:  Juror number 27, Mr. Sum, I think I saw

24    your hand.

25        (Sidebar conference.)

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1          (Prospective juror enters.)

2          THE COURT:  Hi.  How you doing?

3          PROSPECTIVE JUROR:  I'm good.  I'm a technical project

4    managers.  One of my clients that I'm working with, I have this

5    project for almost six, nine months, and this week happened to

6    be the week that I had to drop everything and deliver to my

7    clients.  So I have a lot of thing in my mind right now, and

8    it's very hard for me to focus on this case and this is why I

9    want to ask to be excused.

10          THE COURT:  Yes.  Thank you.  Please return to your

11   seat.

12          (Prospective juror exits.)

13          MR. HURWITZ:  What kind of project manager?

14          MS. MAROSI:  Technical project manager.

15          THE COURT:  Any challenge for cause?

16          MR. SAVITT:  Your Honor, the juror says that he can't

17   focus on the case.  I'm not sure whether that could spell

18   trouble for the government or the defense.

19          My concern is that quite often that could be a problem

20   for the defense.  So I will challenge him for cause on behalf

21   of Polanco.

22          MR. HURWITZ:  Join in the challenge, your Honor.  I

23   also think it -- besides the case itself, it could cause

24   problems in the jury deliberation, that he is anxious to leave.

25          MR. SILVER:  Judge, I don't think having a busy

USA v. Polanco/Vasquez

1   workload this week is an adequate basis for excusing for cause.

2           THE COURT:  Yeah.  I don't either, but I am concerned

3   that if there is an 11-to-one vote and he wants to leave, he

4   just strikes me as the type that might.  So I'm going to err on

5   the side of caution and let him go.

6           (End of sidebar conference.)

7           (In open court.)

8           THE COURT:  Anyone else on my left?

9           What about on my right?  Is there anybody who would

10  have great difficulty?  I think it's Mr. Becker whose hand I

11  saw first, number 31.

12          (Sidebar conference.)

13          (Prospective juror enters.)

14          PROSPECTIVE JUROR:  Good morning.

15          THE COURT:  How are you, Mr. Becker?

16          PROSPECTIVE JUROR:  How we doing.  I won't have great

17  difficulty in coming in.

18          I just wanted to let you know that I have two sons in

19  law enforcement.  One is a New York City Police officer, and

20  one is corrections, Nassau County Sheriff's Department, and I

21  don't know if I would be partial to either side because of

22  that.

23          THE COURT:  I'm going to give you some time to think

24  about it, and I'm going to ask a question about that later.

25          PROSPECTIVE JUROR:  Okay.

USA v. Polanco/Vasquez

1    THE COURT:  All right.  Thank you.

2    (Prospective juror exits.)

3    (End of sidebar conference.)

4    (In open court.)

5    THE COURT:  Anyone else?  Number 32, Ms. Jocelyn.

6    (Sidebar conference.)

7    (Prospective juror enters.)

8    PROSPECTIVE JUROR:  Good morning.

9    THE COURT:  How are you today?

10   PROSPECTIVE JUROR:  I'm fine.  How are you?

11   THE COURT:  Swell.  Why can't you be with us?  You

12   seem so pleasant.

13   PROSPECTIVE JUROR:  I would love to.  I love it, but I

14   have a surgical procedure to be done next Wednesday on my knee.

15   I have a cyst to be removed.

16   THE COURT:  Thank you.  Ms. Jocelyn.  Good luck.

17   PROSPECTIVE JUROR:  Thank you.

18   (Prospective juror exits.)

19   THE COURT:  Any objection if she is excused for cause?

20   MR. SAVITT:  No your Honor.

21   MR. HURWITZ:  No, your Honor.

22   THE COURT:  Thank you.

23   (End of sidebar conference.)

24   (In open court.)

25   THE COURT:  Anyone else on my right?  Juror number 36,

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    Mr. Verveniotis?

2              (Sidebar conference.)

3              (Prospective juror enters.)

4              THE COURT:  How do you do, sir?

5              PROSPECTIVE JUROR:  Well, I am a commission-based

6    financial adviser.  After these two weeks I have my two-week

7    vacation that I'm required by law to take.  So I would be out

8    of work, out of production, for a full month with an expensive

9    wife and two kids at home.

10             THE COURT:  You know, I can't excuse you for that

11   reason.  How much did you earn last year?

12             PROSPECTIVE JUROR:  I don't know why that's relevant.

13   I made a hundred thousand dollars.

14             THE COURT:  Okay.  Thank you.  Please return to your

15   seat.

16             (Prospective juror exits.)

17             THE COURT:  Any challenge for cause?

18             MR. SILVER:  No.

19             MR. SAVITT:  No, your Honor.

20             MR. HURWITZ:  No, your Honor.

21             THE COURT:  So the ones I have as excused, am

22   excusing, are number 2, Cepeda; number 6, Muchinsky; number 11,

23   Liu; number 17, Hauck; number 12, Uddin; number 19, Bailey;

24   number 27, Sum; and number 32 Jocelyn.

25             Does anyone have a different recollection or

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    indication in their reports?

2            MR. SAVITT:  No, your Honor.

3            MR. SILVER:  No, your Honor.

4            MR. HURWITZ:  No, your Honor.

5            THE COURT:  Ms. Keefe, please excuse those jurors.

6    Please wait at the sidebar.  We will call the other jurors up.

7            Although no one has specifically requested it, I would

8    alert you, if you would like to have the defendants present at

9    sidebar, you may make that application.

10           MR. HURWITZ:  No request.

11           (End of sidebar conference.)

12           (In open court.)

13           THE CLERK:  The following jurors are excused and

14   should go downstairs to the central jury room on the second

15   floor:  Prospective Juror number 2, Melissa Cepeda; Prospective

16   Juror number 6, Raymond Muchinsky; Prospective Juror number 11,

17   Eugene Liu; Prospective Juror number 12, Badrul Uddin;

18   Prospective Juror number 17, Barbara Hauck; Prospective Juror

19   number 19, Marjorie Bailey; Prospective Juror number 27, Philip

20   Sum; Prospective Juror number 32, Carline Jocelyn.

21           The new Prospective Juror number 2 will be Maria A.

22   Astudillo, A-S-T-R-U-D-I-L-L-O.

23           THE COURT:  Ms. Astrudillo, have I asked any questions

24   yet that you would say yes to?

25           PROSPECTIVE JUROR:  No, you haven't.

1          THE COURT:  Are you able to serve?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Please take seat two.

4          THE CLERK:  The new Prospective Juror number 6 will be

5    Steven W. Song.

6          THE COURT:  Mr. Song, have I asked any questions you

7    would say yes to?

8          PROSPECTIVE JUROR:  No, but I can't serve.

9          THE COURT:  Please come forward and please tell me why

10   you think that's so.

11         (Sidebar conference.)

12         (Prospective juror enters.)

13         PROSPECTIVE JUROR:  My so I have a ticket to travel

14   next Wednesday.

15         THE COURT:  In connection with what?

16         PROSPECTIVE JUROR:  Vacation to be scheduled for a

17   long time.

18         THE COURT:  Do you have tickets already?

19         PROSPECTIVE JUROR:  Yeah.

20         THE COURT:  Where are you going?

21         PROSPECTIVE JUROR:  Barbados.

22         THE COURT:  How long?

23         PROSPECTIVE JUROR:  For four nights, five days.

24         THE COURT:  When do you start your trip?

25         PROSPECTIVE JUROR:  Wednesday next week.

1        THE COURT:  What date is that?

2        PROSPECTIVE JUROR:  The 21st.

3        THE COURT:  Thank you.  Please step back.

4        PROSPECTIVE JUROR:  Thank you.

5        (Prospective juror exits.)

6        THE COURT:  Any objection to excusing him?

7        MR. SILVER:  No objection.

8        MR. SAVITT:  No objection.

9        MR. HURWITZ:  No objection.

10        THE COURT:  That's Mr. Song.

11        (End of sidebar conference.)

12        (In open court.)

13        THE CLERK:  Prospective Juror number 6 will be Anthony

14   M. Brincat, B-R-I-N-C-A-T.

15        THE COURT:  Mr. Brincat, have I asked any questions

16   you would answer yes?

17        PROSPECTIVE JUROR:  Yes.

18        THE COURT:  Please come forward.

19        (Sidebar conference.)

20        (Prospective juror enters.)

21        THE COURT:  Good morning.  How do you do, sir?

22        PROSPECTIVE JUROR:  Good.  How do you do?

23        THE COURT:  What question?

24        PROSPECTIVE JUROR:  I know Nathan Reilly.  We worked

25   together at my current firm.

USA v. Polanco/Vasquez

1    THE COURT:  Would you be able to be a fair and

2  impartial juror?

3    PROSPECTIVE JUROR:  Yes.

4    THE COURT:  Is there any other reason you couldn't

5  serve?

6    PROSPECTIVE JUROR:  No.

7    THE COURT:  At what firm is that?

8    PROSPECTIVE JUROR:  Allen & Overy.

9    THE COURT:  Will you be able to follow the judge's

10  instructions, even if they are different from your

11  understanding of the law?

12    PROSPECTIVE JUROR:  Yes.

13    THE COURT:  Why don't you step back for a moment.

14    MR. HURWITZ:  Excuse me, your Honor.

15    THE COURT:  Step back for a moment.

16    (Prospective juror exits.)

17    THE COURT:  What is it, Mr. Hurwitz?

18    MR. HURWITZ:  I wanted to know in what capacity he

19  worked there.

20    THE COURT:  They worked together.

21    Mr. Reilly, are you lawyers?

22    MR. REILLY:  Mr. Brincat is a human resources

23  professional.

24    THE COURT:  Thank you.  Is there any challenge for

25  cause?

1      MR. SAVITT:  Are they friends?  Did they socialize?

2      (Prospective juror enters.)

3      THE COURT:  Did you know Mr. Reilly only in the

4 office, or did you have a social relationship?

5      PROSPECTIVE JUROR:  Only in the office.

6      THE COURT:  Is he somebody you would go out to lunch

7 with from time to time?

8      PROSPECTIVE JUROR:  Yes.

9      THE COURT:  How big was the office?

10     PROSPECTIVE JUROR:  We are a multinational firm.

11     THE COURT:  More than 100 people work at the premises

12 you and Mr. Reilly worked at?

13     PROSPECTIVE JUROR:  Yes.

14     THE COURT:  How long ago was it, approximately, that

15 you recall?

16     PROSPECTIVE JUROR:  A few years.

17     THE COURT:  Thank you.  Please step back.

18     (Prospective juror exits.)

19     THE COURT:  Any challenge for cause?

20     MR. SILVER:  Not from the government.

21     MR. HURWITZ:  I object.  May we have a moment?

22     MR. SAVITT:  May we have a moment?

23     (Pause.)

24     MR. HURWITZ:  Your Honor, both attorneys, myself and

25 Mr. Savitt, would challenge for cause.  Just because they know

1   each other he may be more likely to accept things that

2   Mr. Reilly may say, for instance, on a summation or opening,

3   just because they have that just common human trait.

4           (Prospective juror enters.)

5           THE COURT:  Mr. Brincat, I'm sorry to put you through

6   this.  Thank you for your patience.

7           Did you work on any projects with Mr. Reilly?

8           PROSPECTIVE JUROR:  No.

9           THE COURT:  Are you confident that you can weigh any

10  arguments he might make or things he might say the same way you

11  would as if you didn't know him?

12          PROSPECTIVE JUROR:  I could.

13          THE COURT:  The same way as if any other lawyer that

14  appeared in the case?

15          PROSPECTIVE JUROR:  I could.

16          THE COURT:  Thank you.  Please take a seat in seat

17  number 6.

18          (Prospective juror exits.)

19          THE COURT:  Your objection is overruled.

20          (End of sidebar conference.)

21          (In open court.)

22          THE CLERK:  New Prospective Juror number 11 will be

23  Ian W. Adman, A-D-M-A-N.

24          (Sidebar conference.)

25          THE COURT:  Mr. Reilly, in connection with Juror

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    number 6, do you have any reason to question the veracity of

2    his responses?

3            MR. REILLY:  No, your Honor.

4            (End of sidebar conference.)

5            (In open court.)

6            THE COURT:  Mr. Adman, have I asked any questions you

7    would say yes to?  Are you able to serve?

8            PROSPECTIVE JUROR:  Yes.

9            THE COURT:  Thank you.  Please take seat number 11.

10            MR. SAVITT:  Excuse me.  Which number is this?

11            THE COURT:  Eleven.

12            MR. HURWITZ:  What's his first name?

13            MR. SAVITT:  Ian.

14            THE CLERK:  New Prospective Juror number 12 will be

15    Cecilia E. Steele.

16            THE COURT:  Ms. Steele?

17            PROSPECTIVE JUROR:  Coming.

18            THE COURT:  I'm sorry.  We didn't see you moving.

19    Thank you.

20            Ms. Steele, have I asked anything you would answer

21    yes?

22            PROSPECTIVE JUROR:  No.

23            THE COURT:  You can serve?

24            PROSPECTIVE JUROR:  Yeah.

25            THE COURT:  Please take seat 12.

1        You are honest, I will give you that.

2        THE CLERK:  The new Prospective Juror number 17 will

3    be Juan P. Gomez.

4        THE COURT:  Mr. Gomez, have I asked anything you would

5    answer yes?

6        PROSPECTIVE JUROR:  Yes.

7        THE COURT:  Please come forward and tell me what it

8    is.

9        (Sidebar conference.)

10        (Prospective juror enters.)

11        PROSPECTIVE JUROR:  Currently work midnights.

12        THE COURT:  What?

13        PROSPECTIVE JUROR:  I'm working midnights.  So I don't

14    think I'm really clear to think in the morning.

15        THE COURT:  How long have you been working midnights?

16        PROSPECTIVE JUROR:  For the past ten years.

17        THE COURT:  What do you do?

18        PROSPECTIVE JUROR:  I'm a doorman.

19        THE COURT:  What do you do during the day?

20        PROSPECTIVE JUROR:  Sleep.

21        THE COURT:  Please return to your seat.

22        (Prospective juror exits.)

23        THE COURT:  Ten years being up nights isn't going to

24    affect his attention.  I'm willing to hold him, if that's what

25    everybody wants.  Is there a challenge for cause?

USA v. Polanco/Vasquez

1          MR. SILVER:  Not from the government.

2          MR. HURWITZ:  Excuse me.

3          (Pause.)

4          MR. SAVITT:  No, we don't have a challenge for cause.

5          (End of sidebar conference.)

6          (In open court.)

7          THE COURT:  Okay.  Mr. Gomez, please take seat number

8     17.  You will do your best.  If you need a break or coffee, you

9     let us know.  You look quite alert to us.

10         And if anybody sees him nodding off, give him a poke.

11         THE CLERK:  Prospective Juror number 19 will be Jason

12    M. T-A-R-T-T-L-O-P-E-Z, T-A-R-T-T hyphen L-O-P-E-Z.

13         THE COURT:  Mr. Tartt-Lopez, have I asked anything you

14    would answer yes?

15         MR. REILLY:  No, your Honor.

16         THE COURT:  Are you able to serve?

17         PROSPECTIVE JUROR:  I am.

18         THE COURT:  Please take the seat closest to the wall.

19    Thank you.

20         THE CLERK:  Protective Juror number 27 would be Maria

21    Dasilva, D-A-S-I-L-V-A.

22         THE COURT:  Ms. Dasilva, have I asked anything you

23    would answer yes to?

24         PROSPECTIVE JUROR:  Yes.

25         THE COURT:  Please come forward.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1      (Sidebar conference.)

2      (Prospective juror enters.)

3      THE COURT:  How are you?

4      PROSPECTIVE JUROR:  I'm good.  I take care of my

5  mother.  My mother just finished having chemotherapy, and she

6  is -- she has been staying with me, and I work remotely two

7  days and I go into the office the others, and I have gotten

8  someone to take care of her for this week but two weeks is a

9  problem for me.

10      THE COURT:  She is otherwise alone in your home?

11      PROSPECTIVE JUROR:  Yes.

12      THE COURT:  What does she need help with these days?

13      PROSPECTIVE JUROR:  She just finished a course of

14  chemotherapy for lymphoma, and she is 81 years old.  She had

15  open heart surgery two years ago.  She had lung surgery three

16  years ago.  So she is --

17      THE COURT:  You don't leave her alone when you go to

18  work?

19      PROSPECTIVE JUROR:  No.  I have someone who comes.

20      THE COURT:  Will you please return to your seat.

21      PROSPECTIVE JUROR:  Thank you.

22      (Prospective juror exits.)

23      THE COURT:  Is there any objection if I excuse her?

24      MR. SILVER:  No.

25      MR. SAVITT:  No, your Honor.

1        MR. HURWITZ:  No objection.

2        THE COURT:  So far we have lost 6 and 27, Dasilva.

3        THE CLERK:  Yes.

4        THE COURT:  All right.

5        (End of sidebar conference.)

6        (In open court.)

7        THE CLERK:  Prospective Juror number 27 will be

8    Charlene Vernon, V-E-R-N-O-N.

9        THE COURT:  Ms. Vernon, have I asked anything yet that

10   you would answer yes?

11       PROSPECTIVE JUROR:  No.

12       THE COURT:  And you can serve over this period of

13   time?

14       PROSPECTIVE JUROR:  Yes.

15       THE COURT:  Please take seat 27.  Thank you very much.

16       THE CLERK:  Prospective Juror number 32 will be Mary

17   M. Genoy, G-E-N-O-Y.

18       THE COURT:  Ms. Genoy, have I asked anything yet you

19   would answer yes?

20       PROSPECTIVE JUROR:  No.

21       THE COURT:  Are you able to serve?

22       PROSPECTIVE JUROR:  Yes.

23       THE COURT:  Please take seat 32.

24       (Sidebar conference.)

25       THE COURT:  So ordinarily I would give them a comfort

1   break about now, but I think in the light of we have been going

2   and given a late start, I'm likely to push through another half

3   hour and give them an early lunch because by the time we get

4   back it will be 12:10 and then have a lunch then.

5          So is anyone uncomfortable?

6          MR. HURWITZ:  I would like to take a two-minute,

7   because I would like to --

8          THE COURT:  If I do that I have to let everyone do

9   that.  You don't have another half hour or so in you?

10          MR. HURWITZ:  I will give it a try.  If I need to, I

11   will raise my hand.

12          MR. SAVITT:  If he needs to I will raise my hand too.

13          THE COURT:  Okay.  Back to your seats, everyone.

14          (End of sidebar conference.)

15          (In open court.)

16          THE COURT:  Juror numbers 6 and 27, Mr. Song and

17   Ms. Dasilva, please return to the central jury room for a

18   different assignment that doesn't conflict with what you have

19   discussed with me.

20          Ladies and gentlemen, I would ordinarily give you a

21   break now, but we got kind of a late start.  Can we go another

22   15, 20 minutes and have an early lunch?  Is there anyone who

23   just can't make it?  All right.

24          I think what we will do then is we will take our lunch

25   break on the very early side.  You will be back here at

1    one o'clock sharp; and we will proceed from that point forward.

2          So before you leave, before you leave, I want you to

3    remember where you are sitting.  So I want you to remember

4    where you are sitting.  I want you to be in the central jury

5    room, ready to come upstairs as a group, at ten to 1:00, and we

6    will get started again at one o'clock.

7          For those who don't want to navigate the neighborhood,

8    there is a cafeteria on the third floor.

9          Don't discuss the case with anyone.  Don't make any

10   decisions about anything involving the case.

11         If you run into people in the courtroom now, the

12   lawyers, and they seem to be rude, they won't get on the

13   elevator with you, they won't say good afternoon, they are on

14   line with you in the cafeteria and they walk away, it's not

15   because they are rude people and they don't like you.  They are

16   avoiding any interaction with you whatsoever at my instruction.

17         If anyone tries to talk to you about this case, let me

18   know, and I will take care of it from there.

19         Enjoy your lunch hour.  Central jury room, second

20   floor, in an hour.

21         (Pause.)

22         THE COURT:  Ms. Dayananda has something she wants to

23   put on the record.

24         MS. DAYANANDA:  Your Honor, it just dawned on me

25   during the questions that the question of does anyone have a

1   problem understanding the courtroom procedures or language

2   bears --

3           THE COURT:  It's next on my list.  That was the

4   question -- one of the big questions I wanted to get through

5   before the recess, but I couldn't deny a juror's bladder.

6           MS. DAYANANDA:  Okay.  Thank you.

7           THE COURT:  Thank you for the reminder.  Please don't

8   let the way I answer you make you hesitate to remind me if I am

9   on track.

10          MS. DAYANANDA:  Okay.  Thank you.

11          THE COURT:  I'm going to have the courtroom locked

12  because I don't want jurors coming here by accident and

13  perceiving the custodial status of the defendants.  So if there

14  are materials that you want to have available to you during the

15  lunch hour, take them with you.  If there are not materials, if

16  you are concerned about the security of materials, you may have

17  some confidence that the courtroom will be locked during the

18  lunch break.

19          MS. DAYANANDA:  May we stay here then?

20          THE COURT:  You may stay here.  I will have the

21  marshals to have the defendants in their chairs at a quarter to

22  1:00.  Thank you very much, marshal.

23          MS. DAYANANDA:  Thank you.

24          MR. SAVITT:  Thank you, your Honor.

25          (Lunch recess.)

1      A F T E R N O O N     S E S S I O N

2           (In open court.)

3           MR. SAVITT:  There is something I need to bring to the

4      court's attention.  Maybe I should do it at sidebar.

5           THE COURT:  Sure.  Come on up.

6           (Sidebar conference.)

7           THE COURT:  Yes, Mr. Savitt.

8           MR. SAVITT:  Your Honor, Ms. Marosi and I went to the

9      famous Cadman Diner across the street, and as we were entering

10     the diner I happened to notice that Juror number 36, Steven --

11          MS. MAROSI:  Verveniotis.

12          MR. SAVITT:  -- was sitting and speaking to one of the

13     proprietors.  We went, Ms. Marosi and I, to the far end of the

14     restaurant, sat down.  The proprietor came over to me, and I

15     think in totally good faith he said, listen, he is speaking to

16     my friend.  He really can't.  He doesn't want to serve on the

17     jury.  Is there anything you can do about it?  I said, well, I

18     said, I really can't get into it, but that's what happened.

19          THE COURT:  Thank you for enlightening us.

20          MR. SAVITT:  You are welcome.

21          MR. HURWITZ:  May I ask if your Honor has any --

22          THE COURT:  Counsel.  Yes, Mr. Hurwitz?

23          MR. HURWITZ:  I'm just wondering if your Honor has any

24     thoughts on the subject.  My thought is this:  Your Honor,

25     before we broke, told the jurors about behaving with the

1  attorneys in terms of he made it clear that we shouldn't be

2  contacting them, they shouldn't be speaking to us.  Yet, this

3  juror chose to approach Mr. Savitt through --

4          THE COURT:  That's not what I understood Mr. Savitt to

5  say.

6          MS. MAROSI:  Really an intermediary.

7          MR. SAVITT:  I did not inquire to the proprietor

8  whether the juror chose to do that, but clearly the juror must

9  have brought to the attention of the proprietor that he doesn't

10  want to sit on this particular jury, and I'm one of the

11  lawyers.

12          THE COURT:  But he didn't approach you, Mr. Savitt.

13          MR. SAVITT:  The juror did not approach me.  He may

14  have sent the proprietor or the proprietor may have done it

15  sua sponte.

16          MR. HURWITZ:  I agree with that.  I agree with that.

17          Nevertheless, your Honor, safetywise, considering what

18  did occur, I would ask that he be excused.

19          THE COURT:  Yes.  Anybody else wish to weigh in on

20  that?

21          MR. SILVER:  I don't think so, judge.  I don't think

22  there is any basis to excuse him based on what we have heard.

23          THE COURT:  I'm not going to excuse a juror because he

24  is frustrated that his six-figure income wouldn't be as great

25  this year because he loses an additional two weeks of work.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

USA v. Polanco/Vasquez

1    That was his only complaint.

2           The fact that he vented to the proprietor of the

3    restaurant is unfortunate, but it doesn't give rise to a

4    challenge for cause.  I have no reason to excuse him for cause,

5    in my judgment.

6           I sure Mr. Savitt aired the information so I could

7    have it and so counsel could consider it from all sides in

8    exercising their peremptories, and now that you are well

9    advised of his attitude and we expressed it, I'm sure you will

10   have it available to you as you contemplate how you proceed.

11          MR. SAVITT:  I just wanted to be very clear also that

12   Mr. Hurwitz was not at the restaurant with Ms. Marosi and

13   myself and did not hear what I had to say about Juror number 36

14   prior to my actually saying it on the record.

15          THE COURT:  Thank you very much.  Anything else while

16   we are gathered?  Okay.  Then thank you very much, everyone.

17          (End of sidebar conference.)

18          (In open court.)

19          THE COURT:  Well, ladies and gentlemen, good

20   afternoon.  I hope you had a pleasant lunch break, and we will

21   try to move forward as quickly as we can.

22          Counsel, I'm afraid I need to see you at the sidebar

23   before we get underway.

24          (Sidebar conference.)

25          THE COURT:  I'm beginning to feel as though if you had

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    made plans you best cancel them.  Juror number 20 approached

2    Ms. McCarthy, who is the court's jury administrator, to express

3    her view that she thinks she may recognize the defendants from

4    her neighborhood in Queens.  I would like to call her forward

5    and explore further.

6              (End of sidebar conference.)

7              (In open court.)

8              THE COURT:  Can I please see Juror number 20,

9    Ms. Sherman-Greene, at the sidebar.

10             (Sidebar conference.)

11             (Prospective juror enters.)

12             THE COURT:  Good afternoon.

13             PROSPECTIVE JUROR:  Hi, again.

14             THE COURT:  I have been told that you believe you may

15   recognize somebody in the courtroom.

16             PROSPECTIVE JUROR:  Okay.

17             THE COURT:  Come a little closer, everybody.

18             PROSPECTIVE JUROR:  I'm not certain, but I was the

19   foreman over at the grand jury, but this was like 2010, 2009 or

20   '10.  Anyway, so I just wanted to make sure so we don't have

21   any mistrials or anything.

22             THE COURT:  So tell me more.  You were a foreman of a

23   grand jury in Queens?

24             PROSPECTIVE JUROR:  For the petit grand jury.

25             THE COURT:  Okay.

1    PROSPECTIVE JUROR:  So we did go 60, 56 cases.  I'm

2  not sure.  I just wanted to make sure we ain't having an error.

3    THE COURT:  And you think you may recognize somebody

4  from that proceeding?

5    PROSPECTIVE JUROR:  Yeah, yeah.

6    THE COURT:  Is it one or both of the defendants?

7    PROSPECTIVE JUROR:  One, one.

8    THE COURT:  The one sitting closest to me or furthest

9  way?

10    PROSPECTIVE JUROR:  Closest to me -- no furthest away,

11  but I'm not sure.  I wanted to make sure.

12    THE COURT:  Okay.  I appreciate that.  Could you step

13  back to that chair over there for just a minute while I consult

14  with counsel.

15    (Prospective juror exits.)

16    MR. HURWITZ:  I'm wondering if it's a grand jury

17  recognized how --

18    MS. DAYANANDA:  Because defendant probably testified,

19  and that's why she is saying she recognizes him.

20    MR. HURWITZ:  At the grand jury?

21    MS. DAYANANDA:  I'm not saying he did, but I'm just

22  saying that's the basis.

23    THE COURT:  I drew the same inference.  I suppose it's

24  possible that he was a fellow grand juror.

25    MR. SILVER:  Well, may I say for the record that

1  Defendant Vasquez, who I think is the one she was indicating,

2  has been in custody in this case since 2008.  I'm not aware of

3  any case that he has had in Queens County.

4          THE COURT:  Do you have any contrary information,

5  Mr. Hurwitz?

6          MR. HURWITZ:  Did you say Queens?

7          MR. SILVER:  I believe the woman said Queens, yes,

8  Queens County.

9          MR. HURWITZ:  No, I have no contrary information.

10          THE COURT:  Can I ask you to come back here,

11  Ms. Sherman-Greene.

12          (Prospective juror enters.)

13          PROSPECTIVE JUROR:  Sure.

14          THE COURT:  You say that you were a grand jury person

15  in Queens County in 2010.

16          PROSPECTIVE JUROR:  Yes.  I was the foreman.

17          THE COURT:  And you believe you may recognize

18  Mr. Vasquez from that experience?

19          PROSPECTIVE JUROR:  I know he looked familiar.

20          THE COURT:  If he looks familiar to you, in what

21  capacity did he come in?

22          PROSPECTIVE JUROR:  That's why I thought maybe he was

23  after the grand jury.  I wasn't sure.  So I said let me find

24  out whether he was in Queens.

25          THE COURT:  As a juror, as a witness, do you remember

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1  how?

2          PROSPECTIVE JUROR:  Me?

3          THE COURT:  You say you may recognize him from the

4  grand jury?

5          PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Do you remember what role he played?

7          PROSPECTIVE JUROR:  I don't.  I don't.

8          THE COURT:  I'm told by counsel for Mr. Vasquez and

9  counsel for the government that they are very familiar with

10 Mr. Vasquez' itinerary and that he was not involved in any

11 Queens grand jury proceedings in 2010.

12         PROSPECTIVE JUROR:  Good.  Okay.

13         THE COURT:  Does that satisfy you?

14         PROSPECTIVE JUROR:  Yeah, yeah.  I just want to make

15 sure you don't end up with a mistrial.

16         THE COURT:  Does that satisfy you?

17         PROSPECTIVE JUROR:  Yes, it does.

18         THE COURT:  Thank you so much.

19         PROSPECTIVE JUROR:  Thank you so much.

20         (Prospective juror exits.)

21         THE COURT:  Is there anything further anyone would

22 have me inquire?

23         MR. SILVER:  No, judge.

24         MR. SAVITT:  No.

25         MR. HURWITZ:  No.

1          THE COURT:  Thank you, everybody.

2          (End of sidebar conference.)

3          (In open court.)

4          THE COURT:  All right I'm ready to ask my next

5    question.  I want to thank all of you forgetting back to court

6    punctually and remembering your seating assignment.  My next

7    question is whether any of you have difficulty seeing, hearing,

8    or understanding English.  If you understand what I'm saying

9    your English is more than adequate to be a juror in the case.

10         If you aren't understanding the words I'm using -- and

11   hopefully you understand enough to know what I'm asking you --

12   you can raise your hand.  Is there anybody in the jury box who

13   thinks they don't see or hear or speak English well enough to

14   be a juror?

15         Juror number 8, Ms. Chen, come on up.

16         Counsel, come up and stay.  Bring whatever you need

17   for a visit.

18         (Sidebar conference.)

19         (Prospective juror enters.)

20         THE COURT:  Hi, Ms. Chen.  Do you work?

21         PROSPECTIVE JUROR:  I don't --

22         THE COURT:  Do you have a job?  What do you do?

23         PROSPECTIVE JUROR:  I'm a home attendant.

24         THE COURT:  Do you watch television in English?

25         PROSPECTIVE JUROR:  My English, a little bit.

1          THE COURT:  Okay.  Why don't you return to your seat.

2    Go back to your seat.  Okay.

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Sit down again.

5          PROSPECTIVE JUROR:  Okay.  Thank you.

6          THE COURT:  Thank you.  Back here.

7          (Prospective juror exits.)

8          THE COURT:  Is there any objection if she is excused

9    for cause?

10         MR. SAVITT:  No.

11         MR. SILVER:  No.

12         THE COURT:  Best part of this job is having a chair

13   with wheels.

14         I know from a conversation with my clerk that there is

15   at least one other juror in the box with the same problem.  She

16   is not raising her hand.  I'm going to call her forward now.

17   That's why I'm calling her without her indicating she has a

18   problem.

19         Juror number 16, Ms. Rodriguez, I got the right one,

20   right?

21         THE CLERK:  Exactly.

22         (Prospective juror enters.)

23         THE COURT:  Good afternoon.

24         PROSPECTIVE JUROR:  Yes.

25         THE COURT:  I think you said to my clerk earlier that

1    you had a problem with English.

2           PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Is that right?  You are not understanding

4    me, are you?

5           PROSPECTIVE JUROR:  I understand little.

6           THE COURT:  Only a little bit.  Do you have a job?

7           PROSPECTIVE JUROR:  Huh?

8           THE COURT:  Do you have a job?

9           PROSPECTIVE JUROR:  Yes.

10          THE COURT:  What's your job?

11          PROSPECTIVE JUROR:  Home attendant.

12          THE COURT:  Thank you.  Please return to your seat.

13          PROSPECTIVE JUROR:  Okay.

14          (Prospective juror exits.)

15          THE COURT:  Any objection?

16          MR. SAVITT:  No, your Honor.

17          MR. HURWITZ:  No.

18          MR. SILVER:  No, your Honor.

19          (End of sidebar conference.)

20          (In open court.)

21          THE COURT:  Is there anyone else in the jury box who

22    doesn't see, hear, or understand what I'm saying?

23          Is there anybody on my left who doesn't see, hear, or

24    understand me?  What about on my right?

25          Jurors 8 and 16 are excused.

1      Ms. Keefe.

2      THE CLERK:  Ms. Chen and Ms. Rodriguez, you can go

3   downstairs to the second floor.  You are excused.

4      PROSPECTIVE JUROR:  Juror number 8 will now be

5   Antoinette McRae, M-C-R-A-E.

6      THE COURT:  Ms. McRae, have you been following along

7   with the questions I asked?

8      PROSPECTIVE JUROR:  Yes, your Honor.

9      THE COURT:  Are there any you would say yes to?

10     PROSPECTIVE JUROR:  No.

11     THE COURT:  Are you able to serve?

12     PROSPECTIVE JUROR:  Yes.

13     THE COURT:  Please take the empty chair in the second

14   row, number 8.  Thank you very much, Ms. McRae.

15     THE CLERK:  Prospective Juror number 16 will now be

16   Allen W. Chin.

17     THE COURT:  Mr. Chin, good afternoon.

18     PROSPECTIVE JUROR:  Good afternoon.

19     THE COURT:  Have you followed along with my questions?

20     PROSPECTIVE JUROR:  Yes.

21     THE COURT:  Are there any you would answer yes?

22     PROSPECTIVE JUROR:  No.

23     THE COURT:  Are you able to serve?

24     PROSPECTIVE JUROR:  Yes.

25     THE COURT:  Please take the empty chair in the last

1    row.

2          Counsel, I will ask you to take your seats again as

3    well.

4          Ladies and gentlemen, the 36 of you who are in the

5    front part of the courtroom, I have a list of names that I

6    expect will come up during the course of the trial, either

7    because they will be witnesses or because they will be referred

8    to by the witnesses.  I'm going to read that list of names to

9    you, and if you think you recognize any of the names or the

10   places that I list, I will ask you to tell me when I am done.

11         Carmelo Danilo Araujo -- and I'm going to mispronounce

12   these names; I'm sorry -- A-R-A-U-J-O.  Edwin Batista-Tavares.

13   Gustavo Guttierez.  Antonio Henriquez.  Adan Martinez-Pichardo,

14   P-I-C-H-A-R-D-O.  Javier Rivera.  Fabio Ramos-Garcia.  Franklin

15   Vargas.  Pablo Vargas.  Edwin Mendez.  Bladamir Morey,

16   M-O-R-E-Y.  Javier Rivera-Ortiz.  Derbi, D-E-R-B-I, Silverio.

17   Jomarya, J-O-M-A-R-Y-A, Martinez.  Leonel Bohorquez.  Liliana

18   Colmenares.  James Van Cura, C-U-R-A, of the New York State

19   Police.  William Buchanan, New York City Police.

20         Everyone I'm going to read now is with the New York

21   City Police:  William Buchanan; Patrick Hickey; Joseph Cantone;

22   Joseph Carinha, C-A-R-I-N-H-A; Daniel Medina; Julio Minaya;

23   James Bennett; and Keith Schiller.  Those are all people

24   connected with the New York City Police Department, either as

25   officers or retired officers.

1   Detective Edward Devoe, D-E-V-O-E of the Haverstraw

2   Police Department.  That's from Rockland County.  Dr. Jason

3   Graham from the New York County -- excuse me, New York City

4   Medical Examiner's office.  And an address that you may be

5   familiar with -- if you are, you will let me know -- of 260

6   Fort Washington Avenue, in Manhattan.

7   Is there anybody in the jury box who thinks any of

8   these names or places are familiar?  No hands on my left; no

9   hands and on my right.

10   Juror number -- making this hard on me -- are you

11   Ms. Genoy?

12   A    Yes.

13   PROSPECTIVE JUROR:

14   THE COURT:  Number 32, please approach.

15   (Sidebar conference.)

16   (Prospective juror enters.)

17   THE COURT:  See why you need good shoes?

18   PROSPECTIVE JUROR:  I don't know, even know if this is

19   a police officer, but the name Patrick Hickey, I went to school

20   with one.  So I don't know if it's him or not.

21   THE COURT:  How long ago or not?

22   PROSPECTIVE JUROR:  Twenty-five years ago.

23   THE COURT:  If it is the same Patrick Hickey do you

24   have --

25   PROSPECTIVE JUROR:  No.

1          THE COURT:  -- do you have any positive or negative

2    recollections that are stronger than your ability to be

3    objective?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  Thank you very much.

6          (Prospective juror exits.)

7          (End of sidebar conference.)

8          (In open court.)

9          THE COURT:  I'm now going to ask a question that I

10   won't call you up to answer, unless you ask to come up.  I'm

11   going to ask a separate question about law enforcement.  So

12   don't answer that one yet.

13         My first question is whether you or anyone in your

14   immediate family or closest circle of friends are lawyers or

15   work in the legal profession.  So just to say it again:  Are

16   you a lawyer or do you work in the courts or in the criminal

17   justice system; and, if not, if you aren't, is there anyone in

18   your plead family or closest circle of friends who does?

19         So let's talk about folks in the first row.  Anybody

20   lawyers?  Number 5, Ms. Francis, tell me who it is.

21         PROSPECTIVE JUROR:  My dad is a lawyer.

22         THE COURT:  Does he practice criminal law?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  Is he a prosecutor?

25         PROSPECTIVE JUROR:  No.

1    THE COURT:  Has he ever been?

2    PROSPECTIVE JUROR:  No.

3    THE COURT:  Do you know if he's had cases in this

4  courthouse?

5    PROSPECTIVE JUROR:  I don't know.

6    THE COURT:  Can you be fair and impartial despite your

7  father being a criminal defense attorney?

8    PROSPECTIVE JUROR:  Yes.

9    THE COURT:  Will you refrain from discussing this case

10  until it's over and the verdict has been rendered?

11    PROSPECTIVE JUROR:  Yes.

12    THE COURT:  Anyone else in the first row?

13    Juror number 3, Mr. Rothacker.  I hope I didn't

14  mispronounce it.

15    PROSPECTIVE JUROR:  No.  That's good.  A friend of

16  mine, a close friend, is a lawyer.  She is not a criminal

17  lawyer.  And actually, a friend of mine is an intern in this

18  building with the probation office.

19    THE COURT:  Okay.

20    PROSPECTIVE JUROR:  As of this summer.  He just

21  started a few months ago.

22    THE COURT:  Can you be fair and impartial despite

23  those relationships?

24    PROSPECTIVE JUROR:  Yes.

25    THE COURT:  Can you refrain from discussing this case

1    with those people until it's over, or with anybody else?

2             PROSPECTIVE JUROR:  Yes.

3             THE COURT:  Thank you.  Anybody in the first row I

4    missed?

5             Second row.  What a lucky group you are.  No lawyers

6    to plague your social acquaintances.  We have one, number 8.

7    Just let me get your name, please.  Give me one minute to catch

8    up.  You are Ms. McRae?

9             PROSPECTIVE JUROR:  Yes.  Can you just repeat the

10   question?

11            THE COURT:  I want to know whether you are a lawyer or

12   work in the criminal justice system; and, if you aren't,

13   whether you have any immediate family or close friends who are.

14            PROSPECTIVE JUROR:  Yes.

15            THE COURT:  Tell me.

16            PROSPECTIVE JUROR:  I'm retired from law enforcement

17   and, of course, still have contact with the law enforcement

18   officers.

19            THE COURT:  All right.  I was going to ask about law

20   enforcement in a second question, but maybe it will be easier

21   to ask in one.  What was your law enforcement position?

22            PROSPECTIVE JUROR:  Police officer, New York City

23   police officer.

24            THE COURT:  How long are you retired?

25            PROSPECTIVE JUROR:  Over ten years.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1          THE COURT:  Can you be fair and impartial as a juror

2     in a criminal case?

3          PROSPECTIVE JUROR:  Yes, your Honor.

4          THE COURT:  I'm going to tell you now that it is the

5     responsibility of every juror to evaluate the testimony of

6     witnesses, whether they are in law enforcement or not, the same

7     way.  What I mean by that is that you cannot be more receptive

8     to someone's credibility or more skeptical of someone's

9     credibility.

10          I will say it a different way.  You can't think it's

11     more likely that somebody is telling the truth or more likely

12     that they are lying because they are a law enforcement officer

13     or have been.  You have to evaluate their testimony the way you

14     would of any other witness.  You can consider their motive,

15     their interest, their manner, their demeanor, the logic of what

16     they have to say; but you can't assume they are telling the

17     truth or lying just because they are a police officer or

18     federal agent.

19          Can you follow that instruction?

20          PROSPECTIVE JUROR:  Yes, your Honor.

21          THE COURT:  Is there anyone in the first row who

22     didn't answer the question before I expanded it, but would now?

23          So, just to be clear, now I'm asking if you are a

24     lawyer, or work with lawyers, have lawyers in your close

25     family, have lawyers in your close circle of friends.  I also

1    want to know if you or anyone in that circle of close friends

2    or family are involved in law enforcement or criminal justice.

3    Are there police, federal agents, parole officers, probation

4    officers, federal agents, corrections officers in that circle?

5            Again, first row?  No more hands.

6            Second row, anybody?

7            Third row, anybody?  Juror number 14, Ms. Robinson.

8            PROSPECTIVE JUROR:  My husband is a retired correction

9    officer, captain.

10           THE COURT:  Can you be fair and impartial in this case

11   and weigh testimony as I have instructed, despite that?

12           PROSPECTIVE JUROR:  Yes.

13           THE COURT:  Anyone else in the third row?  Juror

14   number 13, Ms. Conanan?

15           PROSPECTIVE JUROR:  Yeah.  One of my close friends is

16   a lawyer.

17           THE COURT:  What kind of law?

18           PROSPECTIVE JUROR:  He is corporate.

19           THE COURT:  Corporate law.  You can't talk to him

20   while you are a juror.  Can you follow that instruction?

21           PROSPECTIVE JUROR:  (Nodded.)

22           THE COURT:  Will you be fair and impartial despite

23   your relationship with him?

24           PROSPECTIVE JUROR:  Yes.

25           THE COURT:  Anyone else?  Juror number 16, Mr. Chin?

1    PROSPECTIVE JUROR:  Yes.  My sister-in-law is retired

2  from NYPD.

3    THE COURT:  Can you be fair and impartial?

4    PROSPECTIVE JUROR:  Yes.

5    THE COURT:  Will you follow the instruction about

6  weighing law enforcement testimony I have already given?

7    PROSPECTIVE JUROR:  Yes.

8    THE COURT:  Anyone else in the back row?

9    Juror number 18, Ms. Luciano?

10    PROSPECTIVE JUROR:  Yes.  My brother is a cop, and my

11  grandfather is a retired detective.

12    THE COURT:  Can you be a fair and impartial juror in a

13  criminal case?

14    PROSPECTIVE JUROR:  Yes.

15    THE COURT:  Can you weigh law enforcement testimony

16  objectively, as I have instructed?

17    PROSPECTIVE JUROR:  Yes.

18    THE COURT:  Anyone on my left?  You are hiding back

19  there, behind the screen, but I'm going to get to you; but

20  first I have Juror number 19.

21    PROSPECTIVE JUROR:  My brother-in-law is a --

22    THE COURT:  Mr. Tartt-Lopez, I lost you for a minute

23  on my list, but I have you now.  Thank you, sir.

24    PROSPECTIVE JUROR:  My sister-in-law is a state

25  trooper.

1      THE COURT:  Can you be fair and impartial?

2      PROSPECTIVE JUROR:  Yes, I can.

3      THE COURT:  Can you weigh law enforcement testimony as

4   I have directed?

5      PROSPECTIVE JUROR:  Yes.

6      THE COURT:  Anyone else?  Juror number 23,

7   Ms. Severino?

8      PROSPECTIVE JUROR:  In another country.

9      THE COURT:  Can you be fair and impartial?

10     PROSPECTIVE JUROR:  Yes.

11     THE COURT:  And you will weigh law enforcement

12  testimony as I have instructed?

13     PROSPECTIVE JUROR:  Yes.

14     THE COURT:  Have I missed anyone on my left, either in

15  the box or in the row?  On my right?

16     Juror number 28, Ms. McLaughlin, I asked you.  Do

17  think about it?  Do you have a different opinion now?

18     PROSPECTIVE JUROR:  No.

19     THE COURT:  You can be fair and impartial and weigh

20  law enforcement testimony as I have instructed?

21     PROSPECTIVE JUROR:  Uh-huh.

22     THE COURT:  Are there any contacts you neglected to

23  tell us about at sidebar earlier?

24     PROSPECTIVE JUROR:  Well, you asked all the relatives.

25  One brother is in law; besides my brother, my son; four

USA v. Polanco/Vasquez

```
1   brothers in law; a nephew and three close friends, federal,

2   NYPD, and court.

3           THE COURT:  You can be fair and impartial despite all

4   of that?

5           PROSPECTIVE JUROR:  Yes.

6           THE COURT:  Anyone else on my right?

7           Juror number 31, Mr. Becker, you have told us a little

8   bit before, but I don't recall the details.  Can I impose upon

9   you to repeat?

10          PROSPECTIVE JUROR:  One son -- one in NYPD and the

11  other one in sheriff's in Nassau County Corrections.

12          THE COURT:  Can you be fair and impartial despite

13  those relationships?

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  Will you weigh law enforcement testimony

16  as I have instructed?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  Anyone else on my right?  Number 32,

19  Ms. Jocelyn?

20          PROSPECTIVE JUROR:  No.

21          THE COURT:  No, we have excused Ms. Jocelyn, haven't

22  we?  Ms. Genoy.

23          PROSPECTIVE JUROR:  I just work with corporate

24  lawyers.

25          THE COURT:  And you won't discuss it with them, and
```

1    you will remain fair and impartial despite that?

2        PROSPECTIVE JUROR:  Yes.

3        THE COURT:  Thank you.  Anyone else on my right?

4    Juror number 35, Mr. Millan?

5        PROSPECTIVE JUROR:  Yes.  My mom is a retired

6    detective, couple of friends correction officer, and couple of

7    friends in NYPD.

8        THE COURT:  Can you be fair and impartial, despite

9    those relationships, in a criminal case?

10       PROSPECTIVE JUROR:  (Nodded.)

11       THE COURT:  Yes?

12       PROSPECTIVE JUROR:  Yes.

13       THE COURT:  Will you follow the instructions I have

14   already given on how to weigh law enforcement testimony?

15       PROSPECTIVE JUROR:  Yes.

16       THE COURT:  Have I missed anyone?  I see no further

17   hands raised.  Thank you very much for your patience, ladies

18   and gentlemen.

19           As I told you, I mentioned before that if you look

20   around the courtroom, you might see that the defendants are

21   being assisted by an interpreter who is translating these

22   proceedings.  I told you that you shouldn't draw any

23   conclusions about how well someone speaks English from the fact

24   that they are using an interpreter.  It's not evidence.  I also

25   said that you should not take it into account or hold it

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1   against someone that they may seek the aid of an interpreter or

2   that they might not be fluent in English.

3          Is there anyone here who thinks they could not be fair

4   and impartial to someone because they use an interpreter to

5   help them understand the proceedings?  I see no hands are

6   raised.

7          I hope it is obvious to each of you that a juror may

8   not make any decision, evaluate evidence, or consider in his or

9   her deliberations any prejudice based on anyone's race,

10  nationality, or ethnic background.  Is there anyone here who

11  thinks that they have views of people or concerns about whether

12  they can be fair and impartial to everyone, regardless of their

13  race, nationality, or ethnicity?

14         Is there anyone here who feels they have any

15  prejudices that could interfere with their ability to be fair

16  and impartial?  There are no hands raised.

17         I have to ask a question that is, unfortunately, very

18  personal and intrusive.  I believe it will be the only question

19  this intrusive that I will ask.  I want to know if you or

20  anyone in that close circle we have already talked about has

21  been involved in the criminal justice process, other than

22  professionally?

23         Let me explain more specifically what I mean.  Have

24  you or anyone in that close circle I have described of

25  immediate family and close friends been arrested, accused of a

1    crime, prosecuted for a crime, or been the victim of a crime?

2         Let me ask it one more time so everybody remembers the

3    question.  You or anyone in your close circle of immediate

4    family and friends, arrested, prosecuted, charges, or a victim

5    of a crime?

6         And I'm going to invite the court reporter and counsel

7    up so that you can answer that rather personal question in

8    private.

9         In the first row, is there anyone who would answer

10   that question yes?

11        Juror number 3, Mr. Rothacker, you are invited to

12   approach.

13        (Sidebar conference.)

14        (Prospective juror enters.)

15        THE COURT:  Hi, Mr. Rothacker, how are you?

16        PROSPECTIVE JUROR:  Good, thanks.  Friend of mine has

17   been arrested and was in jail for eight months for dealing

18   drugs.

19        THE COURT:  Do you have any strong feelings about

20   whether he was treated fairly or not or don't you know?

21        PROSPECTIVE JUROR:  I don't know.

22        THE COURT:  Will that affect your ability to be fair

23   and impartial in this case?

24        PROSPECTIVE JUROR:  No.

25        THE COURT:  Do you recall that there are drug charges

USA v. Polanco/Vasquez

1  in this case?

2          PROSPECTIVE JUROR:  Yeah.

3          THE COURT:  And you stand by that answer?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Thank you very much.

6          PROSPECTIVE JUROR:  Thank you.

7          THE COURT:  Juror number 4, Mr. Braunstein.

8          Folks, if I'm overlooking something you think is

9  important, please feel free to jump in, not that you seem to be

10 plagued by reticence today.  Thank you.

11         (Prospective juror enters.)

12         THE COURT:  Mr. Brown, how are you?

13         PROSPECTIVE JUROR:  Good.  I'm good.  My mom was

14 mugged 34 years ago.  My father was robbed a couple of times.

15 He was in the jewelry industry; and that will make me a little

16 bit hard to sit.  I can't be fair and impartial; I can't

17 promise you.

18         THE COURT:  You can't promise yourself?

19         PROSPECTIVE JUROR:  I can't.  I'm not sure.

20         THE COURT:  Okay.  Please return to your seat.

21         PROSPECTIVE JUROR:  Okay.

22         (Prospective juror exits.)

23         THE COURT:  Thank you.  Are there any objections if I

24 excuse him for cause?

25         MR. SAVITT:  No.

1          MR. HURWITZ:  No.

2          MR. SAVITT:  Certainly not.  You don't get paid by the

3  motion, right, Mr. Savitt?

4          (End of sidebar conference.)

5          (In open court.)

6          THE COURT:  Anybody else in the first row?  Juror

7  number 5, Ms. Francis.

8          (Sidebar conference.)

9          MR. SAVITT:  I will join in the court's evaluation.

10          THE COURT:  Hi, there.

11          PROSPECTIVE JUROR:  Hi.  My brother was arrested in

12  college with a couple of his friends for possession.

13          THE COURT:  Of?

14          PROSPECTIVE JUROR:  Marijuana.

15          THE COURT:  Do you have any strong feelings about

16  whether he was treated fairly or not?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  In which direction?

19          PROSPECTIVE JUROR:  I believe that he was not treated

20  fairly.

21          THE COURT:  Do you know where he was arrested and

22  prosecuted?

23          PROSPECTIVE JUROR:  Texas.

24          THE COURT:  Will that affect your ability to be fair

25  and impartial in this case?

USA v. Polanco/Vasquez

1          PROSPECTIVE JUROR:  No, no.

2          THE COURT:  Thank you very much.

3          (Prospective juror exits.)

4          THE COURT:  That was 5, Ms. Francis.

5          (End of sidebar conference.)

6          (In open court.)

7          THE COURT:  Anyone else in the first row?

8          In the second row, is there anyone?  Juror number 7,

9    Mr. Smith.

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  Please come forward.

12         (Sidebar conference.)

13         (Prospective juror enters.)

14         THE COURT:  How do you do, sir?

15         PROSPECTIVE JUROR:  I was involved in a drug raid on

16   one of the houses I own, and the police came in and raided it

17   while I was working; and I got arrested, but later, you know,

18   dismissed.  One of the cops wound up suing me because he said

19   he fell on my property and I overheard him talking to the

20   lieutenant that he got hurt the night before and he was going

21   to sue or was getting time off and, you know, it was just like

22   a -- I wonder, my insurance company wound up paying like

23   $10,000 for an annoyance thing.

24         THE COURT:  Yes.  Where did that happen?

25         PROSPECTIVE JUROR:  In Staten Island.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

USA v. Polanco/Vasquez

1     THE COURT:  How long ago?

2     PROSPECTIVE JUROR:  About eight years ago.

3     THE COURT:  Would that affect your ability to be fair

4  and impartial in this case?

5     PROSPECTIVE JUROR:  You know, it would be in the back

6  of my mind.

7     THE COURT:  Why don't you return to your seat.

8     (Prospective juror exits.)

9     THE COURT:  It's amazing how when you dig deeper

10  everyone from jury service who is inconvenienced finds that

11  they have another reason for not being here.  On the other

12  hand, that's the kind of story that is hard to make up on the

13  fly; but, even if it were not, would reveal a point of view

14  that perhaps doesn't belong on the jury.

15     Does anybody want to be heard or should I just excuse

16  him?

17     MR. SAVITT:  We have no -- I have no objection to it.

18     MR. SILVER:  No objection.

19     THE COURT:  Thank you.  We will excuse Braunstein

20  (sic).

21     (End of sidebar conference.)

22     (In open court.)

23     THE COURT:  Anybody else in the second row?

24     You may come forward, and that will be Ms. McRae.

25     (Sidebar conference.)

1        (Prospective juror enters.)

2        PROSPECTIVE JUROR:  Good afternoon.

3        THE COURT:  Hey, how are you?

4        PROSPECTIVE JUROR:  Okay, fine.  Thank you.

5        THE COURT:  I'm all ears.

6        PROSPECTIVE JUROR:  My son, he was arrested and

7 convicted and served time for burglary, and I have a few

8 nephews.  My son was in New York.  My nephews were in North

9 Carolina.  One was for child molestation.  The other was for

10 drug possession.

11        THE COURT:  I'm sorry.  The one in New York, do you

12 know if he was prosecuted federally or locally?  Was it in this

13 building?

14        PROSPECTIVE JUROR:  No, it wasn't in this building.  I

15 believe --

16        THE COURT:  What county was it in?

17        PROSPECTIVE JUROR:  Queens County.

18        THE COURT:  Queens and that's where the courthouse

19 was?

20        PROSPECTIVE JUROR:  I believe so.  I never went to his

21 trial.

22        THE COURT:  Do you have any strong feelings that

23 anyone was treated unfairly?

24        PROSPECTIVE JUROR:  None whatsoever.

25        THE COURT:  Can you be fair and impartial despite

1    those?

2           PROSPECTIVE JUROR:  Most certainly, your Honor.

3           THE COURT:  Do you understand that there is a burglary

4    charge in this case?

5           PROSPECTIVE JUROR:  I do.

6           THE COURT:  You stand by your answer of fairness?

7           PROSPECTIVE JUROR:  Yes, I do.

8           THE COURT:  Thank you.

9           (Prospective juror exits.)

10          (End of sidebar conference.)

11          (In open court.)

12          THE COURT:  Is there anyone else in the second row?

13          What about in the third row, is there anyone?  Juror

14   number 15, Mr. Morgenlender -- lander.  Got it right the first

15   time and blue it the second time.

16          (Sidebar conference.)

17          (Prospective juror enters.)

18          THE COURT:  Hi.

19          PROSPECTIVE JUROR:  Hi.  Several incidences, all over

20   25 years ago.  I was mugged about three or four times, mostly

21   when I was very young; and I was arrested once and charged with

22   criminal trespass.  The charges were dropped.

23          THE COURT:  Do you feel that the system treated you

24   fairly?

25          PROSPECTIVE JUROR:  Yeah.

MICHELE NARDONE, CSR, RPR, CRR - Official Court Reporter

USA v. Polanco/Vasquez

1      THE COURT:  Can you be fair and impartial in this

2  case, despite those experiences?

3      PROSPECTIVE JUROR:  Sure.

4      THE COURT:  Thank you very much.

5      PROSPECTIVE JUROR:  You are welcome.

6      (Prospective juror exits.)

7      (End of sidebar conference.)

8      (In open court.)

9      THE COURT:  Anyone else in the back row?  Number 16,

10  Mr. Chin.

11      I promised you that this was going to be tedious.  I

12  am a man of my word.  I can see the bored yawns.

13      (Sidebar conference.)

14      (Prospective juror enters.)

15      THE COURT:  Go ahead, Mr. Chin.

16      PROSPECTIVE JUROR:  In 2001 I got convicted of a DWI.

17      THE COURT:  Go ahead.  I'm sorry.  I thought you were

18  done.

19      PROSPECTIVE JUROR:  I got a brother that got arrested

20  for assault in the past.

21      THE COURT:  Was he convicted?

22      PROSPECTIVE JUROR:  I think no.  He had a court

23  appearance, but I don't know if he got convicted.

24      THE COURT:  Do you feel you were treated fairly?

25      PROSPECTIVE JUROR:  Yes.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

USA v. Polanco/Vasquez

1    THE COURT:  Can you be fair and impartial despite that

2    experience?

3    PROSPECTIVE JUROR:  I think so.

4    THE COURT:  How long ago was it?

5    PROSPECTIVE JUROR:  2001.

6    THE COURT:  Yeah, you said the year.  So it's over a

7    decade?

8    PROSPECTIVE JUROR:  Yeah.

9    THE COURT:  Thank you very much.

10    (Prospective juror exits.)

11    (End of sidebar conference.)

12    (In open court.)

13    THE COURT:  Anyone else?  Juror number 17 -- no.

14    Mr. Gomez, please come forward.

15    (Sidebar conference.)

16    (Prospective juror enters.)

17    THE COURT:  Hi, there Mr. Gomez.  How you doing?

18    PROSPECTIVE JUROR:  When I was 14, trespassing,

19    charges were dropped, community service.

20    THE COURT:  Do you feel you were treated fairly?

21    PROSPECTIVE JUROR:  Yeah.

22    THE COURT:  Can you be fair and impartial despite

23    that?

24    PROSPECTIVE JUROR:  Yeah.

25    THE COURT:  Thank you, Mr. Gomez.  Thank you.

1    PROSPECTIVE JUROR:  Thanks.

2    (Prospective juror exits.)

3    (End of sidebar conference.)

4    (In open court.)

5    THE COURT:  Anyone else in the jury box?

6    Anyone on my left?  I believe that's Juror number 21,

7    Ms. Sugarman.  Please come forward.

8    (Sidebar conference.)

9    (Prospective juror enters.)

10    THE COURT:  How are you?

11    PROSPECTIVE JUROR:  I'm good.  Thank you.  Thank you.

12    Two things.  One, when I was a teenager I was

13    assaulted on the subway platform by a group of students that I

14    didn't know, which ended up in a trial.  That was many years

15    ago.

16    And then, actually, this past weekend -- this weekend

17    my son's girlfriend's brother was shot in the incident on

18    East 48th Street and had three bullet wounds and is now in

19    surgery, so.

20    THE COURT:  Would you like to be excused?  Do you

21    think you would be more comfortable if you weren't sitting on

22    this kind of a case?

23    PROSPECTIVE JUROR:  Um, I think I'm okay, but I wanted

24    to share that with you.

25    THE COURT:  Do you understand that this case does

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1  involve allegations of robbery and a shooting with a death as a

2  result?

3          PROSPECTIVE JUROR:  Uh-huh.

4          THE COURT:  And you think you can be fair and

5  impartial?

6          PROSPECTIVE JUROR:  Uh-huh, I think I can.

7          THE COURT:  How well do you know the young man who was

8  shot?

9          PROSPECTIVE JUROR:  I never met him.  He is my son's

10  girlfriend's brother.

11          THE COURT:  How long have they been going together?

12          PROSPECTIVE JUROR:  Eight years.

13          THE COURT:  I don't mean this to sound like --

14          PROSPECTIVE JUROR:  She has a very large family.

15          THE COURT:  And you just haven't --

16          PROSPECTIVE JUROR:  And we haven't really met.

17          THE COURT:  How is she doing?

18          PROSPECTIVE JUROR:  She is very concerned.  They spent

19  a lot of time in the hospital.

20          THE COURT:  Do they live with you?

21          PROSPECTIVE JUROR:  No.

22          THE COURT:  Where do they live?

23          PROSPECTIVE JUROR:  In Brooklyn.

24          THE COURT:  How often do you see your son's

25  girlfriend?

USA v. Polanco/Vasquez

1        PROSPECTIVE JUROR:  Oh, often.  Several times a week.

2        THE COURT:  So you think -- I'm just probing to make

3    sure -- you think you can be hearing evidence during the day

4    and then have to deal with her at night and keep it separate?

5        PROSPECTIVE JUROR:  I believe I can.

6        THE COURT:  Thank you.

7        PROSPECTIVE JUROR:  Okay.

8        THE COURT:  Please return to your seat.

9        (Prospective juror exits.)

10       (End of sidebar conference.)

11       (In open court.)

12       THE COURT:  Anyone else on my left?

13       Juror number -- I'm going to guess that's 26.  What do

14   you think?  26, Ms. Mariotti?

15       (Sidebar conference.)

16       (Prospective juror enters.)

17       PROSPECTIVE JUROR:  Hi.

18       THE COURT:  Hi.  How are you?

19       PROSPECTIVE JUROR:  Good.  My older brother served 25

20   years for murder.

21       THE COURT:  Do you know in which court, where that

22   happened?  Was it in New York?

23       PROSPECTIVE JUROR:  Yes, yes.

24       THE COURT:  Was it in --

25       PROSPECTIVE JUROR:  Spanish Harlem.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

USA v. Polanco/Vasquez

1          THE COURT:  Okay.  Do you have any strong feelings

2     about whether he was fairly or unfairly treated?

3          PROSPECTIVE JUROR:  He was fairly treated.

4          THE COURT:  Do you think you can be a fair and

5     impartial juror in the case involving a death?

6          PROSPECTIVE JUROR:  Yes, absolutely.

7          THE COURT:  Thank you very much?

8          PROSPECTIVE JUROR:  You are welcome.

9          (Prospective juror exits.)

10         (End of sidebar conference.)

11         (In open court.)

12         THE COURT:  Anyone else on my left?  Anywhere?  What

13    about on my right, anybody?

14         Juror number 28, Ms. McLaughlin?

15         (Sidebar conference.)

16         (Prospective juror enters.)

17         PROSPECTIVE JUROR:  Hi.

18         THE COURT:  Hi, again.

19         PROSPECTIVE JUROR:  Hi, again.

20         THE COURT:  That's okay.

21         PROSPECTIVE JUROR:  My brother-in-law was off duty.

22    They tried rob him on a train station, and he got into a --

23         THE COURT:  You know what, you said that a little bit

24    to quickly for me.

25         PROSPECTIVE JUROR:  My brother-in-law was off duty

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    years ago on a train station, and two people approached him to

2    rob him.  They took his gun anyway.  Part of his thumb was shot

3    off.

4             THE COURT:  How long ago was that?

5             PROSPECTIVE JUROR:  It was about ten years ago.

6             THE COURT:  Can you be fair and impartial despite

7    enduring that?

8             PROSPECTIVE JUROR:  Yeah.

9             THE COURT:  And do you remember what the charges in

10   the case are?

11            PROSPECTIVE JUROR:  No, I don't.

12            THE COURT:  The allegations in this case include

13   accusations involving robbery and involving a gun and involving

14   a shooting resulting in a death.

15            Do you still think you can be fair and impartial in

16   this case?

17            PROSPECTIVE JUROR:  I hope.  I would hope that I could

18   be.

19            THE COURT:  Well, the question is:  Now that you have

20   told me about this -- let me ask it another way.

21            Now that you have told about me about what happened to

22   your brother-in-law --

23            PROSPECTIVE JUROR:  Brother-in-law.

24            THE COURT:  -- can you put it out of your mind when

25   you consider the evidence and only all the evidence in the

USA v. Polanco/Vasquez

1    case, when you are called upon to do so as a juror?  I'm not

2    asking you to forget that it happened.  I'm asking you not to

3    let it influence your decision about whether the individuals

4    accused in this case have been established beyond a reasonable

5    doubt to have done what government said they did.

6              PROSPECTIVE JUROR:  Uh-huh.

7              THE COURT:  You can do that?

8              PROSPECTIVE JUROR:  Uh-huh.

9              THE COURT:  That's an affirmative uh-huh?

10             PROSPECTIVE JUROR:  Yes, yes.

11             THE COURT:  All right.  Thank you.  Please return to

12   your seat.

13             (Prospective juror exits.)

14             MR. HURWITZ:  Your Honor?

15             THE COURT:  Yes.

16             MR. HURWITZ:  I would like to challenge, again, for

17   cause.  I would like to challenge the juror for cause.  She has

18   a difficulty.  I ask her to be fair and impartial, not lean

19   towards the government.  Her husband was a retired law

20   enforcement officer.  She has, I believe, about four

21   brothers-in-law, nephews, friends, an injury to her

22   brother-in-law.  I think that's the kind of juror that

23   although -- despite her answers, would not be fair and

24   impartial.

25             MR. SAVITT:  Your Honor, if I can join in that

1  application.  She has so many police officers, both as family

2  and friends, that even the one relative who was victimized as a

3  police officer; and I know she is saying that she can be fair

4  and impartial, but there is just police all over the place

5  here, and I can't imagine that that won't in some insidious

6  fashion work its way into her mind-set when she is considering

7  the evidence in this case.

8          MR. HURWITZ:  Your Honor, just to add to what the

9  court probably knows, I mean, this is a person that has, no

10  doubt, family gatherings, sits around with all these law

11  enforcement personnel, and they may talk about their work; and

12  we are talking about someone -- her husband, who is retired --

13  we are talking about many years of hearing things about law

14  enforcement.  We are talking about a person whose

15  brother-in-law got his thumb shot off.  I don't believe that

16  that's the type of juror that's fair and impartial despite the

17  answers.

18          THE COURT:  Anything from the government?

19          MS. DAYANANDA:  I think when pressed repeatedly -- and

20  this is her third time at sidebar -- she has maintained that

21  she can remain fair and impartial, and by the arguments anyone

22  who has a family member in NYPD would be disqualified, I think

23  we have gone through the required questions.  She has

24  maintained she can be fair.

25          MR. HURWITZ:  Your Honor, just in response, there are

1    many jurors on this -- I don't have the number offhand, but

2    there are many jurors connected with, from family or

3    themselves, are retired police officers, and one of the jurors

4    here and this is -- but this particular juror has more

5    involvement than any others, and so far this is the only

6    application we have made in relation to a police officer.  We

7    haven't asked for a challenge for cause in the other jurors.

8         THE COURT:  I won't speculate about the reasons why

9    this juror is the one that you have focused your challenge to,

10   but I agree with the government's premise, that there is little

11   to distinguish her from some of the other jurors except for the

12   number of police officers in her extended family.

13        Given the firmness of her repeated statements that she

14   can be fair and impartial, I am overruling the challenge for

15   cause.  In doing so, I note that her demeanor was even and her

16   candor was apparent from the openness and the eye contact she

17   made, the openness of her responses and the eye contact she

18   made, clearly indicating a connection with the court's

19   questioning and a responsiveness to it that was unguarded, in

20   my opinion.

21        (End of sidebar conference.)

22        (In open court.)

23        THE COURT:  Is there anyone else on my right?  Juror

24   number 30 -- excuse me 29, Mr. Barrett.

25        (Sidebar conference.)

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

USA v. Polanco/Vasquez

```
1              (Prospective juror enters.)

2              THE COURT:  How do you do, sir?

3              PROSPECTIVE JUROR:  Okay.  Yeah, my brother was

4    murdered in 1983 in the Bronx.  Nobody ever get the guy.

5              THE COURT:  Do you feel the police failed to do their

6    job?

7              PROSPECTIVE JUROR:  I think they did their job.  They

8    just took off.

9              THE COURT:  Can you be fair and impartial in this case

10   despite that?

11             PROSPECTIVE JUROR:  I can't.  That's a memory I can't

12   erase.

13             THE COURT:  I understand.  Please return to your seat.

14             PROSPECTIVE JUROR:  Thank you.

15             (Prospective juror exits.)

16             THE COURT:  Is there any objection if he is excused

17   for cause?

18             MR. SAVITT:  No.

19             MR. HURWITZ:  No.

20             (End of sidebar conference.)

21             (In open court.)

22             THE COURT:  Anyone else on my right?  Juror number 31

23   Mr. Becker -- oh, no.  I'm sorry, Mr. Becker.  I'm off by one.

24             Juror number 33, Mr. Schottenhamel.

25             (Sidebar conference.)
```

1          (Prospective juror enters.)

2          PROSPECTIVE JUROR:  Hello.  Yeah, I had my apartment

3    broken into once, and I had three cars stolen.

4          THE COURT:  At the same time you mean or on different

5    days?

6          PROSPECTIVE JUROR:  No, thank God.  That's it.

7          THE COURT:  How long ago was the most recent episode?

8          PROSPECTIVE JUROR:  Jeez.

9          THE COURT:  More than a few years ago?

10          PROSPECTIVE JUROR:  Oh, yeah.  Over ten years.

11          THE COURT:  Do you have any resentment of the way the

12   police handled it?

13          PROSPECTIVE JUROR:  No.

14          THE COURT:  Or do you think they were okay?

15          PROSPECTIVE JUROR:  Yeah.

16          THE COURT:  Can you be fair and impartial despite

17   those instances?

18          PROSPECTIVE JUROR:  Yeah.

19          THE COURT:  Was anybody injured?

20          PROSPECTIVE JUROR:  No.

21          THE COURT:  Was anything of a special sentimental

22   value taken from you?

23          PROSPECTIVE JUROR:  My apartment was robbed, some

24   stuff my father had given me.

25          THE COURT:  How long ago was the robbery?

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1            PROSPECTIVE JUROR:  Over 20 years ago.

2            THE COURT:  You can put it out of your mind for

3    purposes of your jury service?

4            PROSPECTIVE JUROR:  Yeah.

5            THE COURT:  Okay.  Thank you.

6            PROSPECTIVE JUROR:  Okay.

7            (Prospective juror exits.)

8            (End of sidebar conference.)

9            (In open court.)

10            THE COURT:  Anyone else on my right?  Juror number 34,

11    Mr. Seidman?

12            (Sidebar conference.)

13            (Prospective juror enters.)

14            PROSPECTIVE JUROR:  How are you?

15            THE COURT:  I'm well.  How are you doing today?

16            PROSPECTIVE JUROR:  I'm doling well.  It was quite

17    sometime ago, but about 14 years ago my then live-in

18    girlfriend, now wife, was held up at gunpoint.

19            THE COURT:  Was she injured?

20            PROSPECTIVE JUROR:  No.

21            THE COURT:  Did she receive any psychological

22    treatment after the fact?

23            PROSPECTIVE JUROR:  No.

24            THE COURT:  Can you be fair and impartial despite

25    that?

USA v. Polanco/Vasquez

1     PROSPECTIVE JUROR:  Yes.

2     THE COURT:  Do you remember the nature of the charges

3  in the case?

4     PROSPECTIVE JUROR:  In her case?

5     THE COURT:  I mean in this case.  Do you remember what

6  kind of case this is?

7     PROSPECTIVE JUROR:  Of course, of course.

8     THE COURT:  Despite that, you feel you can be fair and

9  impartial?

10     PROSPECTIVE JUROR:  Yeah.  To be honest, I don't feel

11  any deep connection, but you asked.

12     THE COURT:  It happened before you were together?

13     PROSPECTIVE JUROR:  We were living together at the

14  time, but she was not my wife yet.

15     THE COURT:  I'm going to have to tell you, you can't

16  talk to her about the case until it's over.  Obviously, you can

17  tell her you were called for jury duty already.

18     PROSPECTIVE JUROR:  I told her that.

19     THE COURT:  Because that's going to start a

20  conversation about what did they do, say.  You can follow that

21  instruction?

22     PROSPECTIVE JUROR:  Absolutely.

23     THE COURT:  You can return to your seat.

24     PROSPECTIVE JUROR:  All right.

25     (Prospective juror exits.)

1          (End of sidebar conference.)

2          (In open court.)

3          THE COURT:  I think I saw Mr. Millan, number 35's,

4     hand raised.

5          (Sidebar conference.)

6          (Prospective juror enters.)

7          PROSPECTIVE JUROR:  How you doing?

8          THE COURT:  Hi, Mr. Millan.

9          PROSPECTIVE JUROR:  Hi.  My pop, he is locked up, my

10    uncle, my cousin, and my friends.

11         THE COURT:  Were all convicted of crimes?

12         PROSPECTIVE JUROR:  Yeah.

13         THE COURT:  And do you know what kind of criminal

14    acts?

15         PROSPECTIVE JUROR:  My father, drugs; my uncle, drugs;

16    my friend, I didn't ask.

17         THE COURT:  Your friend what?

18         PROSPECTIVE JUROR:  My friend, I think it was a fight.

19    And my cousin, I think he is still locked up, and I think it

20    was for drugs.

21         THE COURT:  Can you be fair and impartial despite

22    those experiences in your life?

23         PROSPECTIVE JUROR:  Yeah.

24         THE COURT:  Do you have any strong feelings that any

25    of them were unfairly treated by the law enforcement officers?

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1          PROSPECTIVE JUROR:  No.

2          THE COURT:  Please return to your seat.  Thank you.

3          (Prospective juror exits.)

4          THE COURT:  I know the government hasn't made it, but

5     just as I denied Ms. McLaughlin's, the challenge for cause as

6     to Ms. McLaughlin, I would deny any challenge for cause that

7     was made and directed to Mr. Millan, despite the number of

8     family contacts he has on the wrong side of the law.

9          (End of sidebar conference.)

10          (In open court.)

11          THE COURT:  Anyone else on my right?  Mr. -- forgive

12     me -- Verveniotis.

13          PROSPECTIVE JUROR:  I have a cousin that was convicted

14     of securities fraud.

15          THE COURT:  How long ago?

16          PROSPECTIVE JUROR:  About a year ago.

17          THE COURT:  Did he do time?

18          PROSPECTIVE JUROR:  No, just fines and barred from the

19     business.

20          THE COURT:  Do you have any feelings about whether he

21     was treated fairly or not?

22          PROSPECTIVE JUROR:  Yeah, there is feelings,

23     absolutely.

24          THE COURT:  Can you be fair and impartial in this case

25     despite that?

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    PROSPECTIVE JUROR:  I could try, yeah, I think so.

2    THE COURT:  That means that when you are considering

3  the arguments made by the two sides in deliberating as a jury,

4  you are focusing on the evidence in the case and not drawing

5  any stereotypes about the government or people who get

6  prosecuted for crimes based on your cousin.

7    PROSPECTIVE JUROR:  Right.

8    THE COURT:  You can do that?

9    PROSPECTIVE JUROR:  Yeah, I think so.

10    THE COURT:  Thank you.

11    PROSPECTIVE JUROR:  Okay.

12    THE COURT:  I think we all just learned something.  We

13  learned that even as there may be jurors who can be fair-minded

14  despite their connections to the police, there are jurors who

15  can be fair-minded despite the pervasive impact of criminal

16  behavior on their families; and we even learned that despite

17  such a strong desire to remove oneself from jury service that

18  one feels obliged to share with one's server one won't

19  necessarily jump to an easy way off the jury.  My faith in

20  human nature is restored.

21    My mood has improved, and I hope all of you are as

22  well.

23    MR. SAVITT:  Your Honor, if I may.

24    MR. HURWITZ:  Can you find out --

25    THE COURT:  Would you like to go off the record for a

1  moment?  Is that what you are supposed to ask me?

2       MR. HURWITZ:  No.  Just a little joke.  It lost its

3  spontaneity.

4       THE COURT:  Mr. Savitt has an application, which is

5  one of the reasons why we didn't pay attention to you.

6       Let Mr. Savitt make his application.

7       MR. SAVITT:  I will bet you the government won't

8  oppose this application necessarily.  My concern about this

9  juror is even though there was an indirect contact with me, I

10  just feel uneasy about that.  It may not have even been

11  inspired by this particular potential juror, but there is no

12  way that the person who approached me, who was one of the

13  owners of the Cadman Diner, is a very nice fellow, didn't think

14  he was doing anything that was improper, in my view in any

15  event.  It's clear that this fellow must have told him that he

16  wants to get off the jury and, you know, that there is the

17  lawyer.  So the suggestion is that somebody should approach me.

18       Now, I'm not that particularly an important person in

19  the big scheme of things, but in this trial I do represent one

20  of the defendants, and I just -- I don't know which way it

21  cuts; and it's not important to me which way it cuts.  I just

22  feel uneasy about this even indirect contact.  So my

23  application is to excuse him.

24       MR. SILVER:  Perhaps we can ask the juror if in fact

25  he had tried -- requested that this person at the restaurant

MICHELE NARDONE, CSR, RPR, CRR - Official Court Reporter

1  make contact with Mr. Savitt or not, and we will have a better

2  picture of what his intentions were.

3          MR. SAVITT:  I will defer to the court's judgment.

4          THE COURT:  I will tell you why I'm hesitant to do

5  that, and you can certainly tell me if you disagree.  Assuming

6  he stays on the jury, I don't want him to think that -- I don't

7  want him to resent Mr. Savitt for reporting this indirect

8  contact, which he may not have instigated, to the court.  I

9  have a lot of professional respect for the sense of

10 responsibility to a fair and impartial process that provokes

11 Mr. Savitt's objection, but from my chair I don't see it

12 exactly the same way.

13          I think that the notion that the proprietor was

14 encouraged by the juror to approach Mr. Savitt, as opposed to

15 the proprietor taking it upon himself to share the juror's

16 frustrated comment, is speculative; and I'm not prepared to use

17 that to exclude someone who is willing to overcome their

18 self-interested desire to remove himself from the jury and try

19 to be fair despite what happened to his cousin, which I think

20 he is smart enough to have figured out he could have used as an

21 excuse to get off, if he had to do it.

22          It may be a very speculative basis for the peremptory.

23 It's speculative as to what may be behind a person's demeanor

24 and conduct.  I don't share and I can't quarrel with the wisdom

25 and experience that led to your wisdom but I can only excuse

1    someone if there is an objective reason for doing it and I

2    don't have one.

3          MR. SAVITT:  I understand your Honor's reasoning.  I

4    don't --

5          THE COURT:  You don't have to agree or disagree.

6    Preserve it.

7          MR. SAVITT:  I actually don't disagree with it.  I

8    understand that you are sitting in a different position than I

9    am; but as your Honor was speaking and as I understood your

10   Honor's rationale and agreed with it, I realized that at some

11   point there must have been contact between the proprietor and

12   the Juror number 36 after the proprietor approached me.

13         THE COURT:  Why?

14         MR. SAVITT:  Because they were seated at the same

15   table and talking to each other at the other end of the

16   restaurant.  So I don't know what the proprietor may have told

17   Juror number 36, but if indeed Juror number 36 -- certainly

18   from the vantage point where he was sitting he saw the

19   proprietor come and speak to me and then I said essentially,

20   you know, I can't get into that.  He went back and he spoke to

21   the prospective juror.

22         THE COURT:  So why don't we call him back up and say

23   this:  One of the attorneys had lunch at the same place that

24   you did.  He saw you speaking with somebody who works there.

25   That person then came over and spoke to the lawyer, then he

1    came back and the lawyer saw him come back and speak to you.

2    Was there anything discussed about the case?

3              MR. SAVITT:  See, but my problem is that essentially

4    disqualifies him because I have blown the whistle on him from

5    his perspective.  It's just a mess at this point.

6              I just -- I'm very uncomfortable with this whole

7    situation, and I'm afraid that --

8              THE COURT:  I will think about it.

9              MR. SAVITT:  Yes, if you will, and I'm concerned that

10   it could rub off on my client in some ways that I can't really

11   articulate right now, but a mind has different ways of working.

12             THE COURT:  I will think about it.  Thank you.

13             MR. HURWITZ:  Just my two cents, when you come down to

14   it, what happened here is a prospective juror, you know, did

15   something that he probably shouldn't have, discussing his

16   desire to get off the case.  Then he went and there was going

17   over to Mr. Savitt sitting back at the table.

18             Anyway, we have this incident.  That's a fact.  And as

19   Mr. Savitt pointed out, there could be a question mark and it

20   just seems at this point it's leaning -- your Honor has reason

21   to keep him on or kick him off, but I think we should lean

22   towards challenge for cause.

23             THE COURT:  Thank you.  I will think about it.

24             (End of sidebar conference.)

25             (In open court.)

1      (Sidebar conference.)

2      THE COURT:  According to my notes, the jurors we have

3  excused for cause are number 4, Braunstein; number 7, Smith;

4  number 29, Barrett.  Does anybody have a different

5  recollection?

6      MR. SILVER:  No.

7      THE COURT:  Hearing none, we will proceed.

8      (End of sidebar conference.)

9      (In open court.)

10     THE CLERK:  The following jurors are excused.  You

11  should go down to the central jury room on the second floor.

12  Juror number 4, Mr. Braunstein; Juror number 7, Mr. Smith; and

13  Juror number 29, Mr. Barrett.

14     The new prospective Juror number 4 is C.D. Soliman,

15  S-O-L-I-M-A-N.

16     THE COURT:  Mr. Soliman, have you been following all

17  of my questions?

18     PROSPECTIVE JUROR:  Yes.

19     THE COURT:  Would you answer any of them yes?

20     PROSPECTIVE JUROR:  Yes.

21     THE COURT:  Please come forward and tell us which

22  ones.

23     (Sidebar conference.)

24     (Prospective juror enters.)

25     PROSPECTIVE JUROR:  Hello, your Honor.  The question

1   is if I have a close friend who works in law enforcement.  I

2   have a friend who works in the Manhattan DA's office.

3           THE COURT:  In what capacity?  What's his job there?

4           PROSPECTIVE JUROR:  Currently he is just an intern.

5           THE COURT:  Would that affect your ability to be fair

6   and impartial in this case?

7           PROSPECTIVE JUROR:  No.

8           THE COURT:  Is there any other question I asked that

9   you would answer yes?

10          PROSPECTIVE JUROR:  No.

11          THE COURT:  Can you sit over the time period involved?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Thank you.  Please take empty seat

14  number 4.

15          (Prospective juror exits.)

16          (End of sidebar conference.)

17          (In open court.)

18          THE CLERK:  New prospective Juror number 7 is Melissa

19  A. Floyd.

20          THE COURT:  Ms. Floyd, have you been following along

21  all of my questions?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Are there any you would answer yes?

24          PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Please come forward.

1    (Sidebar conference.)

2    (Prospective juror enters.)

3    THE COURT:  How are you today?

4    PROSPECTIVE JUROR:  Okay.

5    THE COURT:  Which ones would you answer yes?

6    PROSPECTIVE JUROR:  The last question.

7    THE COURT:  Please tell me how.

8    PROSPECTIVE JUROR:  My son is starting a trial next

9  month, a murder case.

10    THE COURT:  Okay.  So you don't think you could be

11  fair and impartial and concentrate on this case?

12    PROSPECTIVE JUROR:  No.

13    THE COURT:  Okay.  Good luck to you.  Please return to

14  the central jury room.

15    PROSPECTIVE JUROR:  Thank you.  I can go downstairs

16  you said?

17    THE COURT:  You can go downstairs.

18    (Prospective juror exits.)

19    (End of sidebar conference.)

20    (In open court.)

21    THE CLERK:  Prospective Juror number 7 will be Curran

22  B. Esterich E-S-T-E-R-I-C-H.

23    THE COURT:  Ms. Esterich, is that how it's said?

24    PROSPECTIVE JUROR:  Yes.

25    THE COURT:  Have you been following my questions?

1    PROSPECTIVE JUROR:  Yes.

2    THE COURT:  Are there any you would answer yes?

3    PROSPECTIVE JUROR:  Yes.

4    THE COURT:  Please come forward.

5    (Sidebar conference.)

6    (Prospective juror enters.)

7    THE COURT:  How are you today?

8    PROSPECTIVE JUROR:  Fine, thanks, your Honor.  I have

9  a daughter who was arrested for driving under the influence a

10 couple of years ago.

11    THE COURT:  Do you feel she was treated fairly?

12    PROSPECTIVE JUROR:  I do.

13    THE COURT:  Can you be fair and impartial despite that

14 experience?

15    PROSPECTIVE JUROR:  I can.

16    THE COURT:  Are there any other questions I asked that

17 you would say yes to?

18    PROSPECTIVE JUROR:  No.

19    THE COURT:  Can you sit without great difficulty over

20 the time period involved?

21    PROSPECTIVE JUROR:  Yes.

22    THE COURT:  Please take the empty chair.  Thank you

23 very much.  It's number seven, the first one in the second row.

24    (Prospective juror exits.)

25    (End of sidebar conference.)

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1          (In open court.)

2          THE CLERK:  Prospective Juror number 29 will be Faith

3    L. Acosta, A-C-O-S-T-A.

4          THE COURT:  Hi, Ms. Acosta.  Have you been following

5    the questions?

6          PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Are there any you would answer yes?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Come on up.  Thank you.

10          (Sidebar conference.)

11          (Prospective juror enters.)

12          PROSPECTIVE JUROR:  Yes.  Right now I'm at a time

13    where my daughter was arrested Palm Sunday.  She was released

14    the following day, no bail, and every time she goes through the

15    courts to be in front of the judge, they just telling her come

16    back in a month, in a month; and her life has been on hold.

17    She has lost her job, and I'm very torn right now, quite

18    honestly, because this is very close to home.  So I would not

19    be one of your better candidates.

20          THE COURT:  I appreciate that, and I'm sorry for what

21    you are going through.

22          PROSPECTIVE JUROR:  Thank you.

23          THE COURT:  If it's any comfort, it's not that unusual

24    for a case to proceed that way.

25          PROSPECTIVE JUROR:  Oh, really?

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1        THE COURT:  Could you step back for just a few

2  minutes.

3        (Prospective juror exits.)

4        THE COURT:  Any objection to excusing her?

5        MR. SILVER:  No.

6        MR. SAVITT:  No.

7        THE COURT:  Okay.  Come on back, Ms. Acosta.

8        (Prospective juror enters.)

9        THE COURT:  We are going to let you go down to the

10  central jury room and tell them you are been excused from our

11  case.  I don't know what will happen next.

12        PROSPECTIVE JUROR:  Okay.  Thank you, sir.

13        THE COURT:  Good luck, and good luck to your daughter.

14        PROSPECTIVE JUROR:  Okay.

15        (Prospective juror exits.)

16        (End of sidebar conference.)

17        (In open court.)

18        THE CLERK:  Prospective Juror number 29 will be

19  Donnamarie Fiscina, F-I-S-C-I-N-A.

20        THE COURT:  Hi, Ms. Fiscina.  Have you been following

21  the questions?

22        PROSPECTIVE JUROR:  Yes.

23        THE COURT:  Are there any you would answer yes?

24        PROSPECTIVE JUROR:  Yes.

25        THE COURT:  Come on up.

USA v. Polanco/Vasquez

1              (Sidebar conference.)

2              (Prospective juror enters.)

3              PROSPECTIVE JUROR:  It was just a question about

4    having family or friends in law enforcement.  I have several

5    cousins that are in the New York City Police Department.

6              THE COURT:  Can you be fair and impartial despite

7    that?

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  Did you hear what I said about law

10   enforcement officer testimony?  Do you remember that?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  And you will follow my instructions about

13   weighing in objectively and not assuming someone is lying or

14   telling the truth just because they are police?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Can you sit during the time period of the

17   trial without great difficulty?

18             PROSPECTIVE JUROR:  Two weeks, right?

19             THE COURT:  Yes.

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Thank you.  Please take the empty seat 29.

22   That's almost directly behind you.

23             PROSPECTIVE JUROR:  In between the two?

24             THE COURT:  Yes.  Thank you.

25             (Prospective juror exits.)

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

USA v. Polanco/Vasquez

1          THE COURT:  I think we are done.

2          Does the government wish to be heard further in

3     connection with Juror number 36?

4          MR. SILVER:  No, judge.

5          THE COURT:  I hesitate to capitulate by nature, but I

6     think we do have a murky situation now.  I would like to

7     inquire about it and clear it up, but I have been thinking

8     about doing it without implicating counsel's role of and making

9     a report, and I'm just not sure I can figure out a way.  And we

10    don't want it to be point one, I say tongue in cheek.

11         So I think that, despite my concerns about the reasons

12    not to excuse him, what I'm really doing as a practical matter

13    is taking away a peremptory from the defense out of resistance

14    and firmness of mind instead of being open minded to arguments

15    that I previously rejected.  So I'm going to change my mind and

16    excuse him.

17         Now the question is what do we tell him about why.

18    I'm inclined not to say anything and just to excuse him.

19         MS. DAYANANDA:  Yes.

20         MR. SAVITT:  Yes, your Honor.

21         THE COURT:  How do I physically do this?

22         MR. SAVITT:  Physically, your Honor?

23         THE COURT:  I mean what am I going to do?  I don't

24    mean physically literally.

25         MR. SAVITT:  I understand that, but just to call out

1    his name and be excused and to call out another number 36

2    without any explanation, if your Honor pleases.

3              THE COURT:  Yeah, I think that's what I'm going to do.

4              (End of sidebar conference.)

5              (In open court.)

6              THE COURT:  Due to some of the material that's been

7    presented to me, I'm going to excuse Juror number 36, and you

8    can go to the central jury room, Mr. Verveniotis, and we will

9    replace.

10             THE CLERK:  Prospective Juror number 36 will be Janet

11   Fong, F-O-N-G.

12             THE COURT:  Ms. Fong, have I asked questions you would

13   answer yes?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Come on up.

16             (Sidebar conference.)

17             (Prospective juror enters.)

18             THE COURT:  Ms. Fong, did you and I see each other in

19   the elevator before?

20             PROSPECTIVE JUROR:  No.

21             THE COURT:  You weren't the one who couldn't get the

22   number three button to click?

23             PROSPECTIVE JUROR:  Yes.  That was you?  I feel

24   stupid.

25             THE COURT:  That's okay.  Please don't.

1          So I should just disclose to everybody that Ms. Fong

2    and I had a brief conversation, unrelated to anything other

3    than how to get to the third floor, in the elevator.

4          PROSPECTIVE JUROR:  I didn't.

5          THE COURT:  But that's not what you came up to tell

6    us?

7          PROSPECTIVE JUROR:  Tomorrow I have a medical

8    procedure to go to.

9          THE COURT:  Okay, and that can't easily be

10   rescheduled?

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  Why don't you step back for a minute.

13         (Prospective juror exits.)

14         THE COURT:  Any objection if she is excused?

15         MR. SILVER:  No.

16         MR. SAVITT:  No.

17         MR. HURWITZ:  No.

18         THE COURT:  All right.

19         (Prospective juror enters.)

20         THE COURT:  Please go back to the central jury room,

21   and they will give you further instructions.

22         (Prospective juror exits.)

23         (End of sidebar conference.)

24         (In open court.)

25         THE CLERK:  Prospective Juror number 36 will be Anisa

1    Kreka, K-R-E-K-A.

2         THE COURT:  Have I asked questions you would answer

3    yes?

4         PROSPECTIVE JUROR:  Yes.

5         THE COURT:  Come on up.  I have asked so many of them

6    now by now.  How could it not be?

7         (Sidebar conference.)

8         (Prospective juror enters.)

9         PROSPECTIVE JUROR:  Hello.

10        THE COURT:  How are you doing?

11        PROSPECTIVE JUROR:  I'm okay.  How are you?

12        THE COURT:  Which ones?

13        PROSPECTIVE JUROR:  The first question, if I'm having

14   a difficulties for next week would be yes because the following

15   week I'm going back to school, and that's the only time I have

16   to fix up my schedule and financial aid and everything else.

17        The second question I answered yes is in the name that

18   you listed.  I recognized someone, one of the names.

19        And the third question is I think you asked if I know

20   someone who got arrested in my family, and that's a yes also.

21   One of my cousins got arrested for drug dealing.

22        THE COURT:  How long ago was the arrest?

23        PROSPECTIVE JUROR:  This was a few years ago, but it

24   wasn't here.  It was in Europe.

25        THE COURT:  Would that affect your ability to be fair

1    and impartial in the case?

2             PROSPECTIVE JUROR:  Well, I think yes, because we went

3    through a lot throughout the whole time.

4             THE COURT:  Why don't you step back.

5             PROSPECTIVE JUROR:  Okay, sure.

6             (Prospective juror exits.)

7             THE COURT:  I think I have to excuse her.  Is there an

8    objection?

9             MR. SAVITT:  No, your Honor.

10            THE COURT:  All right.

11            (Prospective juror enters.)

12            THE COURT:  Please return to your seat.

13            (Prospective juror exits.)

14            THE COURT:  Reed, we will excuse her after.

15            (End of sidebar conference.)

16            (In open court.)

17            THE COURT:  Your seat back there.

18            THE CLERK:  Prospective Juror number 36, Diane M.

19   Conyers, C-O-N-Y-E-R-S.

20            PROSPECTIVE JUROR:  Yes.

21            THE COURT:  Come on up.

22            (Sidebar conference.)

23            (Prospective juror enters.)

24            THE COURT:  I'm the comedian in this courtroom.

25            PROSPECTIVE JUROR:  I'm sorry.  I'm an attorney.

1          THE COURT:  What kind of law do you practice?

2          PROSPECTIVE JUROR:  I'm actually a risk manager in a

3    hospital, nurse manager, but I did several litigation,

4    malpractice.

5          THE COURT:  Can you be fair and impartial in a

6    criminal case?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  You will follow Judge Dearie's

9    instructions, even if they are different from what you remember

10   in crim pro?

11         PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Any other questions you would answer yes?

13         PROSPECTIVE JUROR:  My father was a probation officer.

14         THE COURT:  Can you be fair and impartial despite

15   that?

16         PROSPECTIVE JUROR:  Yes.

17         THE COURT:  You said was.  He is retired?

18         PROSPECTIVE JUROR:  He is dead.

19         THE COURT:  Can you sit over the next two weeks

20   without extraordinary difficulty?

21         PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Thank you very much, counsel.  Please take

23   seat number 36.

24         (Prospective juror exits.)

25         THE COURT:  Anything else from this corner, addressing

1  myself to the attorneys?

2          MS. DAYANANDA:  No.

3          MR. SILVER:  No.

4          MR. SAVITT:  No, your Honor.

5          THE COURT:  Thank you very much for your assistance.

6  Please return to your seats.

7          (End of sidebar conference.)

8          (In open court.)

9          THE COURT:  I'm about to ask you -- oh, Juror number

10  12, did you have something you wanted to tell me?

11          PROSPECTIVE JUROR:  Yeah.  One second.

12          THE COURT:  Will Juror number 12 please approach.

13  Everybody.

14          (Prospective juror speaks to clerk.)

15          THE COURT:  No, no, no.  I can't talk to you without

16  the attorneys and the court reporter.

17          (Pause.)

18          THE COURT:  Ladies and gentlemen of the jury, we will

19  take five minutes to use the restrooms.  Everybody out in the

20  hallway.  Everybody out in the hallway, please.  Don't leave

21  the floor.  Don't leave the floor.

22          Counsel will remain in the courtroom.

23          Would everybody please leave the courtroom so I can

24  have a private conversation with counsel.  Could I get

25  everybody out in the hallway for a minute so I can speak

USA v. Polanco/Vasquez

1   privately with the attorneys.

2          (Recess.)

3          (In open court.)

4          MR. HURWITZ:  Your Honor, could I get a moment with my

5   client before the jury comes in?  I wanted to tell him

6   something.

7          THE COURT:  Okay.  Can you have that conversation

8   while they are assembling?

9          MR. HURWITZ:  Yeah.  I need the interpreter.

10         (Prospective jurors enter.)

11         THE COURT:  There is nobody in the back who belongs in

12  the front row, right?  We are missing Ms. McLaughlin.

13         (Ms. McLaughlin entered.)

14         PROSPECTIVE JUROR:  Sorry.

15         THE COURT:  Okay.  We are all assembled again.

16         My next question is going to have to do with prior

17  jury service.  I'm going to ask you some questions about that

18  in a minute, but first I'm going to tell you a few things.

19         Some of you may have been jurors on civil cases

20  before.  This case is not like a civil case because for the

21  plaintiff to prevail in a civil case the plaintiff has to meet

22  a lower standard of proof than the one the prosecutor must meet

23  in order to obtain a verdict of guilt.  In a civil case, the

24  standard is usually proof by a preponderance of the evidence.

25  But as we have discussed, a prosecutor must persuade the jury

beyond a reasonable doubt of each element of each crime for a

defendant to be found guilty by the jury.

I'm also going to want to know if you were ever a

member of a jury that couldn't reach a verdict because they

split.  I never want to know what verdict the jury you were on

reached.  I only want to know if you were a member of a jury

that was deadlocked and couldn't reach a verdict.

Some of you may have been grand jurors, and I will

tell you now that a grand jury is very different from a regular

jury.  Often in a grand jury the defendant has no right to be

heard.  There is no defendant yet, and so the way you think

about service that you may have had about the grand jury is

very different than the responsibilities you would have as a

juror in a criminal cause like this.

How many of you in the first row have been a juror

before, that sat and heard evidence?

Juror number 6, Brincat, how many times?

PROSPECTIVE JUROR:  Twice.

THE COURT:  Civil or criminal?

PROSPECTIVE JUROR:  Civil.

THE COURT:  Were you ever a member of a deadlocked

jury?

PROSPECTIVE JUROR:  No.

THE COURT:  Will you follow Judge Dearie's

instructions, even though they will be different than the ones

1    you recall?

2              PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Thank you.  Second row again.

4              Juror number 7, Esterich, how many times?

5              PROSPECTIVE JUROR:  One.

6              THE COURT:  Civil or criminal.

7              PROSPECTIVE JUROR:  Criminal.

8              THE COURT:  Reach a verdict, yes or no?

9              Will you follow Judge Dearie's instructions, even if

10   they are different?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Juror number 12, did I see your hand,

13   Ms. Steele?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  How many times?

16             PROSPECTIVE JUROR:  Once.

17             THE COURT:  Civil or criminal?

18             PROSPECTIVE JUROR:  Civil.

19             THE COURT:  Reach a verdict?

20             PROSPECTIVE JUROR:  Settled.

21             THE COURT:  Settled?

22             PROSPECTIVE JUROR:  Yeah.

23             THE COURT:  You will follow Judge Dearie's instruction

24   and think about this case as he tells you to?

25             PROSPECTIVE JUROR:  Yes, I could.

1        THE COURT:  Thank you.  Last row.

2        Juror number 13, Ms. -- no 14, Ms. Robinson?

3        PROSPECTIVE JUROR:  I was a grand jury.

4        THE COURT:  Do you understand what I mean about it

5   being very different and the responsibilities you have there?

6   You have to put aside that way of looking at things and think

7   about them differently.  You can do that?

8        PROSPECTIVE JUROR:  Yes.

9        THE COURT:  Juror number 15, Mr. Morgenlander, did I

10  see your hand?

11       PROSPECTIVE JUROR:  Yes, and it was grand jury as

12  well.

13       THE COURT:  Did you follow and agree with everything

14  Ms. Robinson and I discussed?

15       PROSPECTIVE JUROR:  Yes.

16       THE COURT:  Anybody else in the back row, whether

17  about -- on my left -- prior jury service?

18       Juror number 19, Ms. -- Mr. Tartt-Lopez?

19       PROSPECTIVE JUROR:  Yes, criminal.

20       THE COURT:  Criminal jury?

21       PROSPECTIVE JUROR:  Yes.

22       THE COURT:  Reached a verdict?

23       PROSPECTIVE JUROR:  Yes.

24       THE COURT:  If Judge Dearie's instructions are

25  different you will follow them?

1        PROSPECTIVE JUROR:  Yes.

2        THE COURT:  Anyone else on my left?

3        Juror number 21, Ms. Sugarman?

4        PROSPECTIVE JUROR:  Two.

5        THE COURT:  Twice, civil or criminal?

6        PROSPECTIVE JUROR:  One and one.

7        THE COURT:  Ever a member of a deadlocked jury?

8        PROSPECTIVE JUROR:  No.

9        THE COURT:  You will follow Judge Dearie's

10  instructions?

11        PROSPECTIVE JUROR:  Yes.

12        THE COURT:  Ms. Sherman-Greene, number 20?

13        PROSPECTIVE JUROR:  Yes.

14        THE COURT:  How many times?

15        PROSPECTIVE JUROR:  Once.

16        THE COURT:  Reach a verdict?

17        PROSPECTIVE JUROR:  Yes.

18        THE COURT:  Civil or criminal?

19        PROSPECTIVE JUROR:  Criminal.

20        THE COURT:  Will you follow Judge Dearie's

21  instructions, even if they are different?

22        PROSPECTIVE JUROR:  Yes.

23        THE COURT:  Anyone else on my left?

24        Juror number 25, Ms. Forcer?

25        PROSPECTIVE JUROR:  Yes.

1        THE COURT:  How many times?

2        PROSPECTIVE JUROR:  Once.

3        THE COURT:  Reach a verdict?

4        PROSPECTIVE JUROR:  Yes.

5        THE COURT:  Civil or criminal?

6        PROSPECTIVE JUROR:  Criminal.

7        THE COURT:  You will follow Judge Dearie's

8    instruction?

9        PROSPECTIVE JUROR:  Yes.

10       THE COURT:  Juror number 26, Ms. Mariotti, did I see

11   your hand?

12       PROSPECTIVE JUROR:  Yes, both.

13       THE COURT:  Both civil and criminal juries?

14       PROSPECTIVE JUROR:  Yes.

15       THE COURT:  Were you ever a member of a deadlocked

16   jury?

17       PROSPECTIVE JUROR:  No.

18       THE COURT:  You will follow Judge Dearie's

19   instructions?

20       PROSPECTIVE JUROR:  Yes.

21       THE COURT:  Anyone on my right?

22       Juror number 32, Ms. Genoy?

23       PROSPECTIVE JUROR:  Yes.  Criminal.

24       THE COURT:  I'm sorry?

25       PROSPECTIVE JUROR:  Once, criminal.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1          THE COURT:  Reach a verdict?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Will you follow Judge Dearie's

4     instructions?

5          PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Who else, 33, Mr. Schottenhamel?

7          PROSPECTIVE JUROR:  Yeah.  Two criminal, one civil.

8          THE COURT:  Ever deadlocked?

9          PROSPECTIVE JUROR:  No.

10          THE COURT:  Will you follow Judge Dearie's

11     instructions?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Anyone else, 36, Ms. Conyers?

14          PROSPECTIVE JUROR:  One criminal, and it was went to

15     verdict.

16          THE COURT:  There was a verdict.  And you will follow

17     Judge Dearie's instructions?

18          PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Have I missed anyone with prior jury

20     service?

21          Is there anyone that has a pending dispute with the

22     United States Government or has a member of their immediate

23     family who does, other than any criminal matters you may have

24     told me about at sidebar.  There are no hands shown.

25          I have told you about the nature of the charges, and I

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    have discussed those charges with you at the sidebar.  The

2    charges include allegations by the prosecutors of drug dealing,

3    robbery, use of firearms, and the shooting of someone resulting

4    in death.

5          Knowing the nature of the charges and having had time

6    to think about it, is there anyone here who feels they cannot

7    be a fair and impartial juror in this case?

8          Is there anybody here who, if they had a loved one

9    involved in a case like this, would hesitate to have somebody

10   like you as a juror sit on it?  No hands are raised.  All

11   right.

12         We are going to have an opportunity to get each -- to

13   get to know each of you a little bit better.  The way we do

14   that is by asking you to answer some questions that we have

15   written down on a piece of paper.  I'm going to ask you to look

16   at that piece of paper, and when your turn comes to answer the

17   questions that are on it, please keep your voice up.  If you

18   think you are a person with a naturally quiet voice, please

19   stand up, because I want the lawyers to have a chance to hear

20   everything that you say.

21         We will start with Juror number 1, Mr. Watral.

22         PROSPECTIVE JUROR:  Start going?

23         THE COURT:  Just go.

24         PROSPECTIVE JUROR:  All right.  I live in Hauppauge.

25   I have been living there for 25 years.  I live with my parents.

USA v. Polanco/Vasquez

1    I don't own or rent.

2          I have a master's degree in civil engineering.  I am

3    fully employed as a civil engineer, full-time.  Been working

4    there for two years.  I do not supervise anyone.  I am not

5    married.  I'm engaged.  My fiancee works outside of the house.

6    She is a speech pathologist.  No children; and, yes, I can be

7    fair.

8          THE COURT:  What kind of business are you involved in

9    with engineering?

10          PROSPECTIVE JUROR:  Civil.  I do land development,

11   land design for retail establishments.

12          THE COURT:  You say, I think, that you live with your

13   parents.

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  Can you tell us, are they employed; and,

16   if so, what do they do?

17          PROSPECTIVE JUROR:  Yes.  My father is self-employed.

18   He owns an excavation, general contracting company.  And my

19   mother is a -- she is an environmental planner.

20          THE COURT:  Thank you.

21          Number 2, Ms. Astudillo.

22          PROSPECTIVE JUROR:  Yes.  I was born outside of the

23   country.  I live in New York, in Forest Hills, Queens, and I

24   rent my apartment.

25          I have a master's degree in social work and studied

1    here in the Hofstra University.  I do work for the town.  I do

2    that job for nine years.  I do supervise people, around 20 of

3    them.

4           And I'm not married.  And I do have a child, but he is

5    a minor; and I do think that I can be fair.

6           THE COURT:  Do you live with any other adults?

7           PROSPECTIVE JUROR:  The other adult is my mother, who

8    lives with me.

9           THE COURT:  Does she work?

10          PROSPECTIVE JUROR:  She doesn't.  She is 80.

11          THE COURT:  Thank you.  Number 3, Mr. Rothacker?

12          PROSPECTIVE JUROR:  Yes.  Live in Park Slope,

13   Brooklyn.  I lived there for ten years.  I rent.

14          I have a master's degree in educational theater.  I am

15   currently working as a college professor.  I have been at my

16   job three years.  I do not supervise anyone.

17          I am not married.  I do not have any children; and,

18   yes, I can be fair.

19          THE COURT:  What college do you teach at?

20          PROSPECTIVE JUROR:  Kingsborough Community College at

21   Coney Island.

22          THE COURT:  What is your subject?

23          PROSPECTIVE JUROR:  Theater and communications.

24          THE COURT:  Do you live with any other adults?

25          PROSPECTIVE JUROR:  I have two roommates.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1          THE COURT:  How are they employed?

2          PROSPECTIVE JUROR:  One is also an educator, and the

3   other is a professional actor.

4          THE COURT:  Thank you.  Number 4, Mr. Soliman.

5          PROSPECTIVE JUROR:  I live in Baldwin.  I have been

6   living there for about 12 years now.  I don't own or rent.

7   It's my parents' house.

8          I have an associate's degree in science and math,

9   liberal arts.  I am not currently working.

10          I am not currently married.  I do not have any

11   children; and, yes, I can be fair.

12          THE COURT:  You say you live with your parents.  Are

13   they employed?

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  What do they do?

16          PROSPECTIVE JUROR:  My mom is a social worker, and my

17   dad works at a limousine company.

18          THE COURT:  You say you are not currently working.

19   Have you been employed recently?

20          PROSPECTIVE JUROR:  No.

21          THE COURT:   Number 5, Ms. Francis.

22          PROSPECTIVE JUROR:  I live in Crown Heights, Brooklyn.

23   I have lived there my whole life, 26 years.  I live with my

24   father and my stepmom.

25          I am pursuing my master's degree in education.  I am

1   currently working as a kindergarten teacher.  I have worked

2   there for over three years.  I have an assistant teacher with

3   me.

4        I'm not married, and I don't have any kids; and I can

5   be fair.

6        THE COURT:  Can you tell me again how long you were a

7   teacher?

8        PROSPECTIVE JUROR:  Three years.

9        THE COURT:  And do you live with any other adults?

10       PROSPECTIVE JUROR:  Yes.  I live with my brother.  He

11  is also a teacher.  My father, who is a lawyer, and my

12  stepmother, who is a secretary.

13       THE COURT:  Thank you.  Number 6, Mr. Brincat.

14       PROSPECTIVE JUROR:  I live in Astoria, New York.  I

15  have lived there on and off for 51 years.  I own the home,

16  two-family home.

17       I have a high school education.  I'm currently

18  employed.  I have been employed for 13 years.  I do supervise

19  people.

20       Unmarried, no children; and I can be fair.

21       THE COURT:  Do you live with other adults, did you

22  say?

23       PROSPECTIVE JUROR:  Senior citizen father.

24       THE COURT:  I'm sorry?

25       PROSPECTIVE JUROR:  Senior citizen father.

1    THE COURT:  Thank you very much.  Number 7,

2  Ms. Esterich.

3    PROSPECTIVE JUROR:  I live in Prospect Heights,

4  Brooklyn.  I have been living there for about six years.  We

5  own the home.

6    I have a BA and studied studio art.  I am not

7  currently working.  I am married.  My spouse does work outside

8  of the house.  He has a mortgage brokerage company and also an

9  administrator of a real estate investment fund.

10    I have four grown children.  Three work.  One works as

11  a food salesperson, one works at a media firm, one works for a

12  retail, a women's retail company, and one is a college student;

13  and I can be fair and impartial.

14    THE COURT:  Thank you.  Number 9 Ms. Claudio -- no,

15  I'm sorry.

16    Number 8, Ms. McRae.  My eyes skipped a line.

17    PROSPECTIVE JUROR:  I live in Brownsville, Brooklyn.

18  I have been living there for 15 years.  Prior to that I lived

19  in Bed-Stuy, Brooklyn.  I own my own home.

20    I'm a high school graduate.  Me and my husband, we own

21  a restaurant, also in Brownsville, Brooklyn.  We own and

22  operate it, solo.  We have been doing that for approximately 12

23  years.  We supervise people on and off from time to time,

24  part-timers, up to about two people.

25    Yes, I'm married.  My husband is the chef in a

1   restaurant.  I have four grown children.  One, my oldest

2   daughter, works for traffic in Brooklyn.  I have another

3   daughter that works for Sony.  I have another daughter that

4   works for a homeless shelter, and my son is unemployed; and I

5   can be fair and impartial as a juror.

6          THE COURT:  Thank you, Ms. McRae.

7          Number 9, Ms. Claudio?

8          PROSPECTIVE JUROR:  I live in Ridgewood, Queens, been

9   living there for about 13 years.

10         THE COURT:  A little louder, if you can.

11         PROSPECTIVE JUROR:  I have been living there for about

12  13 years, live in my parents' home.  I have a bachelor's degree

13  in health science.  I'm currently working the Department of

14  Health.  I have been there for six years.

15         THE COURT:  What do you do at DOH?

16         PROSPECTIVE JUROR:  Public health adviser.  I don't

17  supervise.

18         I'm married.  He works as a handyman.  No children;

19  and I can be fair.

20         THE COURT:  Thank you.

21         Number 10, Mr. Woerter.

22         PROSPECTIVE JUROR:  I live in Bohemia, live there 20

23  years.  I rent.

24         About two years of college.  I'm working.  I do home

25  improvements.  I have been there about 12 years.  I don't

1   supervise anyone.

2          I'm married.  She is a teacher.  I've got two kids,

3   minors.  I can be fair.

4          THE COURT:  Thank you.

5          Mr. Uddin.

6          PROSPECTIVE JUROR:  Yes, sir.  Live in Old Mill Basin,

7   Brooklyn.  Lived there for about seven years.  I own my own

8   home.

9          I have some college, and high school graduate.  I'm

10  currently working at the hospital as a security officer, and

11  been there for 20 years.  I do not supervise.

12         I'm married 15 years.  My spouse is an assistant

13  deputy director for Department of Health and Mental Hygiene.  I

14  have two wonderful boys, 15 and 11.

15         One more question at the bottom.  I will be fair.

16         THE COURT:  Thank you, sir.  That was number 11.  I

17  think I neglected to say so.

18         Number 12, Ms. Steele.

19         PROSPECTIVE JUROR:  I live in East New York, Brooklyn

20  for the last four years.  Prior to that I lived at Flatbush for

21  over 30-something years.  I live in a three-family home owned

22  by one of my daughters.

23         I did not go to college, but I do work.  I work for

24  U.S. Postal Service, and I have been there for 24 years.  I do

25  not supervise.

1      I am divorced, and I have two grown daughters.  One is
2   a nurse, and one is a postal employee like me; and I think I
3   can be partial -- impartial.
4      THE COURT:  When you were married what did your
5   husband do for a living?
6      PROSPECTIVE JUROR:  He worked for Columbia University.
7      THE COURT:  In what capacity?
8      PROSPECTIVE JUROR:  Security.
9      THE COURT:  Thank you very much.
10     Number 13, Ms. Conanan.
11     PROSPECTIVE JUROR:  I live in Elmhurst, New York --
12  Elmhurst, Queens.  I have been living there for 20 years.  I
13  rent.
14     I have a master's degree in special education.  And I
15  am currently teaching as a preschool teacher.  I have been in
16  my current job for seven years and have two assistant teachers
17  with me.
18     I am not married.  I don't have children; and I can be
19  fair.
20     THE COURT:  Do you live with any other adults?
21     PROSPECTIVE JUROR:  Yes, two.
22     THE COURT:  What do they do?
23     PROSPECTIVE JUROR:  They are both retired.
24     THE COURT:  Thank you.  Number 14, Ms. Robinson?
25     PROSPECTIVE JUROR:  I live in Canarsie, Brooklyn.  I

1    lived there 18 years.  I own my own home.  High school diploma.

2            I'm currently retiring, retired after 37 years with

3    the department of social services.

4            THE COURT:  Doing what?

5            PROSPECTIVE JUROR:  I was assistant to the director.

6    I supervised when I was on the job.

7            I'm married.  My husband is retired correction officer

8    captain.  I have one grown daughter, who works in education,

9    lives out of state; and I can be fair and impartial.

10           THE COURT:  Thank you.

11           Number 15, Mr. Morgenlander.

12           PROSPECTIVE JUROR:  I live in Brooklyn, New York all

13   my life.

14           THE COURT:  What neighborhood are you in now?

15           PROSPECTIVE JUROR:  Right now I'm in Bensonhurst.

16           THE COURT:  Thank you.

17           PROSPECTIVE JUROR:  I rent.

18           I have about two years of college.  I am currently

19   employed by New York City MTA.  I'm a train operator.  I have

20   been on the job eight months.  I do not supervise.

21           THE COURT:  What were you doing before?

22           PROSPECTIVE JUROR:  For 22 years I was a dispatcher

23   for corporate car service.  There I did supervise about 20

24   people.

25           I am married.  My wife works outside of the home.  She

1   is a copy editor.  I have no children; and I can be a fair and

2   impartial juror.

3          THE COURT:  Thank you.

4          Number 16, Mr. Chin.

5          PROSPECTIVE JUROR:  I live in Staten Island.  I have

6   been living there for 42 years.  I own my home.  I have a

7   bachelor of science degree from NYU in information systems.

8   I'm currently working.  I have been with my current company for

9   ten years now.  I am senior consulting manager in IT consulting

10  firm.  I'm currently not supervising anybody but I, you know,

11  do depending on the project.  Could be up to five or to ten

12  people.

13         I'm single.  I don't have any children; and I could be

14  fair and impartial.

15         THE COURT:  Do you live with any other adults?

16         PROSPECTIVE JUROR:  I do, live with my sister.  She

17  works at a Honda dealership.

18         THE COURT:  Thank you.  Number 17, Mr. Gomez.

19         PROSPECTIVE JUROR:  I live in Howard Beach, New York.

20  I have lived there for about five years.  I own.

21         I have an associate's in business.  I'm currently

22  working as a doorman for the past seven years.  I never

23  supervised.

24         I'm married.  My wife is a service coordinator.  I

25  have no children; and I could be fair and impartial.

1          THE COURT:  How you holding up?

2          PROSPECTIVE JUROR:  Good.

3          THE COURT:  Good.  Number 18, Ms. Luciano.

4          PROSPECTIVE JUROR:  I'm from Staten Island.  I have

5    been living there my whole life, 24 years.

6          THE COURT:  What part do you live in now?

7          PROSPECTIVE JUROR:  Hugenot.  I live with my parents

8    and two brothers.

9          I have a master's in special education.  I currently

10   am substitute teacher with the Department of Ed and working in

11   the after-school program.  I do not supervise anyone.

12         I'm single, no children; and I can be fair.

13         THE COURT:  Thank you very much.

14         Number 19, Mr. Tartt-Lopez.

15         PROSPECTIVE JUROR:  Live in Woodside, Queens.  I have

16   been there for about three years.  I own.

17         I have a bachelor's in marketing.  I'm currently

18   working in media ad sales.  I don't supervise anyone there.

19         My wife also works in media ad sales.  I have two

20   minors for children; and I can be fair and impartial.

21         THE COURT:  I think you said you have been living

22   there just for a few years.  Where did you live before?

23         PROSPECTIVE JUROR:  I'm sorry?

24         THE COURT:  Where did you live before?

25         PROSPECTIVE JUROR:  Manhattan, upper west side.

1      THE COURT:  Thank you.  Number 20, Ms. Sherman-Greene.

2      PROSPECTIVE JUROR:  Yes.  Let's see.  I live in

3  Jamaica, New York.  I have been in Jamaica, New York now for

4  six years.  I rent.

5      My formal education is a master's degree in

6  administration and social services.  I am currently working.  I

7  work in the area of foster care, with children, children's

8  services.  I have been employed in that particular arena for --

9  how many years?  Quite a few years.  Over ten years, over 20

10  years.

11      THE COURT:  Okay.

12      PROSPECTIVE JUROR:  I do supervise people at work.  I

13  supervise ten workers, case planners, as well as the second

14  floor work is additionally paraprofessionals.

15      I am married.  My husband works construction.  I do

16  have grown children who work, and they work in the field of

17  computer IT as well as my daughter, who runs a security.  Yes,

18  I can be fair and impartial.

19      THE COURT:  Thank you so much.  Number 21,

20  Ms. Sugarman.

21      PROSPECTIVE JUROR:  Okay.  I have been living in

22  Brooklyn my whole life, for the past 23 years in Georgetown.  I

23  rent.

24      I have a bachelor's of science in psychology.  I have

25  recently become unemployed.

USA v. Polanco/Vasquez

1           THE COURT:  I'm sorry.  Did you say you recently

2    became unemployed?

3           PROSPECTIVE JUROR:  Unemployed, yes.

4           THE COURT:  What you were doing before that happened?

5           PROSPECTIVE JUROR:  I have worked for over 20 years in

6    nonprofit management, doing marketing and fundraising.  And I

7    did supervise people at work.

8           I am not married at this time.  I have three grown

9    children who work.  One works for Whole Foods in receiving.  He

10   is an assistant manager of receiving.  Another one does

11   competitive intelligence for a media marketing firm.  And the

12   third one is a financial analyst at a social service agency in

13   Manhattan.  And I can be fair and impartial.

14          THE COURT:  Are you living with any other adults now?

15          PROSPECTIVE JUROR:  Two of my children.

16          THE COURT:  Thank you.  Number 22, Ms. Dehaney.

17          PROSPECTIVE JUROR:  I live in Uniondale, Long Island,

18   for the past 37 years.  I own my home.

19          I am a registered nurse working with North Shore LIJ

20   for 20 years now.  I do supervise, sometimes, the nursing

21   assistants, and we have at least six on each shift.

22          I am married.  My husband is retired.  He was in mail

23   advertising; and I have four grown children.  One is also a

24   nurse, one is in banking, one insurance, and the other one in

25   education.  And I can be fair as well.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1          THE COURT:  Thank you.  Number 23, Ms. Severino.

2          PROSPECTIVE JUROR:  I live in Cambria Heights, Queens

3    for almost seven years.  Seven years.  My husband, we own our

4    home.  I'm married seven years now.

5          I earn bachelor's of science in zoology.  I'm not

6    working now.  I'm working towards my second degree, which is BS

7    in nursing.  I'm married, and my husband works in IT in

8    New York Housing Authority.  No kids.

9          And I can be fair and impartial juror in this case.

10          THE COURT:  I think you said you are not working right

11    now.

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Have you been working recently?

14          PROSPECTIVE JUROR:  Like four years ago, in doctor's

15    office.

16          THE COURT:  Thank you very much.

17          Number 24, Mr. Martin.

18          PROSPECTIVE JUROR: All right.  Let's see.  I live in

19    Elmhurst, Queens.  I lived there for about 17 years now.  I

20    rent.

21          I am a high school graduate.  I am unemployed.  I am

22    single.  No children; and I can a fair and impartial juror.

23          THE COURT:  Do you live with other adults?

24          PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Are they employed?

1     PROSPECTIVE JUROR:  Yes.

2     THE COURT:  How?

3     PROSPECTIVE JUROR:  I live with my mother.  She works

4  in client service at a financial services firm.

5     THE COURT:  Have you been employed recently?

6     PROSPECTIVE JUROR:  No.

7     THE COURT:  Thank you.  Number 25, Ms. Forcer.

8     PROSPECTIVE JUROR:  I have live in Corona, Queens,

9  New York.  I have been there about 50 years.  I rent.

10    I have high school and I study at the bible institute

11  at our church.

12    I'm retired from Verizon.  I was an operation -- I

13  forgot.  How long I was employed there, about 30 years.  I also

14  had worked at the after-school program at my -- at the Corona

15  Christian Academy.  I supervise there.  Yes, I did have people.

16  How many?  Two.  I'm not currently -- I'm not working.  I'm

17  sorry.  I'm so nervous.

18    THE COURT:  You are doing just fine.

19    PROSPECTIVE JUROR:  I'm divorced.

20    THE COURT:  When you were married to your husband what

21  did he do?

22    PROSPECTIVE JUROR:  He was a correction officer.  I

23  didn't mention it because he is not in my inner circle anymore.

24    I have two grown children.  My son works for transit,

25  and he is an independent filmmaker.  My daughter, she is -- she

USA v. Polanco/Vasquez

1    works at Memorial Sloan-Kettering, and she is undergraduate

2    from Pace hoping to go to nursing school.  And if so, what do

3    they do.  Okay.

4            Yes, I can be fair and impartial.

5            THE COURT:  Thank you so much.

6            PROSPECTIVE JUROR:  You are welcome.

7            THE COURT:  Number 26, Ms. Mariotti.

8            PROSPECTIVE JUROR:  I live in Kew Gardens, Queens.  I

9    have been living there 21 years.  I rent.

10           I have two years of college.  I'm currently working

11   for hospice.  I do not supervise.  I have been there 11 years.

12           THE COURT:  What do you do there?

13           PROSPECTIVE JUROR:  Administrative assistant.  I'm

14   divorced.  I have a son.  He is a college student; and I can be

15   fair.

16           THE COURT:  When you were married what did your

17   husband do for a living?

18           PROSPECTIVE JUROR:  He is an RN.

19           THE COURT:  Thank you.

20           PROSPECTIVE JUROR:  You are welcome.

21           THE COURT:  Do you live with any other adults now?

22           PROSPECTIVE JUROR:  No.

23           THE COURT:  Number 27, Ms. Vernon.

24           PROSPECTIVE JUROR:  Live in Canarsie, Brooklyn for 22

25   years.  I live with my parents.  They are both retired.

MICHELE NARDONE, CSR, RPR, CRR - Official Court Reporter

1              I study -- I have my current master's in social work.

2     I'm working at a preventive service for social worker.  I have

3     been there for one year.

4              THE COURT:  Where are you working did you say?

5              PROSPECTIVE JUROR:  Preventive service.

6              THE COURT:  Preventive services?

7              PROSPECTIVE JUROR:  Yes.  I don't supervise anybody.

8     I'm not married.  I don't have any children, and I can be fair

9     and impartial.

10             THE COURT:  Where were you working before that?

11             PROSPECTIVE JUROR:  I was going to school before.

12             THE COURT:  Thank you.  Number 28, Ms. McLaughlin.

13             PROSPECTIVE JUROR:  I live in Breezy Point, New York.

14    I have been there about 24 years.  We own.

15             I have master's in nursing and public health.  I'm

16    employed the same place for over 20 years.  I do supervise

17    people, approximately 50 to 60.

18             I'm married.  My husband worked up until Friday.

19             THE COURT:  Your husband?

20             PROSPECTIVE JUROR:  Worked up until Friday.  He is

21    retired.

22             THE COURT:  In what job again?

23             PROSPECTIVE JUROR:  He was federal agency NYPD but

24    retired, and then criminal investigator for the feds.

25             I have grown children who work.  They at -- one is a

MICHELE NARDONE, CSR, RPR, CRR - Official Court Reporter

1   student, one is in law enforcement, and one is working in

2   eyewear firm; and I can be fair and impartial.

3           THE COURT:  You said you had an MPH and that you are

4   working, but I'm not sure you told us what you do.

5           PROSPECTIVE JUROR:  I'm an RN, but I run outpatient

6   clinics, outpatient centers.

7           THE COURT:  Thank you.  Number 29, Ms. Fiscina.

8           PROSPECTIVE JUROR:  Yeah.  I live in Brooklyn,

9   Williamsburg.  I'm a lifelong resident of Brooklyn.

10          THE COURT:  Did you say Williamsburg, ma'am?

11          PROSPECTIVE JUROR:  Yeah.

12          THE COURT:  Thank you.

13          PROSPECTIVE JUROR:  We own our home.

14          I have a master's degree in education.  And I work as

15  a pre-K teacher, New York City public schools.  I have been

16  there for 24 years.

17          I'm married, and my husband is an artist, musician.

18  We don't have any children; and, yes, I can be a fair and

19  impartial juror.

20          THE COURT:  Thank you.  Number 30, Ms. Chamberlain.

21          PROSPECTIVE JUROR:  I live on Staten Island, the last

22  seven years in Great Kills.  I own.  I have a degree in medical

23  laboratory and biology.  I currently work at Staten Island

24  University Hospital as a medical technologist.  I do not

25  supervise anybody.

1      Not married, no grown children; and can be fair and

2  impartial.

3      THE COURT:  Do you live with any other adults?

4      PROSPECTIVE JUROR:  No.

5      THE COURT:  Thank you.  Number 31, Mr. Becker.

6      PROSPECTIVE JUROR:  I live in Hicksville, New York for

7  the past 48 years.  I own my home.

8      I have a high school diploma.  I'm working for the

9  past 22 years as a gasoline driver.  I don't supervise anybody.

10     I am married.  My spouse works for the school

11  district, in the cafeteria.  And I have two grown children, one

12  married, out of the house.  They are both in law enforcement;

13  and I can be fair.

14     THE COURT:  Number 32, Ms. Genoy.

15     PROSPECTIVE JUROR:  I live in Farmingdale.  I have

16  lived there for almost 50 years.  I live in a home owned by my

17  father.

18     I have a bachelor's degree in electrical engineering.

19  I am currently working for a utility.  I have been there for 27

20  years.  I supervise people at work, approximately 250.

21     I am not married.  I don't have any children; and I

22  can be fair and impartial.

23     THE COURT:  Do you live with any other adults?

24     PROSPECTIVE JUROR:  Yes, retired.

25     THE COURT:  And what kind of work do you do for the

1  utility?

2          PROSPECTIVE JUROR:  Gas and electric customer

3  services.

4          THE COURT:  Thank you.  Number 33, Mr. Schottenhamel.

5          PROSPECTIVE JUROR:  I live in Glendale, Queens for 40

6  years.  I own my own home.

7          I have some college education.  I'm working for MTA,

8  New York City Transit, train operator, for the last two years,

9  and I don't supervise anyone.

10          I'm married.  My wife doesn't work.  No children.  And

11  I can be fair and impartial.

12          THE COURT:  Thank you.  Number 34, Mr. Seidman.

13          PROSPECTIVE JUROR:  I live in Hewlett, Long Island.  I

14  have been living there about eight years.  We rent.

15          I have a college degree in political science.  I

16  currently work as a sound mixer, working on TV shows.  I have

17  been there for about four years.  I don't supervise anyone.

18          I am married.  My wife works in a nursing home.  We

19  have one daughter.  She is nine years old; and I can be fair.

20          THE COURT:  Thank you.  Number 35, Mr. Millan.

21          PROSPECTIVE JUROR:  I live Myrtle Avenue for eight

22  years.  I rent.

23          High school, high school diploma.  Army National

24  Guard, about eight years I'm there.  Supervise depending upon

25  the job.  That can be 12 to 15 people.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    Separated.  She works in a cleaning company,

2  supervisor -- I mean assistant.  I have a daughter, nine.  And

3  I can be fair.

4    THE COURT:  Do you live with any other adults now?

5    PROSPECTIVE JUROR:  My father.

6    THE COURT:  Is he working?

7    PROSPECTIVE JUROR:  Yeah, in a plumbing supply

8  company.

9    THE COURT:  Say it again?

10    PROSPECTIVE JUROR:  Plumbing supply company.

11    THE COURT:  Tell me again.  I know you said it

12  already.  I just didn't catch it, your job.

13    PROSPECTIVE JUROR:  National guard, army.

14    THE COURT:  Thank you.  Number 36, Ms. Conyers.

15    PROSPECTIVE JUROR:  Okay.  I live in Richmond Hill,

16  Queens.  I have been living there about 11 years.  I own my own

17  home.

18    I have a JD.  I'm currently working as a

19  hospital-based risk manager.  I'm in this particular hospital

20  for about four months; but over, you know, the last 20 years.

21  I supervise two people.

22    Single.  I have no children; and I can be a fair and

23  impartial juror.

24    THE COURT:  Do you live with any other adults?

25    PROSPECTIVE JUROR:  No.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1    THE COURT:  Thank you very much.  Before I have the

2  lawyers up at sidebar, I realized as I was listening to all of

3  you that there was one question I meant to ask earlier when I

4  was asking all those questions that I neglected to.  So I'm

5  going to ask it now.

6    It may be the case that some of the testimony in the

7  trial will come from individuals that, according to the

8  government, were involved in criminal conduct themselves.  They

9  may be testifying hoping that in return for testifying for the

10  government they will receive some benefit, like a reduction in

11  the sentence that they will get for their own criminal conduct.

12  Judge Dearie will give you instructions about how to weigh the

13  testimony of such witnesses.

14    My question to you now is whether or not there is

15  anybody here who has such strong feelings about the use by a

16  prosecutor of a witness who is getting a benefit like that in

17  return for their testimony that they couldn't be fair and

18  impartial in a case where such a witness testified.

19    Putting it another way, Judge Dearie will tell you

20  that you can take into account, when you evaluate whether

21  someone is telling you the truth, what their motives are; and

22  when the motive is to get something for yourself, that's

23  something you can consider.

24    So the question isn't whether you would put aside the

25  fact that someone is cooperating, or getting something back in

1    return for their testimony.  The question is whether you can be

2    objective about it and follow the judge's instructions about

3    how to weigh such testimony.

4         Is there anyone here who thinks they are emotional or

5    have such strongly held views on the subject that they cannot

6    follow Judge Dearie's instructions about such testimony?  The

7    record will reflect that no hands are raised, and I will see

8    counsel at sidebar.

9         (Sidebar conference.)

10        THE COURT:  All right.  Are there any additional

11   questions?  If you will excuse me, counsel.  I wonder if I can

12   address you.

13        Are there any additional questions that counsel would

14   have me put to any of the jurors?

15        MS. DAYANANDA:  Your Honor, it just dawned on me that

16   you asked everyone who lived with someone what the person in

17   the household did.  For number 27, Ms. Vernon, I believe she

18   said her parents were retired, but I didn't catch what they

19   retired from.

20        THE COURT:  Okay.  Any other questions that counsel

21   would have me pose that I neglected to?

22        MR. HURWITZ:  No, your Honor; but I would add that

23   it's the first I heard it, perhaps I missed it, Juror number 28

24   said her husband also worked besides with the NYPD in some

25   capacity with the federal government, perhaps as an

1    investigator.

2            MS. MAROSI:  As a criminal investigator for the feds.

3            THE COURT:  That's Ms. McLaughlin.

4            MR. HURWITZ:  I don't know if she mentioned before

5    federal.  Did she?

6            THE COURT:  She did anything, Mr. Savitt?

7            MR. SAVITT:  No, your Honor.

8            (End of sidebar conference.)

9            (In open court.)

10           THE COURT:  Juror number 27, Ms. Vernon, you don't

11   have to come up.  I think you said you lived with retired

12   parents.

13           PROSPECTIVE JUROR:  Yes.

14           THE COURT:  I'm just wondering --

15           PROSPECTIVE JUROR:  My mom was a registered nurse.  My

16   father ambulance to clinics.

17           THE COURT:  All right.

18           (Sidebar conference.)

19           THE COURT:  Anything else?

20           MR. SILVER:  No.

21           THE COURT:  Any challenges for cause that you haven't

22   had a chance to articulate yet.  From the government?

23           MR. SILVER:  No.

24           THE COURT:  Mr. Hurwitz?

25           MR. HURWITZ:  No.

1          THE COURT:  Mr. Savitt?

2          MR. SAVITT:  No, your Honor.

3          THE COURT:  All right.  Then take a seat, consider

4    your peremptories, and join me at sidebar as soon as you are

5    ready to exercise them.

6          MR. HURWITZ:  Where should Mr. Savitt and I talk?

7          THE COURT:  You can talk right at counsel table.  Just

8    make sure your microphones are off.  If you would like to have

9    this area at sidebar to confer, you can have that area as well.

10         MR. SILVER:  Judge, would it be okay if we went in the

11   witness room for two minutes to confer?

12         THE COURT:  Sure.

13         MR. SILVER:  Okay.

14         THE COURT:  You can as well, if you like.  There are

15   more than one.

16         (Recess.)

17         THE COURT:  Counsel, please approach.

18         Juror number 11, Mr. Uddin -- excuse me.  Would you

19   like to translate this for them?

20         Juror number 11, Mr. Uddin has a card, an expired

21   meter.  I want to excuse him to put more money in his meter,

22   with instructions to return after he does so.  I want you to

23   finishing your peremptories promptly and exercise them even

24   while he is doing that at the car.

25             Is there any objection from the government in

1    proceeding in that manner?

2            MR. SILVER:  No.

3            THE COURT:  Mr. Savitt?

4            MR. SAVITT:  Of course not, your Honor.

5            THE COURT:  Mr. Hurwitz?

6            MR. HURWITZ:  No.

7            THE COURT:  All right.

8            (End of sidebar conference.)

9            (In open court.)

10            THE COURT:  Mr. Uddin, Juror number 11, I understand

11    you have a practical problem that's going to take you a couple

12    of moments to address.  You are excused for that limited

13    purpose with directions to come right back into the courtroom

14    and retake your seat as soon as you have done so.

15            (Recess.)

16            (Sidebar conference.)

17            THE COURT:  How much longer do you need?  The

18    prosecution has been waiting 10 to 15 minutes for you.

19            MR. SAVITT:  Do you know how long we have had to wait

20    for their 3500 materials, your Honor?  This is an '08 case.

21    Did you get all that?  Good.

22            THE COURT:  Okay.  We are ready.  All right.  The

23    prosecutor will exercise one challenge to begin round one.

24            MR. SILVER:  Number 3.

25            THE COURT:  The defendants will exercise four

1  challenges in a row, two to end round one and two to begin

2  round two.

3          MR. SAVITT:  All right.  Let's go with number 1.

4  Let's go with number 6.

5          THE COURT:  Number 1, Watral; 6, Brincat.

6          MR. SAVITT:  Let's go with number 10.

7          THE COURT:  10, Woerter.

8          MR. SAVITT:  And let's go with number 8.

9          THE COURT:  Number 8, McRae.

10          The government has two challenges, one to end round

11  two, and one to begin round three.

12          MR. SILVER:  Numbers 4 and 5.

13          THE COURT:  Soliman and Francis.

14          MR. SAVITT:  4 and 5.

15          THE COURT:  The defendants have four challenges, two

16  to end round three and to two begin round four.

17          MR. SAVITT:  Let's go with number 16.

18          THE COURT:  16, Chin.

19          MR. SAVITT:  Let's go with number 18.

20          THE COURT:  18, Luciano.

21          MR. SAVITT:  19.

22          THE COURT:  Tartt-Lopez.

23          MR. SILVER:  Tartt-Lopez.

24          THE COURT:  Tartt-Lopez.  I can't read my own

25  handwriting.  Thank you.

1        MR. SAVITT:  Number 31 let's go with.

2        THE COURT:  I'm sorry.  Did you say 30 or 31?

3        MR. SAVITT:  I'm sorry.  I'm sorry.  I said 31.

4   That's fine.  Do we still have a few challenges left?

5        THE COURT:  31 is Becker.

6        MR. SAVITT:  Becker, right, yes.

7        THE COURT:  The government has two challenges.  In

8   round four, one to begin round five.

9        MR. SILVER:  Number 13.

10       THE COURT:  13 is Conanan.

11       MR. SILVER:  And number 24.

12       THE COURT:  And 24 is Martin.  Just give me one

13  moment.  Okay.

14       The defense has two challenges left against the main

15  panel to be exercised now in rounds five and six; and then you

16  will have two more against the alternates.  So you are down to

17  four challenges.

18       MR. SAVITT:  Number 28.

19       THE COURT:  28 is McLaughlin.

20       MR. SAVITT:  21.

21       THE COURT:  21 is Sugarman.

22       The government has two challenges.  Its last challenge

23  against the main venire and one of its alternate challenges to

24  use now.  But you can use them against anyone, as we said at

25  the outset.

1          MR. SILVER:  Number 30.

2          THE COURT:  Thirty is Chamberlain.

3          MR. SILVER:  And number 27.

4          THE COURT:  27 is Vernon.

5          MR. SAVITT:  27.

6          THE COURT:  The defense has its last two challenges,

7   and the government will exercise its final strike.

8          MR. SAVITT:  29.

9          THE COURT:  29 is Fiscina.

10         MR. SAVITT:  Yes.  35.

11         THE COURT:  And 35 is Millan.

12         The final word goes to the prosecutor.

13         MR. SILVER:  26.

14         THE COURT:  26 is Mariotti, right?

15         MR. SILVER:  Uh-huh.

16         THE COURT:  Okay.  What was the last challenge by the

17  defense?

18         MR. SAVITT:  The last --

19         THE COURT:  36?

20         MR. HURWITZ:  35.

21         THE COURT:  35, right.

22         MR. HURWITZ:  35.

23         THE COURT:  So let's go over who is left and make sure

24  we agree.

25         Our new Juror number 1 is old number 2, Astudillo.

USA v. Polanco/Vasquez

1    Our new Juror number 2 is old 7, Esterich.  New 3 is old 9,

2    Claudio.

3              Everybody with me so far?

4              MS. DAYANANDA:  Yes.

5              MR. SAVITT:  Yes.

6              THE COURT:  New 4 is old 11, Uddin, whose meter should

7    be full shortly.  New 5 is old 12, Steele.  New 6 is old 14,

8    Robinson.  New 7 is old 15, Morgenlander.  New 8 is old 17,

9    Gomez.  New 9 is old 20, Sherman-Greene.  New 10 is old 22,

10   Dehaney.  New 11 is old 23, Severino.  And new 12 is old 25,

11   Forcer.

12             Alternate 1 is old 32, Genoy.  Alternate 2 is old 33,

13   Schottenhamel.  Alternate 3 is old 34, Seidman.  And alternate

14   4 is old 36, Conyers.

15             Is that correct according to the government's notes?

16             MR. SILVER:  Yes.

17             THE COURT:  Is the jury acceptable to the prosecution?

18             MR. SILVER:  Yes.

19             THE COURT:  Is that correct according to Defendant

20   Polanco's notes.

21             MR. SAVITT:  Yes, your Honor.

22             THE COURT:  Is the jury acceptable to Mr. Polanco?

23             MR. SAVITT:  Yes, your Honor.

24             THE COURT:  Is that accurate according to Defendant

25   Vasquez' notes?

1          MR. HURWITZ:  Yes.

2          THE COURT:  Is the jury acceptable to him?

3          MR. HURWITZ:  Yes.

4          THE COURT:  Very well.  Return to your seats.

5          (End of sidebar conference.)

6          (In open court.)

7          THE COURT:  Ladies and gentlemen of the jury, good

8   afternoon.  I have good news and bad news.  The good news is

9   that we have finished the jury selection, and I will soon

10  announce to you who has been selected and in what position.

11  The bad news is that I'm going to have to say good-bye to you

12  very shortly.  You will be over that bad news very easily.

13         Ms. Keefe is going to announce the names of the

14  individuals who have been selected to be jury members.  When

15  she is finished, she will ask those of you whose names were not

16  called to step back into the back of the courtroom but not to

17  leave because we want to make sure that we got it right and

18  that the right people stay and the right people left.

19         You have the floor.

20         THE CLERK:  Juror number 1 is Maria Astudillo.  Juror

21  number 2 is Curran Esterich.  Juror number 3, Elizabeth

22  Claudio.  Juror number 4, Mr. Uddin.  Juror number 5,

23  Ms. Steele.  Juror number 6, Ms. Robinson.  Juror number 7,

24  Mr. Morgenlander.  Juror number 8, Mr. Gomez.  Juror number 9,

25  Ms. Sherman-Greene.  Juror number 10, Ms. Dehaney.  Juror

1  number 11, Ms. Severino.  Juror number 12, Ms. Forcer.

2  Alternate number 1, Ms. Genoy.  Alternate number 2,

3  Mr. Schottenhamel.  Alternate number 3, Mr. Seidman.  And

4  Alternate number 4, Ms. Conyers.

5          THE COURT:  If you didn't hear your name, please take

6  a seat in the back of the courtroom.  If you didn't hear.

7          Just stay where you are while I count everybody,

8  please.  Don't move.  You will confuse me terribly.  Okay.  Now

9  we are all done.

10          Now, ladies and gentlemen in the back of the

11  courtroom, I want to thank you very much.  Some of you weren't

12  even called forward.  I think that as you watch this process

13  unfold, you could see how difficult it is to predict how many

14  of you we will need to finish.

15          I'm very regretful if you feel as if your time was

16  wasted because you didn't participate in the process, but I

17  assure you that we don't take it lightly that you are back

18  there.  We lose so much more time if we run out of qualified

19  persons and have to start over again, and that's why we impose

20  on you and then don't even ask you to do anything.  So please

21  don't feel that way.

22          I hope it's some comfort for you to know that as I

23  looked out and saw you there it gave me great comfort that we

24  would actually be able to finish this this afternoon, and the

25  trial will be scheduled to start tomorrow.  So I'm grateful to

1  you for your participation.  And those of you who did

2  participate and weren't selected, I hope you have an

3  opportunity to serve, either now, during your period of time of

4  service now or sometime in the future.

5          Thank you very much.  Please report to the central

6  jury room for further instructions.

7          Now, Ms. Keefe is going to take the rest of you into

8  the jury room.  Not because the trial is going to start today,

9  but because you will have some facilities there where you can

10  freshen up, and you can get some instructions about where and

11  when to report tomorrow; and after Ms. Keefe brings you there

12  she is going to leave you there alone for a few minutes while

13  we wait for our last member to return.

14          Don't discuss the case with anyone.  Don't make up

15  your mind about anything involving the case, and don't be

16  insulted if anybody involved in the case sees you and has

17  nothing to do with you.

18          Also, keep in mind I don't think or have any reason to

19  believe that there will be any attention paid to this case in

20  the news, but if you do watch the television or read the paper

21  and you see anything connected to the case, divert your

22  attention from it immediately.  We only want you to -- we want

23  you to base your verdict only upon what happens in the

24  courtroom, not things that some reporter or television

25  personality might have to say about it.

USA v. Polanco/Vasquez

1      So okay.  So Ms. Keefe will take you in the jury room

2  where you can relax while we wait for the final member of the

3  panel.

4            THE COURT:  You can just follow Ms. Keefe out.

5            (Jury exits.)

6            (Juror enters.)

7            THE COURT:  You are Juror number?

8            JUROR:  11.

9            THE COURT:  11?

10           JUROR:  Yes.

11           THE COURT:  Now, wait.  You have been selected to

12  serve.  You will be Juror number 4, and Ms. Keefe will be out

13  for you right in a moment and you will join your fellow jurors.

14           Don't discuss the case with anyone.  If you see

15  anything in the papers or television about the case, divert

16  your attention from it; and don't be insulted if the people

17  involved in the case ignore you around the courthouse.

18           PROSPECTIVE JUROR:  No problem.

19           THE COURT:  All right.

20           JUROR:  Thank you.

21           THE COURT:  Thank you.

22           (Juror exits.)

23           THE COURT:  Counsel, is there anything further?

24           MR. SILVER:  Not from the government.  Thank you,

25  judge.

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter

1          MR. SAVITT:  Not from the Defendant Polanco, your

2    Honor.

3          MR. HURWITZ:  Not from Vasquez.

4          THE COURT:  All right.

5          Marshals, you can take the defendant.

6          MR. HURWITZ:  Your Honor, was anything done about the

7    clothing orders that are actually at the MDC?

8          THE COURT:  Not by me.  Maybe they can keep the

9    clothing that was used today here.

10          MR. HURWITZ:  Yes.  Perhaps someone from chambers or

11    Judge Dearie or your chambers could contact the MDC and see

12    what the problem is, because I know for a fact that I -- and I

13    believe Mr. Savitt, he dropped off clothing orders because you

14    really can't drop off clothing without an order.

15          THE COURT:  Here is Ms. Mulqueen.  Maybe you can start

16    over again now that Ms. Mulqueen is here.

17          Mr. Hurwitz was asking if anyone from the chambers was

18    able to contact the MDC.

19          MS. MULQUEEN:  Yes.  That has been taken care of.

20          THE COURT:  Thank you, Ms. Mulqueen.

21          Anything else, counsel?

22          MR. SAVITT:  Judge Dearie is coming out now?  I'm just

23    not sure.

24          MS. MULQUEEN:  Yes.  Judge Dearie will be up in about

25    five minutes.

1      THE COURT:  All right.  You will have about five

2 minutes until you see the judge.

3      MR. HURWITZ:  Thank you, judge.

4      THE COURT:  Thank you, everyone.  I know we got off to

5 a rocky start, but everybody remained in good humor, and we

6 moved along efficiently.  I thank you all for that.

7      (End of proceedings.)

8

9                         o O o

10

11 Certified to be a true and accurate transcript.
   /s/ Michele Nardone
12 MICHELE NARDONE, CSR, RPR, CRR -- Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

MICHELE NARDONE, CSR, RPR, CRR – Official Court Reporter